UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AG EQUIPMENT COMPANY, and<br>SUZANNE ASH KURTZ, | )<br>)<br>)<br>) | |
| **Plaintiffs,** | )<br>) | |
| v. | )<br>) | Case No. 07-CV-0556-CVE-PJC<br>(Base File) |
| AIG LIFE INSURANCE COMPANY, INC.,<br>and MARK HEIDENREITER | )<br>)<br>)<br>) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court is Plaintiff's [AG Equipment Company] Motion to Dismiss Defendant's Amended Counterclaim (Dkt. # 78). In its motion, plaintiff AG Equipment Company ("AG") alleges that defendant, AIG Life Insurance Company, Inc. ("AIG"), failed to state a claim pursuant to Federal Rules of Civil Procedure 8, 9, and 12(b)(6). AG also asks the Court to strike AIG's request for punitive damages and attorney's fees.[1]

**I.**

This civil action arises from an alleged breach of an insurance contract. AG sues AIG claiming that AIG failed to make timely payment of money owed pursuant to an insurance policy (the "Policy") issued to AG. AIG claims that it did not owe any money to AG because the employee whose illness resulted in the medical bills was not an eligible employee, and thus not

---

[1]  Pursuant to local rule, a prevailing party with a statutory, contractual, and/or legal basis for attorney fees must file a motion and brief to seek such recovery. LCvR 54.2. AG's request to strike AIG's prayer for attorney fees is premature and need not be addressed at this stage of the litigation.

covered by the Policy. AIG counterclaims, alleging: (1) fraudulent concealment; (2) breach of contract; (3) fraudulent misrepresentation/deceit; (4) money had and received; (5) unjust enrichment; and (6) conversion. AIG sets forth the following facts: From May 2000 until on or about April 30, 2007, AG contracted with AIG to provide stop-loss insurance coverage. Dkt. # 73, at 2. Stop-loss coverage provides payment to AG of covered medical expenses in excess of the "contractual trigger amount," as stated in each year's Policy, and in accordance with the terms and conditions of the AG Equipment Medical Benefits Plan (the "Plan"). Dkt. # 73, at 1-2. The Policy provided benefits for a covered participant of the Plan who was an "Active Employee or his Eligible Dependent." Dkt. # 73, at 2. An Active Employee was defined as an employee who was employed on a full time basis (at least thirty hours per week) and capable of performing his job function. Dkt. # 73, at 2, 3. According to the Policy, AIG had the right to interpret the terms and conditions of the Plan to the extent that the Plan applied to the Policy. Dkt. # 73, at 2, 3. Under the terms of the Plan and Policy, AG was required to disclose facts regarding the eligibility of employees. Dkt. # 73, at 3. In addition, the Policy required AG to reimburse AIG for any funds paid in error. Dkt. # 73, at 2.

AIG alleges that AG backdated records to retroactively include Suzanne Ash Kurtz on the company payroll, effective on or about May 1, 2001. Dkt. # 73, at 3, 5. AG represented to AIG that Kurtz was in-house counsel and an eligible employee of AG. Dkt. # 73, at 3, 5. However, AIG alleges that Kurtz never worked 30 hours per week and further alleges that it is questionable whether Kurtz was ever an employee at all. Dkt. # 73, at 3, 5. AIG claims that AG misrepresented or concealed Kurtz's employment status throughout the course of its relationship with AIG. Dkt. # 73, at 3. However, some time prior to April 24, 2007, a witness, Mark Heidenreiter, informed AIG that

Kurtz was not eligible for insurance benefits because AG had been misrepresenting Kurtz's employment status. Dkt. # 73, at 4. Prior to receiving that information, however, AIG had issued a check to AG in the amount of $467,775.89 for expenses AG paid relating to Kurtz's medical treatment. Dkt. # 73, at 4. On April 24, 2007, AIG stopped payment on the check to AG in order to conduct an investigation of Kurtz's employment status. Dkt. # 73, at 4. AIG alleges that AG misrepresented Kurtz's employment status on each application for coverage, as well as on reports submitted with names of eligible employees and in communications with Mercer, the Plan administrator. Dkt. # 73, at 4, 6. AIG also alleges that from March 17, 2004 through April 4, 2007, it made payments to AG totaling $279,014.11, also for Kurtz's medical expenses. Dkt. # 73, at 6, 7. Those payments were made in reliance on AG's statements that Kurtz was an eligible employee. Dkt. # 73, at 7.

## II.

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss a complaint for failure to state a claim should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. When deciding

whether to grant a motion to dismiss, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Id. at 1965; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). "A court's function in dismissing a counterclaim on the pleadings is merely to determine whether the counterclaim itself is legally sufficient; a court may not dismiss at the pleading stage of the action by weighing the evidence that might be presented or by otherwise considering the counterclaimant's likelihood of success." Seattle-First Nat. Bank v. Carlstedt, 800 F. 2d 1008, 1011 (10th Cir. 1986). Nonetheless, a court need not accept as true those allegations which are conclusory in nature. Erikson v. Pawnee County Bd. of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991). In sum, the claimant must allege facts sufficient to state a claim for relief that is plausible on its face. Twombly, 127 S. Ct. at 1974.

AG argues that AIG's claims should be dismissed in their entirety for failure to state a claim upon which relief may be granted. While AG correctly states the law after Twombly, AG is incorrect in stating that AIG "completely lacks specific facts." Dkt. # 78, at 3. The counterclaim provides specific factual allegations of the alleged misrepresentations by AG and details the various policies and communications which contained the alleged misinformation. Dkt. # 73. The allegations in AIG's counterclaim are not conclusory, but rather provide specific facts that, if true, would support a claim against AG. Moreover, as the Court is required to construe the facts in favor

of the non-moving party, AIG has raised the inference that there exists a set of factual allegations sufficient to plausibly state a claim.

### III.

As an initial matter, AG argues that AIG may not recover on any of its equitable claims because a contract existed between the parties. However, pursuant to Federal Rule of Civil Procedure 8(e)(2), a party may "state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable or maritime grounds." Although a party may not recover twice on the basis of the same injury, he may plead an equitable claim in addition to a legal claim. See In re General Motors Corp., "Piston Slap" Products Liability Litigation, 386 F. Supp. 2d 1220, 1224 (W.D. Okla. 2005). Each claim will be addressed seriatim.

**A.      Fraudulent Concealment**

AIG claims that AG fraudulently concealed the truth about Kurtz's employment status. However, fraudulent concealment is typically raised as a response to a statute of limitations defense, rather than as a separate claim for relief. Kansas City Life Ins. Co. v. Nipper, 51 P. 2d 741, 747 (Okla. 1935). See also Masquat v. DaimlerChrysler Corp., __ P. 3d __, 2008 WL 2600703, *5 (Okla. 2008) ("As Oklahoma law has long recognized fraudulent concealment constitutes an implied exception to the statute of limitations . . . ."). Since a statute of limitations defense to AIG's counterclaims has not been raised, AIG's fraudulent concealment claim should be dismissed.

**B.      Breach of Contract**

As an initial matter, in response to AIG's claim for breach of contract, AG argues that an insurance company cannot claim "bad faith" against an insurer. The Oklahoma Supreme Court recognizes a claim in tort for violations of an insurer's duty of good faith and fair dealing. Christian

v. American Home Assurance Co., 577 P. 2d 899, 902 (Okla. 1977). Violation of that duty by the insurer gives rise to a "bad faith" action for which consequential and punitive damages may be sought. Milroy v. Allstate Ins. Co., 151 P. 3d 922, 926 (Okla. Civ. App. 2006) (citations omitted). A bad faith action is available only to an insured; an insurer may not bring a "reverse bad faith" action against an insured. See First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland, 928 P. 2d 298, 307-08 (Okla. 1996). Despite AG's arguments that AIG cannot bring a bad faith action, AIG makes it clear that it is not alleging reverse bad faith, but rather breach of the insurance contract. See Dkt. # 114, at 2. Accordingly, AG's arguments with respect to a reverse bad faith claim are misplaced.

A breach of contract is a "material failure of performance of a duty arising under or imposed by agreement." Milroy, 151 P. 3d at 926 (citations omitted). To state a claim for breach of contract, a party must prove three elements: (1) existence of a contract; (2) breach of that contract; (3) actual damages suffered as a result of the breach. Oltman Homes Inc. v. Mirkes, 190 P. 3d 1182, 1186 (Okla. Civ. App. 2008) (citations omitted). AG argues that AIG has not alleged sufficient facts to state a claim for breach of contract and, as such, the claim should be dismissed. However, AIG alleges the existence of a series of contracts for insurance coverage and breach of those contracts by unilaterally amending the contracts to include Kurtz and by failing to return money paid in error. AIG further alleges damages of $279,014.11 as a result of the breach of contract. While it is possible that AIG will ultimately be unable to prove that AG breached their contract, at this time AIG has stated a claim for breach of contract.

**C.    Fraudulent Misrepresentation/Deceit**

AG argues that AIG's fraud claims should be dismissed because AIG failed to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b). Rule 9(b) applies to "all averments of fraud or mistake," requires that "the circumstances constituting fraud . . . be stated with particularity," but provides that "[m]alice, intent, knowledge, and other condition of mind of a person, may be averred generally." A party alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Tal v. Hogan, 453 F. 3d 1244, 1263 (10th Cir. 2006) (quoting Koch v. Koch Indus., 203 F. 3d 1202, 1236 (10th Cir. 2000) (internal quotations omitted)). AG argues that AIG failed to "set forth the 'who,' 'what,' 'when,' 'where,' and 'how'" necessary to meet the specificity requirement of Rule 9(b). See Dkt. # 78, at 3-4. However, in its counterclaim, AIG alleges that AG represented to AIG that Kurtz was an eligible employee. Dkt. # 73, at 6. These alleged misrepresentations were included on each required disclosure to AIG from 2001 through 2007. Dkt. # 73, at 6. Those allegations provide sufficient information to put AG on notice with respect to who made the statements and to whom they were made, the subject matter of the statements, when they were made, and how they were communicated (i.e., applications for coverage, employee listings, and employee status reports). Dkt. # 73, at 6. These allegations are sufficiently specific and meet the requirements of Rule 9(b). Accordingly, AG's argument lacks merit.

AG also claims that AIG has not stated a claim for fraud upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Under Oklahoma law, actual fraud may be defined as "the suggestion, as a fact, of that which is not true, by one who does not believe it to be true," with intent to deceive another party to a contract. OKLA. STAT. tit. 15, § 58. Fraud may also be defined as "the suppression of that which is true, by one having knowledge or belief of the fact." Id. To state a

claim for fraud under Oklahoma law, a party is required to demonstrate: (1) a material false representation, (2) made with knowledge of its falsity, or recklessly made without knowledge of its truth, and as a positive assertion, (3) with the intention that it be relied upon by another, and (4) reliance thereon by another to his injury. Olson v. Briscoe, 10 P. 3d 246 (Okla. 2000).

Here, AIG specifically proceeds on the theory that AG's representations that Kurtz was an employee, knowing that she was either not an employee at all or an employee who did not work the required number of hours for eligibility, amounted to fraudulent misrepresentation or deceit. To state a claim for fraudulent misrepresentation or deceit, a party must allege that (1) the non-moving party made a material misrepresentation; (2) that it was false; (3) the non-moving party made the representation knowing it was false or in reckless disregard of the truth; (4) that the non-moving party made it with the intention that it should be acted upon by the moving party; (5) that the moving party acted in reliance upon it; and (6) that moving party thereby suffered injury. Sturgeon v. Retherford Publications, Inc., 987 P. 2d 1218, 1228 (Okla. Civ. App. 1999). AIG alleges that AG's statements on the insurance applications were false and made with the knowledge of their falsity, and AIG relied on the representations when it made payments to AG. The allegations in AIG's counterclaim set forth the elements of a claim for fraud and provide specific facts. These factual allegations, if proven, constitute fraud. Accordingly, AIG's fraud claims should not be dismissed.

### D.     Money Had and Received and Unjust Enrichment

AIG makes two quasi-contractual claims: unjust enrichment and money had and received. These claims arise where one party fails to return money that, in equity and good conscience, it should not be allowed to retain. See Harvell v. Goodyear Tire and Rubber Co., 164 P. 3d 1028, 1035 (Okla. 2006); Clay v. Independent School Dist. No. 1 of Tulsa Cty., 935 P. 2d 294, 301 n. 11

(Okla. 1997); French Energy Inc. v. Alexander, 818 P. 2d 1234, 1237 (Okla. 1991). Where the plaintiff has an adequate remedy at law, the court will not ordinarily exercise its equitable jurisdiction to grant relief. Harvell, 164 P.3d at 1035. Nonetheless, a party may allege an equitable claim as an alternative to a contract-based claim so long as the party is not permitted double recovery on the same injury. See Burlington Northern and Santa Fe Ry. Co. v. Grant, 505 F. 3d 1015, 1030 (10th Cir. 2007) (citing N.C. Corff P'ship, Ltd. v. Oxy USA, Inc., 929 P.2d 288, 295 (Okla. Civ. App. 1996)).

Here, AG has allegedly retained insurance proceeds intended to reimburse AG for expenses incurred in covering Kurtz's medical treatment. AIG paid the claim with the understanding that Kurtz was an eligible employee under the Policy. If Kurtz was not an eligible employee, AG retained money that, in good conscience, it should not have retained. At the pleading stage, it is permissible for AIG to seek relief in law and equity, despite the fact that it may ultimately recover under only one of those competing theories. Accordingly, AIG has alleged sufficient facts to state a claim for unjust enrichment and money had and received.

**E.     Conversion**

Conversion, under common law, was "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with [the individual's] rights therein." Wagoner v. Bennett, 814 P. 2d 476, 481 (Okla. 1991) (citations omitted). The general rule in Oklahoma is that only tangible personal property may be the subject of a conversion action. Welty v. Martinaire of Okla., Inc., 867 P. 2d 1273, 1275 (Okla. 1994). Where the property to be recovered is money, there is no conversion. Shebester v. Triple Crown Insurers, 826 P. 2d 603, 608 (Okla. 1992). Here, AIG alleges that AG has wrongfully retained money paid by AIG on the basis of AG's alleged

misrepresentation of Kurtz's eligibility and that wrongful retention resulted in conversion of AIG's money. However, because AIG is seeking to recover money only, the Court finds that AIG has not stated a claim for conversion under Oklahoma law.

### F. Punitive Damages

Finally, with respect to AG's arguments regarding punitive damages, if AIG can prove that AG committed fraud that was intentional or reckless, punitive damages could be imposed. See OKLA. STAT. tit. 23, § 9.1. Accordingly, AG's request to dismiss AIG's claim for punitive damages should be denied.

**IT IS THEREFORE ORDERED** that Plaintiff's [AG Equipment Company] Motion to Dismiss Defendant's Amended Counterclaim (Dkt. # 78) is **granted** in part and **denied** in part as follows: it is **granted** as to the fraudulent concealment and conversion claims; it is **denied** as to all other claims.

**IT IS SO ORDERED** this 10th day of October, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT