**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| AG EQUIPMENT COMPANY, et al., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 07-CV-556-CVE-PJC ) |
| AIG LIFE INSURANCE COMPANY, et al., | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter came before the Court for hearing on Dec. 3, 2008, on numerous motions by the parties stemming from on-going discovery disputes.[1] The parties have resolved many of the matters addressed in their motions and the Court took under advisement specific remaining issues set forth in Dkt. Nos. 124, 126, 145, and 148. These motions are addressed below.

## I.
## BACKGROUND

This is a lawsuit over a stop-loss insurance policy issued by AIG Insurance ("AIG") to AG Equipment ("AG").[2] The specific issue is AG's right to reimbursement under the AIG policy for medical expenses incurred by Suzanne Ash-Kurtz ("Ash-

---

[1] The motions addressed included Docket Nos. 121, 124, 126, 145, 148, 156, 173, 175, 177 and 181. At the hearing the Court found Dkt. Nos. 121, 156 and 173 MOOT, GRANTED Nos. 175 & 177, and DENIED No. 181.

[2] Stop-loss insurance pays employees' medical expenses beyond a certain predetermined amount that is paid by the employer. In this case AG was self-insured and paid employees' medical expenses up to $40,000. The AIG policy was apparently meant to reimburse AG for an employee's medical expenses beyond $40,000

Kurtz").[3]  Prior to her death in November 2008, Ash-Kurtz performed legal work for AG. The exact nature of her employment relationship with AG, including whether she was a full time employee and whether she was entitled to receive health insurance benefits under the AIG stop-loss policy, are key issues in the lawsuit.  AIG initially reimbursed AG for Ash-Kurtz' medical expenses, but stopped payment on a $467,000 check after being notified that Ash-Kurtz was not a full-time employee of AG.  Plaintiff has sued for breach of contract and bad faith; AIG has counter-claimed on breach of contract, fraud, and related theories.  A companion lawsuit, brought by AG and Ash-Kurtz against Mark Heidenreiter – the source of the contention that Ash-Kurtz was not a full-time AG employee – was consolidated with this action in June 2008 [Dkt. # 67].

The AG-AIG lawsuit was filed in Tulsa County District Court in September 2007 and removed to federal court a month later [Dkt. No. 2].  Four Scheduling Orders have since been entered [Dkt. Nos. 14, 21, 37 & 71].  Discovery was originally to have been concluded by February 29, 2008, but was subsequently extended to Oct. 31, 2008. Expert discovery has been extended to Dec. 15, 2008 [Dkt. # 99 & 100].  Discovery is now complete save for expert discovery and the issues addressed herein.

## II.
## APPLICABLE LEGAL STANDARD

**A.    General Discovery Principles**

It is well-established that discovery under the Federal Rules is limited only by relevance and burdensomeness.  *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975).  Trial courts have broad discretion in managing discovery matters and are

---

[3]    AG and Ash-Kurtz are represented in this action by attorney Dana Kurtz, who is Ash-Kurtz' step-daughter.  Thus, the Plaintiff will be referred to herein as "Ash-Kurtz." Where necessary, Plaintiffs' attorney will be referred to as "Dana Kurtz."

2

subject to review only for abuse of discretion. *In re Multi-Piece Rim Products Liability Litigation*, 653 F.2d 671, 679 (D.C.Cir. 1981).

Rule 26(b)(1) provides that parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party…. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). At the discovery phase of litigation "relevancy" is broadly construed and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D.Kan. 2004) (citation omitted). A discovery request should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party. *Id.*

When the requested discovery appears relevant, the party opposing discovery has the burden of establishing the lack of relevance by demonstrating that the requested discovery does not come within the scope of relevance set forth in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D.Kan. 2003) (citation omitted).

Discovery motions under Rule 37 must be timely filed or the movant risks a finding of waiver. *Continental Indus., Inc. v. Integrated Logistics Solutions LLC*, 211 F.R.D. 442 (N.D.Okla. 2002); *Buttler v. Benson*, 193 F.R.D. 664, 666 (D.Colo. 2000) ("A party cannot ignore available discovery remedies for months and then, on the eve of trial, move the court for an order compelling production.").

### B.     Principles Governing Depositions

Rule 30 governs conduct at depositions. Deposition testimony may be recorded "by audio, audiovisual, or stenographic means." Fed. R. Civ. P. 30(b)(3)(A). Rule 30 further provides in pertinent part:

> (1) Examination and Cross-Examination. The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615. After putting the deponent under oath or affirmation, the officer must record the testimony by the method designated under Rule 30(b)(3)(A). The testimony must be recorded by the officer personally or by a person acting in the presence and under the direction of the officer.
>
> (2) Objections. An objection at the time of the examination--whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed.R.Civ.P. 30(c)(1) and (2).

So-called "speaking objections" are not permitted. *See Damaj v. Farmers Ins. Co., Inc.*, 164 F.R.D. 559, 560 (N.D.Okla. 1995) (noting that "[f]requent and suggestive objections" by counsel can frustrate the goal of deposition discovery). Rule 30(d)(3) permits a deponent or party to move to terminate or limit a deposition because it is being conducted in bad faith or that the deposition is being conducted in a manner that "unreasonably annoys, embarrasses, or oppresses the deponent or party." The Rule further provides: "If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order." Fed.R.Civ.P. 30(d)(3)(A). In all cases, Rule 30 must be construed to secure the just, speedy, and inexpensive

4

determination of action. *Babcock & Wilcox Co. v. North Carolina Pulp Co.*, 25 F. Supp. 596, 597 (D.Del. 1938).

## III.
## DISCUSSION

**A.     Plaintiffs' Discovery Motions [Dkt. Nos. 124 & 126]**

### (1)  Attorneys' Conduct at Depositions.

Both sides have complained about opposing counsel's conduct during depositions and have submitted reams of deposition transcript pages to support their outrage. The Court's extensive review of these pages serves as a useful reminder that loaded guns, sharp objects and law degrees should be kept out of the reach of children. Attorneys in these depositions – primarily Dana Kurtz for Plaintiffs and Steven E. Holden ("Holden") for Defendant – both demonstrated little knowledge or regard for Fed. R. Civ. P. 30. Both lawyers made inappropriate speaking objections to deposition questions[4] and improperly instructed witnesses not to answer questions.[5]  Both engaged in conduct that violated the Local Rules of this Court[6] and the Federal Rules of Civil Procedure.[7]  As if this did not make for already contentious depositions, the attorneys added spice to the mix:  Plaintiff's counsel chose to take video depositions, but apparently did not disclose that the videographer was her husband. When Plaintiff's counsel adjourned a deposition in order to catch an airplane home to Illinois, Defense counsel chose to continue cross-examination of the witness in her absence.

---

[4]     *Damaj*, 164 F.R.D at 560.

[5]     In violation of Fed.R.Civ.P. 30(c)(2).

[6]     *Eg.*, Depositions extended beyond the seven-hour limit of LCvR30.1(b) and Fed. R. Civ. P. 30(d)(1).

[7]     *Eg.*, the manner of examination and cross-examination set forth in Fed.R.Civ.P. 30(c)(1).

The depositions that are the subject of these motions – those of witnesses Linda Subbiondo and David Friedly – were apparently reconvened after the instant motions were filed and have now been concluded. Thus, many of the objections set forth in the pleadings are now moot. Both sides, however, have asked the Court to impose sanctions on opposing counsel for his/her conduct.[8]

After reviewing the submissions of counsel, the Court finds that Plaintiff's Motion for Sanctions [Dkt. # 126] and Defendant's Motion for Sanctions [Dkt. # 145] should be **GRANTED IN PART**. Attorneys Holden and Dana Kurtz are each personally sanctioned $250.00 for violation of Fed. R. Civ. P. 30 and for abusive conduct at these depositions. Each shall pay this sum to the Tulsa County Bar Association for the purpose of sponsoring a Continuing Legal Education program on proper conduct at depositions. Payment shall be made within two weeks of the date herein.

**(2)  Instructions Not to Answer or Witness's Refusal to Answer.**

Plaintiffs complain that witnesses have refused to answer or been instructed not to answer critical questions. These are addressed in sequence.

**(a) QUESTION: What other companies have policies with AIG for stop-loss insurance[9]?  (Subbiondo was instructed not to answer).**

Plaintiffs contend that an answer to this question is relevant to their bad faith claim herein. The Court disagrees. Plaintiffs brought a very specific bad faith claim dealing with Defendant's alleged "refusing to timely pay Plaintiff's valid claim." *First*

---

[8]  Of course, much time and paper would have been saved had either attorney made good on the frequent threat to "call the judge." *See* LCvR 37.2(b). Alas, neither side utilized this lifeline.

[9]  The question is apparently meant to secure information as to what companies have insurance with Medical Excess LLC ("Medical Excess"). Medical Excess is a member company of American International Group.

*Amended Complaint*, Dkt. No. 46, ¶¶ 45-51.  Plaintiff has not alleged bad faith based on a general pattern or business practice.  Significantly, discovery is now closed.  Information on other companies doing business with AIG cannot reasonably lead to discovery of admissible evidence since discovery is over. The requested information is of no practical value at this stage in the proceeding.  If Plaintiffs truly believed that such information was critical to their bad faith claim, they should have requested and pursued it vigorously long before now.

**(b) QUESTION: Are you aware of any evidence of fraud by Ash-Kurtz or Grady Ash against AIG?  (Subbiondo).**

AIG has asserted a counterclaim against AG alleging fraud.  The essence of this counterclaim is that AG actively misrepresented that Ash-Kurtz was a full-time employee for whom AG could seek medical cost reimbursement under the AIG stop-loss policy.  AIG contends that AG fraudulently asserted Ash-Kurtz was a full-time employee and fraudulently concealed his actual status.  No fraud claim is alleged against Ash-Kurtz.

Subbiondo testified that she alone made the decision to file the counterclaim against AG Equipment.  (Subbiondo dep., vol. I, p. 42, lines 2-5).  At subsequent deposition, Subbiondo was asked if she contended that Ash-Kurtz "was participating in some kind of scheme to defraud AIG."  (Subbiondo dep., vol. II, pp. 366-67).  The witness answered that she did not know.  *Id*.  After Plaintiffs' counsel made two more attempts to get a fuller answer to the question, Defendant counsel objected that the question had been "asked and answered" and instructed the witness not to answer further.  A similar pattern then followed with respect to questions as to whether Subbiondo

7

contended that Grady Ash, owner of AG, participated in a fraud against AIG. (Subbiondo dep., vol. II, p. 368, lines 9-23).

Subbiondo has testified that she alone decided that the counterclaim should be brought against AG. (Subbiondo dep., vol. I, p. 42, lines 2-5). Therefore, it is fair to ask her the nature of the fraud claim she authorized.

Accordingly, Plaintiffs' Motion to Compel an answer to this question is **<u>GRANTED</u>**. Subbiondo must answer whether she contends that either Ash-Kurtz and/or Grady Ash participated in a scheme to defraud AIG and if so, on what she relies for that contention.

**(c)  QUESTION:  Do you have any evidence that Ash-Kurtz did not normally work 30 hours per week? (Friedly).**

Friedly responded that he had not received evidence that Ash-Kurtz *did* normally work 30 hours per week. Plaintiffs' Motion to Compel is **<u>GRANTED</u>**. Friedly must respond to the question posed by counsel: What evidence, if any, does AIG have that Ash-Kurtz did *not* normally work 30 hours per week.

**(d)  QUESTION:  Has AIG denied AG's claim for coverage? (Subbiondo and Friedly).**

Subbiondo was asked a simple question: Have you or AIG denied AG's claim for reimbursement for Ash-Kurtz' medical expenses? The witness responded by stating that "we don't have enough evidence to show she worked 30 hours per week." (Subbiondo dep., pp. 251-259). After being asked essentially the same question twenty-nine times, Subbiondo finally responded, "I don't know." *Id.* at p. 259, lines 10-11. Subbiondo has answered the question. However, AG is entitled to know if its claim has been denied.

8

Plaintiffs' Motion is **GRANTED**. AIG is directed to answer whether AG's claim in this matter has been denied and, if so, who made the decision to deny the claim and when.

### (3)  Plaintiffs' Document Requests.

Outstanding document disputes fall into several categories addressed in order below.

**(a) Plaintiffs' Request for Comparative Claim Files.**

In Plaintiffs' First Request for Production Nos. 6, 7 and 8 Plaintiffs sought "every claims file for every claim" that Defendant denied or investigated from 2003 to the present "based upon claims that the medical expense was not for an employee of the insured." In January 2008, Defendant responded by objecting on multiple grounds, including overly broad, vague, ambiguous, unduly burdensome and not reasonably calculated to lead to admissible evidence. Plaintiffs had these objections for nine months before filing their Motion to Compel on Oct. 20, 2008.

In Second Request for Production No. 1 Plaintiffs sought "any and all documents pertaining to claims submitted to AIG where the hours or work were the basis for an investigation, initial denial, stop payment, and/or denial of a claim." In May 2008, Defendant responded and objected on the same grounds outlined above.

Plaintiffs Third Request for Production No. 23 requested "All claims files and documents relating thereto wherever located that Defendant has been involved in that are similar to 'this referral' as suggested in Defendant's Production of Documents Bates: Claims0610." Plaintiffs seek comparative files in support of their claim for bad faith – breach of the implied covenant of good faith and fair dealing. Plaintiffs contend that the

requested documents will enable them to compare how AIG handled other claims where an employee's full time work status was an issue.

After due consideration of the document requests, the Court hereby **DENIES** the motion to compel as to comparative files. In addition, Plaintiffs' Third Request for Production No. 23 is vague and over-broad. A party responding to discovery must be able to understand the request and determine what documents may be responsive to the request. Plaintiffs' No. 23 fails that test and the motion to compel as to this discovery request is **DENIED** on that basis.

Plaintiffs' other requests for comparative files are denied for several reasons: First, Plaintiffs have offered no foundation from which the Court can conclude that these files are relevant to the claims and defenses herein or may lead to admissible evidence. Second, the requests are grossly over-broad. For example, there is no geographical limitation in the requests. Since bad faith law is a creature of state law requests for files outside this state are over-broad. Third, at the stage of the proceedings there is no practical way to commence discovery along this line. Discovery cutoff was Oct. 31, 2008. There is no way that this new avenue of discovery can be explored in any rational fashion without reopening discovery and allowing significant additional discovery time. Comparison of "similar" claims is impossible without deposition testimony to establish (1) that the claims are, in fact, similar, and (2) why they were handled differently than the claim at issue herein. Discovery has already been extended three times for a total of eight months. Opening the door to comparative claims discovery will inevitably derail the schedule in this case, needlessly increase costs and delay resolution of this matter. Thus,

permitting this new discovery now cannot lead to discovery of admissible evidence since discovery is closed.

While the Federal Rules of Civil Procedure do not specify a time limit for bringing a motion to compel, the motion must be brought within a reasonable time. 10A Federal Procedure § 26:779. *See Riley v. United Air Lines, Inc.*, 32 F.R.D. 230, 233 (S.D.N.Y. 1962) (six-week delay in moving to compel not unreasonable under the circumstances); *Lapenna v. Upjohn Co.*, 110 F.R.D. 15, 18 (E.D.Pa. 1986) (16-month delay unreasonable); *Continental Indus.*, 211 F.R.D. at 444 (motion filed six months after discovery cutoff and three weeks before trial unreasonable). Here, Plaintiffs have waited 10 months from service of Defendant's objections to the First Requests for Production to move to compel production. The motion is untimely. Plaintiffs have waited too long to seek the requested discovery.

Plaintiffs rely on two cases in support of their Motion to Compel this information: *Vining v. Enterprise Financial Group, Inc.*, 148 F.3d 1206 (10th Cir. 1998) and *Broadway Park LLC v. The Hartford Cas. Ins. Co.*, 2006 WL 2321410 (W.D.Okla. Aug. 9, 2006). Each is distinguishable from the case at hand.

In *Vining* Plaintiff asserted that a credit life insurance company routinely rescinded its policies when a claim was made without determining whether it had a reasonable basis for doing so. Plaintiff sought to prove that Enterprise Financial Group "engaged in a pervasive, consistent pattern of abusive rescissions." *Vining.* 148 F.3d at 1218. Thus, Vining's claim targeted Enterprise's "general business practices." *Id.* That is not the case here. Here it is undisputed that, in fact, AIG began paying on AG's claim and had a $467,000 reimbursement check ready for delivery to AG when an issue arose

as to whether Ash-Kurtz was eligible for insurance coverage under AG's Plan. The First Amended Complaint makes no allegations whatsoever of a general business practice by AIG to deny insurance claims and no such evidence has been proffered in support of the requested discovery.

In *Broadway Park* the owner of a business park asserted a bad faith claim against his insurer over the handling of a claim for roof damage to several buildings during a spring hail storm. Plaintiff sought documents related to similar hail losses, and limited its request to "property damage claims caused by rain or hail on April 21, 2004, to buildings located within a radius of 1 mile from Broadway Business Park in Oklahoma City, OK." *Broadway Park*, 2006 WL 2321410 at *2. The court found this request narrowly tailored in time and location in seeking relevant evidence. Here, Plaintiffs' request is not similarly limited and coming on the eve of discovery cutoff, would necessitate a further extension of the Court's schedule.

For these reasons, the Motion to Compel is **DENIED** as to comparative files.

**(b) AIG's Litigation Report.**

Friedly testified that AIG maintains a spreadsheet document listing and summarizing lawsuits brought against the company. Although the Court has similar concerns as to the relevance of this report, since the spreadsheet is readily available, apparently contains information concerning Plaintiffs' claims in this case, and its production would not be overly burdensome, Plaintiffs' Motion to Compel the spreadsheet litigation report is **GRANTED**.

**(c)  Original Claims File.**

At the hearing, Defendant agreed, subject to review for privilege, to produce the copy file referred to in deposition testimony as the original claims file within one week.

**(d) Other Bad Faith Claims Files.**

Plaintiff's motion is **<u>DENIED</u>** for the reasons set forth above with respect to comparative claims files.  There is no assurance that other bad faith claims would have any relevance to the claim asserted herein and investigation of any such bad faith claims would require significant new discovery.

**(e)  Insurance Coverage for Bad Faith.**

Plaintiffs seek information as to whether AIG has insurance coverage for the bad faith claim asserted herein.  Rule 26 provides that as part of initial disclosures the parties are to provide:

> (iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1)(A)(iv).

AIG shall produce for inspection any insurance policies it holds that could provide coverage for AG's bad faith claim.

**B.     Defendant's Discovery Motions [Dkt. Nos. 145 & 148].**

**1. Motion to Bar Plaintiffs' Use of Deposition Video**

Defendant seeks to bar Plaintiffs from using video of the depositions of Subbiondo and Friedly because the videographer left the depositions without recording Defense counsel's cross-examination.

13

A brief summary of events is necessary to understand the basis of this motion. Plaintiffs took the depositions of Subbiondo and Friedly. All depositions in this case apparently were videoed.[10] The first installment of Subbiondo's deposition took place in California on August 26, 2008, beginning at 8:30 a.m. After four hours of questioning, attorney Dana Kurtz stated that she had to leave to catch a flight and that the deposition would have to be reconvened. Holden sought to conduct brief cross-examination of the witness, but Dana Kurtz said Holden could not conduct any cross-examination until she had completed her direct exam. Dana Kurtz and her husband then left the deposition, whereupon Holden proceeded to cross-examine Subbiondo before the court reporter but outside the presence of Dana Kurtz. Holden's cross-examination lasted about 10 minutes.

Subbiondo's deposition was reconvened on two subsequent occasions, but Holden did not revisit the cross-examination he had conducted on August 26 after Dana Kurtz' departure.

Similarly, David Friedly's deposition in California began at 11 a.m. on Oct. 9, 2008. At 4 p.m., Dana Kurtz announced that she had a flight to catch to return to Chicago and that Holden could cross-examine the witness for no more than 20 minutes. When Holden began his cross-examination by asking the witness to describe his background "for the ladies and gentlemen of the jury", Dana Kurtz objected to Holden conducting a "trial deposition." (Friedly dep. pp. 191-200). A protracted argument ensued until Dana Kurtz and her husband left the deposition. Holden then cross-examined the witness before the court reporter for approximately 50 minutes. Friedly's

---

[10] Curtis Kmiecek, the husband of Plaintiffs' attorney, conducted the video recording of these depositions. A court reporter was also present to make a stenographic record. Apparently, the relationship between Plaintiffs' counsel and the videographer was not disclosed to Defendant.

14

deposition was subsequently reconvened; however, Holden apparently did not revisit the cross-examination he had conducted outside Dan Kurtz' presence.

The Court would have sympathy for Defendant's position if the depositions at issue had *not* been reconvened. In that case, Defendant would have been denied the opportunity for video cross-examination; however, in this case both depositions were reconvened with videographers present. Thus, Defendant cannot complain that it was denied an opportunity to have cross-examination of these witnesses videotaped. Holden could easily have repeated his prior cross-examination when the depositions reconvened. Furthermore, it should have been obvious to Defense counsel that the cross-examination conducted when Plaintiffs' counsel was absent was improper. Rule 30 states that "examination and cross-examination of a deponent proceed as they would at trial…." Fed.R.Civ.P. 30(c)(1). Witnesses are not questioned at trial without counsel for all parties being present. Whatever the propriety of Dana Kurtz and her husband/videographer unilaterally adjourning these depositions, it is clear that Holden's cross-examination *in absentia* was impermissible, and could have been corrected when the depositions reconvened. Accordingly, the Motion to bar Plaintiffs' use of these videos is **<u>DENIED WITHOUT PREJUDICE</u>**. To the extent that Defendant objects to the use of Curtis Kmiecek as the videographer because of his relationship to Dana Kurtz, the objection may be reasserted at trial after Defendant has reviewed the video taken by Kmiecek to see if Defendant has been prejudiced in any way by his handling of the video. Furthermore, if Subbiondo and Friedly both testify live at trial, questions of the deposition videos may well become moot.

### 2. Motion for Sanctions

Defendant seeks sanctions for deposition conduct described above in section III(A)(1),  For the reasons set forth in that section, the motion is **GRANTED IN PART**. Both Holden and Dana Kurtz are sanctioned $250.00 for deposition misconduct.  Each lawyer shall make the $250 payment to the Tulsa County Bar Association's Continuing Legal Education fund to be used for a program on deposition etiquette and behavior.

### IV.
### SUMMARY

For the reasons set forth above, Plaintiffs' Motion to Compel [Dkt. No. 124] and Plaintiffs' Emergency Motion for Protective Order and Sanctions [Dkt. No. 126] are **GRANTED IN PART AND DENIED IN PART.**  Defendant's Motion for Exclusion of Plaintiff's Use of Video and for Sanctions [Dkt. Nos. 145] is **DENIED WITHOUT PREJUDICE** and Defendant's Motion for Sanctions [Dkt. No. 148] is **GRANTED IN PART AND DENIED IN PART.**

IT IS SO ORDERED, this 10th day of December 2008.

_Paul J. Cleary_
Paul J. Cleary
United States Magistrate Judge

16