## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AG EQUIPMENT COMPANY,<br>and EDWARD T. KURTZ, in his<br>capacity as Trustee of the Suzanne<br>Ash Kurtz Revocable Trust,<br><br>             Plaintiffs,<br><br>v.<br><br>AIG LIFE INSURANCE COMPANY, INC.,<br>and MARK HEIDENREITER,<br><br>             Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 07-CV-0556-CVE-PJC |

## OPINION AND ORDER

Now before the Court is Defendant AIG Life Insurance Company, Inc.'s Motion for Partial Summary Judgment (Dkt. # 195). Defendant AIG Life Insurance Company, Inc. ("AIG") requests summary judgment on plaintiff AG Equipment Company's ("AG") claims of breach of contract and breach of the implied covenant of good faith and fair dealing. AIG also seeks summary judgment on its counterclaims of fraud/deceit, unjust enrichment, and money had and received. AG responds[1] that it is entitled to summary judgment on its breach of contract claim and, at a minimum, there are genuine issues of material fact that preclude summary judgment on both claims.[2]

---

[1]     AG requested and received leave to file a response up to 35 pages in length. Dkt. #237. AG's response was 35 pages, but only because the first 12 pages were single-spaced. The Court declines AIG's request to strike plaintiff's response. However, plaintiff is warned that any future non-compliance with the local rules concerning the formatting of court filings will result in an appropriate sanction, including possible striking of the offending motion or brief.

[2]     Plaintiffs' motions for summary judgment will not be addressed in this Opinion and Order, although this Opinion and Order will undoubtedly have some impact on later rulings on plaintiffs' motions.

# I.

AG provided its employees with medical insurance through a self-funded Medical Benefits Plan ("the Plan").[3]  Beginning in May 2003, AG purchased stop-loss insurance coverage from AIG, and AG subsequently purchased stop-loss insurance from AIG each year through May 1, 2007.  AG was directly responsible for paying the first $40,000 of healthcare costs incurred by covered employees but, under the stop-loss Policy ("the Policy"), AG could seek payment of "eligible expenses" from AIG of excess amounts falling with the Policy and up to the Policy limits of $1 million per employee.  The Policy defined eligible expenses as "the charges which are covered and paid under the Plan, subject to any limitations of this Policy."  Dkt. # 200, Ex. 1, at 5.  This definition did not change at any time while the Policy was in force.  AIG used a third-party claims administrator, Mercer, to process claims under AG's policy.

AIG reviewed AG's Plan and agreed to provide stop-loss coverage based on the terms of the Plan.  Id., Ex. 5, at 2.  If AG intended to amend the Plan, it was required to send the amendments to AIG for review, and the amendments would not have any effect on payments issued under the Policy until the amendments were "reviewed and accepted" by AIG.  Id.  Under the Plan, a person is eligible for coverage if he or she:

> (1)   is a Full-Time, Active Employee of the Employer.  An Employee is considered to be Full-Time if he or she normally works at least 30 hours per week and is on the regular payroll of the Employer for that work.

---

[3]   AG asks the Court to strike many of AIG's statements of undisputed fact on grounds of relevance and non-compliance with LCvR. 56.1.  Plaintiff is advised that this Court does not strike statements of fact on these grounds.  The Court may find that some of defendant's statements are disputed or irrelevant, but this does not require the Court to strike them.  In fact, this may deprive AIG of the right to a full appellate review of its claims and striking statement of facts from the record, even if disputed, is not an appropriate remedy.

       (2)      is in a class eligible for coverage.

       (3)      completes the employment Waiting Period of 60 consecutive days as an Active Employee. . . .

Id., Ex. 5, at 6. The Plan does not expressly distinguish between hourly and salaried employees and there is no provision of the Plan exempting salaried employees from the 30 hour per week requirement. At some point after this case was filed, AG amended the Plan to remove any reference to the 30 hour per week requirement for salaried employees. Id., Ex. 24, at 144.

In 2001, AG hired Suzanne Ash Kurtz, and she was employed by AG until 2007. AG asserts that Kurtz was hired as AG's in-house counsel, but AIG does not concede this fact.[4] She earned $2,500 per month or $30,000 per year. Id., Ex. 6, at 6-18. Kurtz was the ex-wife of AG's CEO, Grady Ash, and she was a licensed attorney in the state of Oklahoma. In late 2003, Kurtz became seriously ill and was diagnosed with Leiomyosarcoma, or MLS, in the connective tissue around her lungs. She required several surgeries and hospital stays, and her medical expenses amounted to several hundred thousand dollars during the course of her treatment. AG paid the bills pursuant to the Plan, and AG requested reimbursement from AIG for amounts covered by the Policy.

On April 24, 2007, Mercer received a telephone call from Mark Heidenreiter, a janitor for AG. Id., Ex. 15. Heidenreiter claimed that he found a folder of e-mails spanning several years in Ash's wastebasket and the e-mails suggested that Ash had colluded with Kurtz to defraud AIG. Id., Ex. 14, at 6. Specifically, he claimed that Ash put his ex-wife on the payroll for the purpose of providing her health benefits, but Kurtz did not actually work for AG. Id. at 12. Heidenreiter

---

[4]      For the purpose of ruling on AIG's motion for partial summary judgment, the Court will view the evidence in a light most favorable to the non-moving party and assume that Kurtz served as AG's in-house counsel.

claimed that he kept the documents because he believed the e-mails might be "evidence that would need to be turned over to the authorities." Id. at 6.  Heidenreiter's wife, Killeen Heidenreiter, was employed as the controller for AG until 2005,[5] and Heidenreiter claimed that his wife could corroborate his claims that Kurtz did not work at least 30 hours a week. Id. at 8.  Heidenreiter sent the documents to Mercer and claims that he did not keep a copy of any of the documents taken from Ash's office.

The documents consisted of numerous e-mails between Kurtz and Ash and several handwritten documents.  Many of the initial e-mails concerned the formation of a tax-exempt foundation, the H.G. Ash Foundation, with funding from AG.  On May 7, 2001, Kurtz sent an e-mail to Ash stating "Hey General . . . .  how about 30 hours at minimum wage????  Help me figure out this insurance thing.  oh, and is that 30 hours a week? or 30 hours a month? . . ." Id., Ex. 17, at 13. Ash responded on the same day and wrote:

> OK Sugar, let's do this.
>
> I will put you on our payroll as a full-time assistant to our controller, Killeen Heidenreiter.  Your primary responsibility will be [sic] assist Killeen evolve our human resources objectives and document the plan.
>
> Your initial compensation will be $2,500/month with discretionary bonuses based on our perception of your contribution to our growth plan.
>
> We, of course, will not expect you to work unless you feel like doing so.  Your work, [sic] can further be accomplished in the convenient atmosphere of your home surroundings.

---

[5]     Killeen Heidenreiter was not fired by AG.  However, she was receiving long-term disability benefits due to a medical condition and was no longer an active employee for AG. Dkt. # 200, Ex. 21, at 1.

We will further consider your starting employment date to be 4/1/01, which will allow you and your dependents to enroll in our group health insurance program on 6/01/01.

You will need to visit with Killeen before 6/01/01, and complete all of the enrollment documents.  Her direct phone is 461-7305.  She will be expecting your call for this purpose.  For the time being let's keep our deal between [sic] the three of us.  Secondly, it's nobody's business but ours anyway.

Welcome to A G Equipment Sugar.  We are excited about having you on our side.

Id., Ex. 17, at 14.

Earlier on April 24, 2007, AIG had sent a check to AG in the amount of $467,775.89, as payment for expenses submitted by AG for medical treatment received by Kurtz.  AIG immediately stopped payment on the check and initiated an investigation into Heidenreiter's allegations that Kurtz was not actually working for AG.  AIG's claims manager, Linda Subbiondo, referred the claim to AIG's investigative division, AIG-WIR, and Marie Bott was assigned to investigate the claim.  Bott requested employment information from AIG, such as Kurtz's employment contract, I-9, and W-4.  Dana Kurtz responded to Bott's request and informed Bott that she was an attorney representing AG in this matter.  Bott determined that Kurtz was placed on AG's payroll in April or May 2001, but she could not determine how many hours per week Kurtz worked.  She reviewed the e-mails produced by Heidenreiter and stated:

> It is clear that a major element of her compensation was the receipt of insurance benefits, and she repeatedly expressed her appreciation for the insurance benefit.  I was not provided any documentation that gave any indication of how many hours she worked weekly.  She did, however, give legal advice relating both to establishing a non-profit charitable trust to protect Mr. Ash's assets from estate taxes at his death and to AG Equipment's legal problems.  At least some of the emails discussing legal matters were exchanged while Ms. Kurtz was undergoing chemotherapy.  I am not aware of any reason to believe that the number of emails discussing legal advice provides a reliable indication of how often advice was given, because advice could also have been given orally or by paper correspondence.

5

Id., Ex. 21, at 2.  Bott determined that Kurtz was performing some amount of legal work for AG but, as a non-attorney, she did not feel qualified to assess the number of hours that the work described in the e-mails might involve.  Her conclusion was that the e-mails alone did "not establish one way or the other whether Ms. Kurtz worked enough to be considered a full time employee."  Id. at 3.  AIG hired an attorney to investigate AG's claim based on Bott's recommendation.  Id., Ex. 18, at 6.

AG demanded immediate payment of the disputed claim and asserted that it had provided AIG all of the relevant information necessary to process the claim.  Id., Ex. 22, at 2.  AG claimed that Heidenreiter was a "disgruntled" former employee who was upset with Ash for placing Killeen Heidenreiter on disability, and alleged that Heidenreiter illegally accessed private documents on Ash's computer in an attempt to harm Ash and AG.  Id. at 4.  AIG informed AG that its claim for Kurtz's medical expenses was neither accepted nor denied, but the claim was pending while AIG conducted an investigation in Kurtz's employment status.  Id.  AIG also rejected AG's assertions that Heidenreiter was a disgruntled former employee.  Id.  AIG requested an examination under oath ("EUO") of Ash and Kurtz as part of its investigation.  Id. at 5.  AG refused to produce Ash or Kurtz for an EUO, because AG claimed that the Policy did not authorize AIG to take an EUO of any AIG employee.[6]  Dkt. # 240, Ex. 2, at 6.  AIG's attorney responded that, without the EUOs, "there is not much left to discuss as my client will not make this payment with the cloud of uncertainty that hangs over this claim . . . ."  Dkt. # 200, Ex. 22, at 9.

---

[6]      In his deposition, Ash testified that he would have voluntarily given AIG a sworn statement before this lawsuit was filed, regardless of the Policy language.  Id., Ex. 25, at 2.

6

After the parties were unable to reach an agreement, AG filed this lawsuit on September 7, 2007. When the lawsuit was filed, AIG had not formally denied AG's claim for Kurtz's medical expenses and AIG states that the claim was pending. During discovery, AIG requested examples of Kurtz's legal work to verify that Kurtz actually performed legal work for AG. Dkt. # 91. AG refused to produce Kurtz's work, and claimed that the documents were privileged. Dkt. # 115-2. However, AG produced a privilege log identifying legal work allegedly performed by Kurtz. Kurtz gave two depositions in this case. In her first deposition, Kurtz stated that she worked at least 30 hours per week and sometimes as many as 60 hours per week. Id., Ex. 23, at 3. In her second deposition, she testifed that other AG employees and executives could verify her claim that she worked at least 30 hours per week. Id., Ex. 24, at 5. Ash testified that he did not monitor the hours of salaried employees, but he felt that he was in a position "to make a judgment as to whether or not [Kurtz] had done 30 hours a week." Id., Ex. 25, at 3. He further testified that he believed all salaried employees worked more than 30 hours per week, but he did make any specific reference to Kurtz. Dkt. # 206-3, Ex. 15, at 64. Based on her observations as AG's former controller, Killeen Heidenreiter stated that Kurtz did not work 30 hours per week. Id., Ex. 27, at 11-12. Laura Lawrence, AG's current controller, testified that Kurtz was a salaried employee for AG, but she has no personal knowledge concerning the number of hours Kurtz worked. Id., Ex. 29, at 4. Lawrence stated that AG does not keep track of time for salaried employees and has no records that would conclusively prove AG's assertion that Kurtz worked at least 30 hours per week. Id. at 5.

Fact discovery closed on October 31, 2008 and AIG filed a motion for partial summary judgment. AIG asks the Court to enter summary judgment on AG's claims of breach of contract and bad faith, and argues that the evidence shows that AG has not carried its burden to prove that Kurtz

was a covered employee under the Plan.  AG responds that AIG has ignored evidence in the record

establishing Kurtz's covered status, and AIG breached the Policy and acted in bad faith by denying

the disputed claim.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine

issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp.

v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986);

Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates

the entry of summary judgment, after adequate time for discovery and upon motion, against a party

who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but

rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

speedy and inexpensive determination of every action.'"  Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there

is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could

reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court

is "whether the evidence presents a sufficient disagreement to require submission to a jury or

8

whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

AIG seeks summary judgment on AG's claims of breach of contract and breach of the implied covenant of good faith and fair dealing, as well as on AIG's counterclaims.  AG asks the Court to deny AIG's motion for partial summary judgment, because AIG had an obligation to pay the disputed claim and there was no legitimate basis to dispute coverage.[7]

## A.

AIG ask the Court to enter summary judgment in its favor on AG's breach of contract claim, because the undisputed facts show that Kurtz was not a covered employee under the Plan.  It claims that AG has presented equivocal evidence concerning the number of hours worked by Kurtz and there is no admissible evidence showing that Kurtz worked at least 30 hours per week.  AG responds that Kurtz's deposition testimony establishes that she worked at least 30 hours per week and AIG should defer to AG's decision as Plan administrator that Kurtz was a covered employee.

Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document.  First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas.

---

[7]     AG also asks the Court to sanction AIG for filing a frivolous motion for summary judgment and alleges that AIG failed to cite two controlling Tenth Circuit Court of Appeals decisions that require entry of summary judgment in favor of AG. Dkt. # 240, at 19.  However, AG did not comply with the procedural requirements of Fed. R. Civ. P. 11 and a motion for sanctions is not properly before the Court. The Court has reviewed AIG's motion for partial summary judgment and finds no basis to sanction AIG on the Court's own initiative.

Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla. Civ. App. 2002).  If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004).  A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision."  Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998).  A policy term will be considered ambiguous only if it susceptible to more than one reasonable interpretation. Max True Plastering Co. v. U.S. Fidelity & Guar. Co., 912 P.2d 861, 869 (Okla. 1996).  If an insurance contract contains an ambiguous term, the Court may refer to extrinsic evidence to interpret the insurance policy.  Gable, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 767 (10th Cir. 1999) (citing Pierce Couch Hendrickson Baysinger & Green v. Freede, 936 P.2d 906, 912 (Okla. 1997)).  When construing an ambiguous term in an insurance contract, a court must consider "not what the drafter intended . . . but what a reasonable person in the position of the insured would have understood [the ambiguous provision] to mean."  American Economy Ins. Co. v. Bogdahn, 89 P.3d 1051, 1054 (Okla. 2004).

The Court finds that a genuine issue of material fact precludes summary judgment in favor of AIG on AG's breach of contract claim, because the parties have presented conflicting evidence concerning the number of hours Kurtz allegedly worked during her employment for AG.  In her deposition, she testified that she generally worked 30 hours per week and sometimes up to 60 hours per week.  Dkt. # 200, Ex. 23, at 3.  However, Ash and Lawrence testified that AG did not keep track of time for salaried employees and there are no time sheets or payroll records to verify Kurtz's assertion.  Id., Ex. 25, at 3; Id., Ex. 29, at 5.  Ash's deposition testimony also suggests that, as a

salaried employee, Kurtz did not need to work 30 hours per week.  Killeen Heidenreiter testified in her deposition that Kurtz did not work 30 hours per week.  Id., Ex. 27, at 11-12.  While the documents Heidenreiter found do not conclusively show that Kurtz did not work 30 hours per week, they contain statements which could reasonably suggest that Kurtz intended to work fewer than 30 hours per week.  Id., Ex. 17, at 14.  This genuine issue of material fact cannot be resolved without a credibility determination about the testimony of numerous witnesses, and thus is not capable of resolution on summary judgment.[8]  AIG's argument that AG failed to carry its burden to prove that Kurtz was a covered employee[9] raises the same genuine issue of material fact.  Therefore, AIG is not entitled to summary judgment on AG's claim of breach of contract.

## B.

AIG argues that a legitimate coverage dispute existed and it could deny AG's claim for coverage of Kurtz's medical expenses without incurring liability for acting in bad faith.  AG responds that no dispute existed at the precise moment that AIG agreed to send a check for the now-disputed claim, and AG was barred from denying the claim based on the information provided by Heidenreiter.  AG also argues that AIG conducted a "sham" investigation and AG's refusal to produce Ash and Kurtz for EUOs does not excuse AIG's alleged bad faith conduct.

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured."  Christian v. Am. Home Assurance Co., 577 P.2d 899, 904 (Okla. 1977).  Violation

---

[8]     Due to this finding, the Court finds that summary judgment is not appropriate as to AIG's counterclaims for fraud/deceit, unjust enrichment, and money had and received.  These counterclaims turn on whether AIG properly denied the disputed claim.

[9]     AIG raises the issue of which party has the burden of proof that Kurtz was a covered employee.  In their proposed jury instructions and trial briefs, the parties should address who has the burden to prove this disputed fact.

of this duty gives rise to an action in tort.  Id.  "The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions."  Conti v. Republic Underwriters Ins. Co., 782 P.2d 1357, 1360 (Okla. 1989).  The Oklahoma Supreme Court and the Tenth Circuit have made clear that an insurer does not subject itself to a claim of bad faith merely by disputing coverage.  "The insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'"  Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1462 (10th Cir. 1989) (citing Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 762 (Okla. 1984)).  "The decisive question is whether the insurer has a 'good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy.'"  Buzzard v. Farmers Ins. Co., Inc., 824 P.2d 1105, 1109 (Okla. 1991) (quoting Buzzard v. McDanel, 736 P.2d 157, 159 (Okla. 1987)).  In order to succeed on a claim for bad faith, the claimant must be able to prove that the insurer's actions went beyond an act of simple negligence; however, it is not necessary to prove that the insurer acted recklessly to prove liability, even though recklessness is a requirement for punitive damages in a bad faith claim.  Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1094 (Okla. 2005).  The Court can consider only the "facts known or knowable about the claim at the time the insured requested the insurer to perform its contractual obligation."  Sims v. Travelers Ins. Co., 16 P.3d 468,  471 (Okla. Civ. App. 2000); see also Timberlake Construction Co. v. United States Fidelity & Guaranty Co., 71 F.3d 335, 340-41 (10th Cir. 1995).

The Court finds that AIG did not act in bad faith by denying AG's claim for reimbursement of Kurtz's medical expenses, because a legitimate coverage dispute existed based on the information available to AIG.  AIG received information from an AG employee, Heidenreiter, that Kurtz may

not be a covered employee under the Plan, and it had earlier the same day sent a substantial payment to AG to reimburse AG for Kurtz's medical costs.  Although AG repeatedly claimed that Kurtz worked at least 30 hours per week, much of this evidence was in the form of unsupported statements by company employees and vague payroll records that did not reflect the number of hours that Kurtz worked.  AG admits that it did not keep track of Kurtz's hours, and this created the issue of Kurtz's eligibility for coverage under the Plan.  AG denies that it failed to cooperate with AIG, but AG's failure to produce employees for sworn statements before this lawsuit was filed contributed to the implicit denial of AG's claim.

AG argues that there was no dispute about the availability of insurance coverage at the time that AIG's performance was requested, and AIG could not subsequently retract its decision to pay the claim based on Heidenreiter's statements.  AG relies on McCoy v. Oklahoma Farm Bureau Mut. Ins. Co., 841 P.2d 568 (Okla. 1992), to support its argument that AIG was prohibited from conducting any further investigation into the claim once it made an initial determination to pay it. In McCoy, the insurer denied an insured's claim under a homeowner's insurance policy based on its expert's report that the fire was intentionally set, even though this report conflicted with the statements of firefighters.  Id. at 568.  The Oklahoma Supreme Court found that the jury was faced with conflicting evidence as to whether the insurer had a good faith belief at the time performance was requested for withholding payment under the policy.  The court found that there was sufficient evidence to support the jury's verdict against the insurer on the insured's claim for bad faith.  Id. at 572.  While McCoy generally stands for the proposition that an insurer's bad faith is determined by reviewing the evidence available to the insurer at the time it denied the claim, here the claim was never denied before suit was filed.  To the contrary, AIG requested an investigation to determine

13

whether to pay or deny the claim.[10]  AG has cited no authority supporting its argument that AIG was barred from investigating Heidenreiter's allegations after preliminarily deciding to pay the claim. AG's interpretation of Oklahoma's bad faith law would preclude an insurer from conducting a thorough investigation after learning that an insured may have fraudulently concealed relevant information, and this is clearly not the intent of the Oklahoma Supreme Court's decisions on the tort of bad faith.  The mere fact that AIG stopped payment on the check for the disputed claim is not evidence of bad faith.

AG also argues that AIG conducted an inadequate investigation into Heidenreiter's allegations and it could not have denied AG's claim in good faith.  However, AIG did not rely solely on Heidenreiter's allegations to withhold payment on the disputed claim.  AIG assigned an investigator, Bott, to the claim and investigated Heidenreiter's allegations.  AIG's investigation uncovered a substantial amount of evidence suggesting that Kurtz may not have worked 30 hours per week or, at least, that the circumstances of her hiring were suspicious.  For example, the e-mails between Ash and Kurtz show that she agreed to accept employment with AG on May 7, 2001, but Ash agreed to list her start date as April 1, 2001.  Even if the tone of the e-mail suggested that Ash and Kurtz were joking about the number of hours she worked, it was reasonable for AIG to be concerned about Ash's statement that "[w]e, of course, will not expect you to work unless you feel like doing so."  Dkt. # 195, Ex. 17, at 14.  While this does not give any indication whether Kurtz subsequently worked at least 30 hours per week, it does suggest that Ash was willing to circumvent insurance coverage requirements.  AIG acknowledged that this evidence was insufficient to accept

---

[10]     Although AIG did stop payment on the check mailed earlier the same day, this Court finds that it was not a final decision to deny the claim.

or reject the claim, and asked for an EUO of Ash and Kurtz.  Dkt. # 200, Ex. 21, at 3; Id., Ex. 22, at 9.  After AG refused to produce Ash or Kurtz for an EUO, the parties reached an impasse and neither was willing to alter its position.  None of this evidence suggests that AIG's investigation was inadequate.

AG claims that AIG's investigation was a sham, because AIG considered the allegations of and evidence produced by Heidenreiter and disregarded Kurtz's own assertion that she worked at least 30 hours per week.  However, AG's disagreement with the Heidenreiters' testimony is not evidence of bad faith.  The evidence produced by AG about the number of hours worked by Kurtz was ambiguous, and did not clearly show that if she actually worked 30 hours per week.  AIG had an obligation to fully investigate the disputed claim and consider all of the evidence.  It could not disregard Heidenreiter's evidence, or ignore the implications of AG's ambiguous evidence, when deciding whether to pay AG's substantial claim for Kurtz's medical costs.  The fact that AIG did not give additional weight to the evidence produced by AG or defer to Kurtz's own assessment of her workload does not show that AIG acted in bad faith.

The Court also notes that AG's conduct interfered with AIG's ongoing investigation of the disputed claim and this undercuts AG's argument that AIG's investigation was inadequate.[11]  AG

---

[11]    AG argues that AIG was required to accept or reject the claim within 45 days of receipt of the claim under OKLA. STAT. tit. 36, § 1219,  and AIG's failure to comply with § 1219 is evidence of bad faith.  Section 1219 applies to "accident and health insurance" policies and it is not clear that it applies to this case.  Id. at § 1219(A). Even if the Court were to assume that § 1219 applies, the 45 day requirement applies only to "clean claims" and the disputed claim in this case was anything but clean.  Id. at § 1219(B)(2) (defining clean claim as a "claim that has no defect or impropriety, including a lack of any required substantiating documentation, or particular circumstances requiring special treatment that impedes prompt payment . . . .").  Therefore, compliance or non-compliance with § 1219 does not create an inference that AIG acted in bad faith.

refused to produce Ash or Kurtz for an EUO on the ground that such examinations were not authorized by the Policy.  However, AG has produced no evidence that it offered AIG a reasonable alternative to gather evidence in some other way.  AG also filed this lawsuit less than five months after AIG stopped payment on the check for the disputed claim, and this undoubtedly impeded AIG's ongoing investigation.  AG can not refuse to cooperate with AIG's requests for evidence and file a lawsuit, and then fault AIG for conducting an inadequate investigation.

Although a jury could conclude that AIG has an obligation to pay the disputed claim, the undisputed facts clearly show that AIG conducted a reasonable investigation into the disputed claim and had a legitimate basis to dispute coverage.  The Court is not required to accept AG's interpretation of the underlying facts and the evidence is not as clear cut as AG suggests.  In the course of its investigation, AIG found evidence raising legitimate issues concerning the existence of insurance coverage, such as the number of hours worked by Kurtz and e-mails suggesting that AG employed Kurtz for the sole purpose of providing her with insurance benefits.  While there is nothing inherently improper about accepting employment to acquire insurance, the e-mails and other evidence gathered by AIG created a reasonable basis to believe that Kurtz was not a covered employee.  AG's failure to fully cooperate with AIG's investigation delayed the resolution of AG's claim, and AIG's alleged failure to issue an expeditious payment or denial of the claim is not evidence of bad faith.  Therefore, AIG is entitled to summary judgment on AG's bad faith claim.[12]

---

[12]    Because AIG's motion for summary judgment has been granted as to AG's claim of bad faith, AIG's motion (Dkt. # 238) to exclude the testimony of AG's bad faith expert, David Bremer, is moot.

**IT IS THEREFORE ORDERED** that Defendant AIG Life Insurance Company, Inc.'s Motion for Partial Summary Judgment (Dkt. # 195) is **granted in part** and **denied in part**: it is granted as to AG's bad faith claim; it is denied as to AG's breach of contract claim and as to AIG's counterclaims.

**IT IS FURTHER ORDERED** that Defendant AIG Life Insurance Company's Motion to Exclude Testimony and Report of Plaintiff's Proposed Expert David Bremer (Dkt. # 238) is **moot**.

**DATED** this 21st day of January, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT