### UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AG EQUIPMENT COMPANY, and<br>EDWARD T. KURTZ, in his capacity<br>as Trustee of the Suzanne Ash Kurtz Revocable<br>Trust, | )<br>)<br>)<br>) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-556-CVE-PJC |
| | ) | |
| AIG LIFE INSURANCE COMPANY, and<br>MARK HEIDENREITER | )<br>) | |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER

Now before the Court is Plaintiffs' Motion for Summary Judgment Against Defendant
Heidenreiter (Dkt. # 203).  Plaintiffs AG EquipmentCompany ("AG") and Edward T. Kurtz, in his
capacity as Trustee of the Suzanne Ash Kurtz Revocable Trust, move for summary judgment on
their claims of intentional interference with contract, unjust enrichment, invasion of privacy,
intentional infliction of emotional distress, and violation of the Computer Fraud and Abuse Act, 18
U.S.C. § 1030.  Also before the Court is Plaintiffs' Motion Against Defendant Mark Heidenreiter
To Have Facts Deemed Admitted Pursuant To Fed. R. Civ. P. 56 And To Strike Assertions That Are
Not Supported By Admissible Evidence (Dkt. # 294).

## I.

The following facts are undisputed; where the parties disagree, it is so noted.[1]  For the

purpose of ruling on plaintiffs' motion for summary judgment, the Court will view the evidence in

a light most favorable to the non-moving party.  From 2002 until June 1, 2005, defendant Mark

---

[1]      Plaintiffs argue that pursuant to Local Rule 56.1, Heidenreiter must be deemed to have admitted plaintiffs' undisputed facts to which he responded either "no disagreement" or "unknown to defendant."  After reviewing Heidenreiter's response, it is evident that he did not intend to dispute the facts where he stated "no disagreement."  See Dkt. # 247, at ¶¶ 5, 9-11, 13-14, 17, 20, 35, 37, and 45.  Where Heidenreiter stated "unknown to defendant," those facts are primarily matters outside of Heidenreiter's knowledge.  See id., at ¶¶ 6-8, 24-33, 36, and 42-44.  Plaintiffs, however,  provide citations to evidence in the record, and the Court will rely upon the evidence provided to determine whether a genuine issue of material fact exists with respect to the facts that are "unknown to defendant."  It is unnecessary that Heidenreiter be deemed to have admitted these facts.

Plaintiffs further move to have some disputed facts deemed admitted or stricken from the record because of Heidenreiter's failure to fully abide by Local Rule 56.1.  See Dkt. # 203, at ¶¶  2-4, 15-16, 21-23, 38, 40.  However, because Heidenreiter is proceeding pro se, the Court will not undermine his obvious intention on a technicality.  It is clear that Heidenreiter made an effort to comply with local rules.  He responded to each of plaintiffs' allegations in numbered paragraphs, and cited to his own deposition testimony, referenced Killeen Heidenreiter's deposition testimony (Dkt. # 206, Ex. 26), and attached an e-mail previously in the record in support of his contentions.  Although Heidenreiter did not attach his deposition testimony as an exhibit or cite to other exhibits previously in the record, it is nonetheless clear that Heidenreiter intended to provide evidence to oppose summary judgment.

The Court notes that some of the deposition testimony cited by Heidenreiter is not in this summary judgment record.  With respect to those portions which are already in the record as exhibits to AG's or AIG's motions for summary judgment, it would be a waste of resources to require Heidenreiter to re-file those pages.  See, e.g., Dkt. # 247, at ¶¶ 18-19, 41.  Accordingly, the Court will consider those portions of Heidenreiter's deposition testimony which have previously been filed to be part of the record for this motion.  With respect to those portions of testimony not in the record at all, see, e.g., Dkt. # 247, at ¶¶ 15-16, and 40, the Court finds that ¶¶ 15-16 are not material for the purposes of this motion.  The facts contained in  ¶ 40 are also referenced in ¶ 19, and thus may be considered to be in the record on summary judgment.  Plaintiffs' motion to deem facts admitted or to strike (Dkt. # 294) is denied in its entirety.

Heidenreiter was an "independent contractor," who worked as a janitor at AG.  Dkt. # 203, at 7.  On or about June 1, 2005, Heidenreiter became a full-time salaried employee, working as the night janitor.  Id.  On or about August 1, 2005, Heidenreiter's compensation was increased from $2000 per month to $5000 per month with full benefits.[2]  Id.  Heidenreiter earned a total of $121,500 in salary and benefits.  Id.  In his capacity as a janitor, Heidenreiter was responsible for cleaning the AG facilities, taking out the trash, sweeping the floors, mopping, vacuuming, and cleaning the bathrooms and kitchens.  Id.  Heidenreiter did not have an AG email account, nor was he authorized to access the AG computer network or permitted to remove AG documents from AG employees' offices.  Id.  AG alleges that Heidenreiter monitored Ash's office, accessed his computer, and obtained confidential documents.  Id. at 8.  Heidenreiter denies that he ever accessed Ash's computer and denies telling Laura Lawrence, current AG controller, that he had done so.  Dkt. # 247, at 3.  Heidenreiter also denies that he ever told Lawrence that he felt that Ash had betrayed Heidenreiter's wife, Killeen,[3] and that he wanted Ash to "pay for it."  Dkt. # 247, at 3.

Plaintiffs allege that, in April 2007, Heidenreiter accessed the computer in Ash's office and removed confidential documents, including arguably privileged legal correspondence.  Dkt. # 203, at 9.  Heidenreiter denies that he ever accessed the AG computers, and claims that the only file he ever removed from Ash's office was found in the trash.  Dkt. # 247, at 3.

---

[2]     Plaintiffs allege that the only reason Heidenreiter was placed on the payroll was because he was blackmailing Grady Ash, CEO and owner of AG.  Id. Heidenreiter denies that allegation.  Dkt. # 247, at 3.

[3]     Killeen Heidenreiter was the AG controller until she went on voluntary disability leave in April 2005.  Dkt. # 203, at 9.

3

AG provided its employees with medical insurance through a self-funded Medical Benefits Plan ("the Plan").  Beginning in May 2003, AG purchased stop-loss insurance coverage from AIG Life Insurance Company, Inc. ("AIG"), and AG subsequently purchased stop-loss insurance from AIG each year through May 1, 2007.  AG was directly responsible for paying the first $40,000 of healthcare costs incurred by covered employees but, under the stop-loss Policy ("the Policy"), AG could seek payment of "eligible expenses" from AIG of excess amounts falling with the Policy and up to the Policy limits of $1 million per employee.  The Policy defined eligible expenses as "the charges which are covered and paid under the Plan, subject to any limitations of this Policy."  Dkt. # 200, Ex. 1, at 5.  This definition did not change at any time while the Policy was in force.  AIG used a third-party claims administrator, Mercer, to process claims under AG's policy.

On April 24, 2007, Heidenreiter contacted Mercer and stated that he knew that a reimbursement check for nearly $500,000 was to be processed for medical expenses paid by AG for Suzanne Ash Kurtz ("Kurtz").[4]  Dkt. # 203, at 11.  He told Mercer that Kurtz did not work for AG and AG was perpetuating a fraud on AIG.  Id.  Heidenreiter said that his information was based on what he learned from his wife and from a May 7, 2001 e-mail from Ash to Kurtz provided to

---

[4]      Kurtz's title was "in-house counsel," see Dkt. # 203, at 12, but it is disputed whether Kurtz in fact worked for AG.  See Dkt. # 247, at 2.  Heidenreiter did not know Kurtz personally, but was aware that she had been diagnosed with cancer and was undergoing treatment.  Dkt. # 203, at 13.

4

Heidenreiter by his wife.[5]   Dkt. # 247, at 4-5.   Mercer forwarded the information about Heidenreiter's call to AIG, and on April 30, 2007, AIG stopped payment on the reimbursement check.  Dkt. # 203, at 11, 13.

On May 15, 2007, AG President Kent Bright terminated Heidenreiter's employment.  Id. at 8.  Plaintiffs allege that Heidenreiter was fired because AG decided to outsource its janitorial

---

[5]        In the e-mail, Ash writes the following to Kurtz:

"OK Sugar, let's do this.

I will put you on our payroll as a full-time assistant to our controller, Killeen Heidenreiter.  Your primary responsibility will be [sic] assist Killeen evolve our human resources objectives and document the plan.

Your initial compensation will be $2,500/month with discretionary bonuses based on our perception of your contribution to our growth plan.

We, of course, will not expect you to work unless you feel like doing so.  Your work, [sic] can further be accomplished in the convenient atmosphere of your home surroundings.

We will further consider your starting employment date to be 4/1/01, which will allow you and your dependents to enroll in our group health insurance program on 6/01/01.

You will need to visit with Killeen before 6/01/01, and complete all of the enrollment documents.  Her direct phone is 461-7305.  She will be expecting your call for this purpose.  For the time being let's keep our deal between [sic] the three of us.  Secondly, it's nobody's business but ours anyway.

Welcome to A G Equipment Sugar.  We are excited about having you on our side.

Dkt. # 247, at 8; Dkt. # 200, Ex. 17, at 14.

function and for "lack of performance."[6] Id. However, Heidenreiter contends that he was fired for making the phone call to Mercer. Dkt. # 247, at 3. During discovery, Kurtz gave a deposition in which she stated that she did not know Heidenreiter personally, but was distressed that Heidenreiter had contacted Mercer regarding her personal medical expenses.[7] Dkt. # 203, at 13.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there

---

[6]     Plaintiffs allege that Heidenreiter "self-admitted to using illegal drugs during his employment with AG Equipment." Id. at 12. Heidenreiter admitted to smoking marijuana at a party in February 2002, prior to his employment at AG, but denies that he used illegal drugs during his employment. Dkt. # 247, at 4.

[7]     While this litigation was pending, Kurtz died and Edward T. Kurtz, in his capacity as the trustee of the Suzanne Ash Kurtz Revocable Trust, was substituted as plaintiff. Dkt. # 265.

is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

Finally, <u>pro</u> <u>se</u> pleadings must be liberally construed.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Weinbaum v. City of Las Cruces</u>, 541 F.3d 1017, 1029 (10th Cir. 2008); <u>Hall v. Bellmon</u>, 935 F.2d 1109-10 (10th Cir. 1991).  However, even <u>pro se</u> litigants are required to comply with the "fundamental requirements of the Federal Rules of Civil Procedure." <u>Ogden v. San Juan County</u>, 32 F.3d 452, 455 (10th Cir. 1994).

### III.

Plaintiffs request summary judgment on all of their claims against Heidenreiter: intentional interference with contract, unjust enrichment, invasion of privacy, intentional infliction of emotional distress, and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

### A.    AG's Claim for Intentional Interference with Contract

In order to prevail on a claim for intentional interference with contract, a plaintiff must show that he or she had a business or contractual right that was interfered with; the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable; and damage was proximately sustained as a result of the complained-of interference. <u>Mac</u>

Adjustment, Inc. v. Property Loss Research Bureau, 595 P.2d 427, 428 (Okla. 1979); see also Niemeyer v. U.S. Fidelity & Guar. Co., 789 P.2d 1318, 1320 (Okla. 1990) ("An action for tortious interference of contract arises when one maliciously interferes in a contract to the detriment of the other."). Plaintiff must show that there was malicious intent on the part of the defendant. See Mac Adjustment, 595 P.2d at 428. Malice is defined as "an unreasonable and wrongful act done intentionally, without just cause or excuse." Tuffy's, Inc. v. City of Oklahoma City, No. 105705, 2009 WL 146684, at *3 (Okla. Jan. 20, 2009) (citation omitted). In addition, plaintiff must prove that defendant induced the third party to breach the agreement. Gabler v. Holder and Smith, Inc., 11 P.3d 1269, 1278 (Okla. Civ. App. 2000).

AG claims that Heidenreiter interfered with AG's contract with AIG, and acted with malice when he alerted AIG to the alleged fraud committed by AG, because of his desire for revenge against AG and Grady Ash. However, Heidenreiter denies that he acted with malice, and states that he believed that he was revealing potential criminal activity. Accordingly, there is a genuine issue of material fact that cannot be resolved without a credibility determination as to the testimony of Heidenreiter and other witnesses, and summary judgment is denied as to this claim.

## B.    AG's Claim for Unjust Enrichment

Under Oklahoma law, unjust enrichment "describes a condition resulting from the failure of a party to make restitution in circumstances where it is inequitable." Lapkin v. Garland Bloodworth, Inc., 23 P.3d 958 (Okla. Civ. App. 2000). "A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." N.C. Corff Partnership, Ltd. v. OXY USA, Inc., 929 P.2d 288, 295 (Okla. Civ. App. 1996). See also

Clay v. Independent School Dist. No. 1 of Tulsa Cty., 935 P.2d 294, 301 n.11 (Okla. 1997); French

Energy Inc. v. Alexander, 818 P.2d 1234, 1237 (Okla. 1991).

Here, AG contends that Heidenreiter was unjustly enriched when he accepted salary for sub-

par performance and despite his alleged disloyalty to the company.  AG alleges that Heidenreiter

failed to perform his janitorial duties,[8] improperly accessed Grady Ash's office, and removed

confidential information from Ash's office and computer.  The record is devoid of evidence that

Heidenreiter did not perform his janitorial duties.  Further, Heidenreiter testified that he did not

access Ash's computer or improperly remove confidential information.  Dkt. # 247, at ¶ 18.  Thus,

there are genuine issues of material fact precluding summary judgment on this claim.

## C.      Kurtz's Claim for Invasion of Privacy

Kurtz (now her trustee) asserts a claim for the common-law tort of invasion of privacy by

intrusion upon one's seclusion.  To prevail on this particular theory of invasion of privacy, a plaintiff

must show that defendant committed a non-consensual intrusion which was highly offensive to a

reasonable person.  Gilmore v. Enogex, Inc., 878 P.2d 360, 366 (Okla. 1994) (citing Munley v. ISC

Financial House, Inc., 584 P.2d 1336, 1339 (Okla. 1978)).  See also RESTATEMENT (SECOND) OF

TORTS, § 652B ("One who intentionally intrudes, physically or otherwise, upon the solitude or

seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion

of his privacy, if the intrusion would be highly offensive to a reasonable person.").  "An intrusion

occurs when an actor believes, or is substantially certain, that he lacks the necessary legal or

---

[8]      Plaintiffs' counsel is cautioned not to misrepresent facts in the record.  AG states that
"Defendant Heidenreiter admitted that he was not performing his janitorial duties . . . ." Dkt.
# 203, at 17.  However, neither plaintiffs' statement of facts nor the deposition transcript
(Dkt. # 206, Ex. 7, at 76) contains any indication that Heidenreiter admitted that he did not
perform his janitorial duties.

personal permission to commit the intrusive act." Dubbs v. Head Start, Inc., 336 F.3d 1194, 1221 (10th Cir. 2003) (citation omitted) (agreeing with a Pennsylvania state court interpretation of "intrusion" and finding that the Oklahoma Supreme Court would likely agree with that interpretation).

Kurtz argues that Heidenreiter did not have authorization to access Kurtz's medical information and other correspondence from Ash's office, and thus committed an intrusive act. Heidenreiter contends that the documents he removed from Ash's office were in a file found in a trash can. Thus, there is a genuine issue of material fact as to whether there was a non-consensual intrusion. If Heidenreiter did find the documents in the trash can, then Heidenreiter, as a janitor, would not have had reason to believe that he lacked authorization to remove them. This issue cannot be resolved without a credibility determination, thus precluding summary judgment on this claim.

**D.     Kurtz's Claim for Intentional Infliction of Emotional Distress**

Kurtz (now her trustee) also alleges that Heidenreiter's actions constitute intentional infliction of emotional distress. Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage. See, e.g., Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998). The action is governed by the narrow standards

10

laid out in the RESTATEMENT SECOND OF TORTS, § 46.[9]  Id.  See also Miller v. Miller, 956 P.2d 887, 900 (Okla. 1998).  To prevail on a claim of intentional infliction of emotional distress, plaintiffs must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008) (citation omitted).

Here, as a matter of law, the conduct alleged in support of Kurtz's claim of intentional infliction of emotional distress simply does not rise to the level of conduct which is so outrageous as to be "utterly intolerable in a civilized community." RESTATEMENT, cmt. d.  See, e.g., Ishmael v. Andrew, 137 P.3d 1271 (Okla. Civ. App. Div. 2006) (holding that defendant's public accusation that plaintiff was a "liar" and had intentionally contaminated another's drink was insufficiently atrocious); Warren v. United States Specialty Sports Ass'n, 138 P.3d 580, 586 (Okla. Civ. App. Div. 2006) (publicly calling plaintiffs "cheaters," and accusing them of misrepresentations of fact on an application was not extreme and outrageous).  Even if all facts alleged by Kurtz are assumed to be

---

[9]      The Restatement, in pertinent part, provides that:

> "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."

RESTATEMENT SECOND OF TORTS, § 46, cmt. d.

true, Heidenreiter's conduct was at most vindictive or spiteful.  In no way was Heidenreiter's act of informing an insurance company of a possible fraud "extreme," "outrageous," or "utterly intolerable in a civilized community."  However, Heidenreiter did not cross-move for summary judgment on this claim. The Court cannot, <u>sua</u> <u>sponte</u>, grant summary judgment in favor of defendant. Nonetheless, Kurtz has not shown that there are no genuine issues of material fact and is not entitled to summary judgment on this claim.[10]

## E.     AG's Claim Under the Computer Fraud Act

Finally, AG alleges that Heidenreiter violated the Computer Fraud and Abuse Act (the "Act"), 18 U.S.C. § 1030, by accessing Ash's computer and removing confidential information. The statute provides that whoever "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value" is liable under the Act.  18 U.S.C. § 1030(a)(4). Although the Act is a criminal statute, it provides a civil right of action to any person who suffers a loss caused by violation of the statute.  <u>See</u> <u>id.</u>  However, because there is a genuine issue of material fact as to whether Heidenreiter accessed Ash's computer, or any other AG computer, it is unnecessary to address any other aspect of AG's claim under the Act.  Thus, summary judgment is denied as to this claim.

---

[10]     It is highly unlikely that this claim would survive a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50.  Kurtz's counsel is reminded of her ethical obligation to present only claims which are warranted under the existing law.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Summary Judgment Against Defendant Heidenreiter (Dkt. # 203) and Plaintiffs' Motion Against Defendant Mark Heidenreiter To Have Facts Deemed Admitted Pursuant To Fed. R. Civ. P. 56 And To Strike Assertions That Are Not Supported By Admissible Evidence (Dkt. # 294) are **denied**.

**DATED** this 30th day of January, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

13