UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AG EQUIPMENT COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-0556-CVE-PJC |
| | ) | |
| AIG LIFE INSURANCE COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

<u>OPINION AND ORDER</u>

Now before the Court are Plaintiff's Motion for Judgment Notwithstanding the Verdict
Pursuant to Rule 50 (Dkt. # 397) and Plaintiff's Motion for Judgment Notwithstanding the Verdict
Pursuant to Rule 59 (Dkt. # 398).  Plaintiff AG Equipment Company (AG) seeks judgment it its
favor on all claims between AG and defendant AIG Life Insurance Company, Inc. (AIG) or, in the
alternative, a new trial.

**I.**

AG is an Oklahoma corporation that provides health insurance benefits to its employees
through a self-funded employee benefits plan known as the AG Equipment Company Employee
Benefit Plan (the Plan).  Dkt. # 200, Ex. 5.  Beginning in May 2003, AG purchased stop-loss
insurance from AIG to insure some expenses incurred under the Plan.  Under the stop-loss or excess
loss policy (the Policy) issued by AIG, AG agreed to pay the first $40,000 of medical expenses
incurred by a covered employee and AIG would reimburse AG for excess amounts up to $1 million
per employee.  <u>Id.</u>, Ex. 1.  Under the Policy, AIG agreed to cover any expenses "covered and paid
under the Plan" within these limits.  <u>Id.</u> at 5.  AG retained a third-party claims administrator, Mercer
Health & Benefits Administration, LLC (Mercer), to process claims under the Plan, and AIG

retained Medical Excess, LLC (Medical Excess), as an underwriter and claims administrator to process claims for reimbursement received from employers operating self-funded plans.

AIG reviewed the Plan and agreed to provide stop-loss coverage for expenses covered by the Plan.  Under the Plan, a person is eligible for coverage if he or she:

> (1)    is a Full-Time, Active Employee of the Employer.   An Employee is considered to be Full-Time if he or she normally works at least 30 hours per week and is on the regular payroll of the Employer for that work.
>
> (2)    is in a class eligible for coverage.
>
> (3)    completes the employment Waiting Period of 60 consecutive days as an Active Employee. . . .

Id., Ex. 5, at 6.  The Plan does not expressly distinguish between hourly and salaried employees and there is no provision of the Plan exempting salaried employees from the 30 hour per week requirement.  AG claims that it subsequently informed AIG in 2004 that it did not track hours for salaried employees and all salaried employees were considered full-time employees under the Plan.

AG hired Suzanne Ash Kurtz in 2001, and agreed to pay her $30,000 per year and provide benefits under the Plan.  AG claims that Kurtz was hired as its in-house counsel, but AIG has not conceded that Kurtz actually worked in this capacity. Kurtz was the ex-wife of AG's CEO, Grady Ash, and they remained friends after their divorce.   In 2003, Kurtz was diagnosed with Leiomyosarcoma, a form of cancer in the connective tissue around her lungs.[1]  Kurtz required extensive medical treatment and AG covered her medical expenses under the Plan.  Between 2003 and 2007, Kurtz submitted medical bills to AG for several hundred thousand dollars and, in turn,

---

[1]    Kurtz died in November 2008.  The parties took a discovery deposition of Kurtz in April 2008 and a preservation deposition on November 4, 2008.

2

AG sought reimbursement from AIG for these expenses.  AIG paid the claims submitted by AG from 2003 to 2007 based on AG's statements that Kurtz was a full-time employee of AG.

On March 24, 2007, Mercer received a call from Mark Heidenreiter, a janitor for AG, who claimed that he found copies of e-mails in Ash's wastebasket suggesting that Kurtz's employment was a sham for the purpose of providing her health benefits.  That same day, AIG had sent a check for $467,775.89 to AG as reimbursement for Kurtz's medical expenses, and AIG immediately stopped payment on the check.  Mark Heidenreiter's wife, Kileen Heidenreiter, worked for AG until 2005, and he stated that she could provide additional information  concerning Kurtz's employment for AG.  AG claims that Mark Heidenreiter had a grudge against Ash for placing his wife on disability leave and that Mark Heidenreiter illegally accessed Ash's computer to obtain the e-mails.

Most of the e-mails dated back to 2001, and described Kurtz's efforts to establish for Ash a tax-exempt foundation named the H.G. Ash Foundation.  On May 7, 2001, Kurtz sent an e-mail to Ash stating "Hey General . . . .  how about 30 hours at minimum wage????  Help me figure out this insurance thing.  oh, and is that 30 hours a week? or 30 hours a month? . . ." Id., Ex. 17, at 13. Ash responded on the same day:

> OK Sugar, let's do this.
>
> I will put you on our payroll as a full-time assistant to our controller, Killeen Heidenreiter.  Your primary responsibility will be [sic] assist Killeen evolve our human resources objectives and document the plan.
>
> Your initial compensation will be $2,500/month with discretionary bonuses based on our perception of your contribution to our growth plan.
>
> We, of course, will not expect you to work unless you feel like doing so.  Your work, [sic] can further be accomplished in the convenient atmosphere of your home surroundings.

We will further consider your starting employment date to be 4/1/01, which will allow you and your dependents to enroll in our group health insurance program on 6/01/01.

You will need to visit with Killeen before 6/01/01, and complete all of the enrollment documents.  Her direct phone is 461-7305.  She will be expecting your call for this purpose.  For the time being let's keep our deal between [sic] the three of us.  Secondly, it's nobody's business but ours anyway.

Welcome to A G Equipment Sugar.  We are excited about having you on our side.

Id. at 14. Based on the e-mails produced by Mark Heidenreiter, AIG initiated an investigation into Kurtz's employment status with AG, and Marie Bott was assigned as the investigator.  Bott requested from AG documents concerning Kurtz's hiring and employment. She received a response from Dana Kurtz, Kurtz's step-daughter, who informed Bott that she is an attorney representing AG in this matter.  Bott reviewed the documents produced by AG and the e-mails, but found that this information was not sufficient to determine if Kurtz was a full-time employee of AG.  Id., Ex. 21, at 2-3.

AG claimed that it had provided all information requested by AIG and demanded immediate payment of its outstanding claim for reimbursement of Kurtz's medical expenses.  Id., Ex. 22, at 2. AIG rejected AG's demand and requested an examination under oath of Kurtz and Ash.  Id. at 4. AG denied AIG's request for examinations under oath because it claimed that Policy did not specifically authorize such examinations.  AIG responded that AG's claim for reimbursement of Kurtz's medical expenses would be held in abeyance until AG complied with AIG's requests for additional information.  Id. at 9.

AG filed this lawsuit in the District Court of Tulsa County, Oklahoma on September 7, 2007 alleging breach of contract, and AIG removed the case to this Court on October 2, 2007.[2]  Dkt. # 2. AG subsequently filed an amended complaint adding a bad faith claim against AG.  AIG counterclaimed for breach of contract and fraud.  Both parties filed numerous discovery motions. Aside from ordinary discovery disputes concerning the timeliness of discovery responses, three major issues arose during discovery that required judicial intervention.

First, AIG requested discovery of work product reflecting Kurtz's work for AG.  AIG asked Magistrate Judge Paul J. Cleary to review hundreds of documents listed on AG's privilege log to determine if they were protected by work product privilege.  Dkt. # 91.  The magistrate judge asked AIG to identify a limited subset of documents that would be representative of Kurtz's work product, and he would review this limited group of documents.  AIG did not comply with the magistrate judge's order.  Dkt. # 129.  Instead, AIG filed a motion to reconsider the magistrate judge's ruling six weeks after the discovery cutoff expired.  Dkt. # 186.  On January 5, 2009, the magistrate judge entered an opinion and order denying AIG's motion to reconsider on the ground that AIG had not carried its burden to show that discovery should be reopened.  Dkt. # 219.  AIG appealed the magistrate judge's opinion and order.  The Court affirmed the magistrate judge's order but advised AG that work product privilege could be waived if it attempted to rely on the privileged documents at trial.

---

[2]       AG and Kurtz filed a separate lawsuit against Mark Heidenreiter.  That case was consolidated with this case at the request of the parties.  Dkt. # 67.  AIG moved for severance or separate trials of AG's claims against AIG and plaintiff's claims against Mark Heidenreiter, and that motion was granted.  Dkt. # 304.  Plaintiffs' claims against Mark Heidenreiter are not the subject of this Opinion and Order.

Second, AIG objected to plaintiff's conduct during depositions of David Friedly and Linda Subbiondo, and asked the magistrate judge to prevent AG from using these depositions for any purpose. Dkt. # 145. Plaintiff's counsel scheduled these depositions and arranged for a videographer. However, plaintiff's counsel failed to inform defense counsel that the videographer was her husband. During both depositions, plaintiff's counsel completed her direct examination of the witnesses and informed defense counsel that the deposition was concluded. Id. at 1-3. She told defense counsel that he could cross-examine the witnesses at an unspecified time in the future and the videographer refused to stay. When plaintiff's counsel left Friedly's deposition, defense counsel continued to examine the witness. The magistrate judge found that the conduct of plaintiff's counsel was improper, but he also found that defense counsel should not have cross-examined Friedly without plaintiff's counsel present. Dkt. # 188, at 13-15. He denied defendant's motion to prevent plaintiff from using the video depositions at trial. He also found that the issue would be moot if the witnesses testified at trial. He stated that AIG could renew its motion if the conduct of plaintiff's counsel caused AIG actual prejudice at trial.

Third, plaintiff's counsel did not designate deposition testimony within the deadline set by the scheduling order, which resulted in numerous motions and hearings before trial. Deposition designations were due January 2, 2009. Dkt. # 71. On that date, plaintiff's counsel sent an e-mail to defense counsel stating:

> In looking over the scheduling order this morning I see the deadline for exchanging among counsel the deposition designations in this case is today. The counter designations are due on Jan. 7 and then the transcripts of those portions we cannot agree on are to be filed with the Court's [sic] for determination by Jan. 21, 2008. At this time, I would say that I will or may designation [sic] the testimony of Holly Wirt, Pat Diorio, and Chad Nichol. At this time, I will designate **their entire deposition transcripts**.

Dkt. # 345, at 2 (emphasis in original).  AG's counsel claims that she also sent a letter to defense counsel that same day, stationg that she intended to designate the entire depositions of Marie Bott, John Snyder, Edward Ueeck, Linda Subbiondo, and David Friedly, in addition to entire depositions of the witnesses identified in her e-mail.  Id.  Plaintiff's counsel submitted her first deposition designations to defense counsel on January 21, 2009.  Concerning Kurtz's deposition testimony, plaintiff designated from Kurtz's preservation deposition (November 2008) only, and did not designate any testimony from Kurtz's discovery deposition (April 2008).  AIG asked the Court to strike plaintiff's designations of Kurtz's deposition testimony as untimely.  The Court considered this issue at the pretrial conference and permitted plaintiff to submit revised designations of Kurtz's deposition testimony no later than February 9, 2009.  The Court clearly stated that plaintiff should reduce its designations from Kurtz's preservation deposition.   Instead of submitting revised deposition designations from Kurtz's preservation deposition, plaintiff attempted to designate additional testimony from Kurtz's preservation deposition and included designation of Kurtz's discovery deposition.  Defendant objected to plaintiff's "revised"designations, and the magistrate judge significantly limited the parties' use of this testimony at trial.  Dkt. # 325.  Plaintiff appealed the magistrate judge's ruling, and the Court affirmed his decision.  Dkt. # 358.

Trial began on February 19, 2009.  The Court conducted voir dire and a petit jury was selected from the venire.   On the afternoon of February 19, 2009, both parties made opening statements and the first witness was called.  Plaintiff allowed defendant to call a witness out of turn, because the witness, Friedly, needed to return home that night.   Friedly is Vice-President of Operations for Medical Excess.  Dkt. # 416, at  31-33.  He testified that the Policy does not determine whether an individual employee of AG is a covered employee, because AG is the insured

under the Policy.  Id. at 47.  Medical Excess relied on the Plan to decide whether AG could be reimbursed for an employee's medical expenses because the Plan, rather than the Policy, provided the terms for the eligibility of AG's employees.  Id.  Friedly stated that a question arose as to Kurtz's eligibility under the Plan, but Medical Excess received confirmation from Mercer that Kurtz was a full-time employee.  Id. at 51-52.  In April 2007, Medical Excess received a call from Mercer that it had received documents raising a question as to Kurtz's eligibility under the Plan.  Id. at 53.  In his capacity as AIG's corporate representative, Friedly stated that the documents provided by Mercer raised legitimate concerns that Kurtz was not a full-time employee of AG.  Id. at 55-64; see also id. at 75 ("We have serious concerns that [Kurtz] was ever a full-time eligible employee under the plan.").  On cross-examination, Friedly acknowledged that the Plan administrator had discretion to interpret the Plan.  Id. at 79-81.  However, Friedly did not testify that he received an interpretation of the Plan from Mercer or AG.  Friedly testified that Medical Excess assigned a claims investigator, Bott, to review the evidence.  Bott determined that Kurtz was doing some legal work for AG, but she felt that she lacked the expertise to determine if Kurtz was ever eligible under the Plan.  Id. at 103-10.  Friedly testified that Medical Excess requested additional evidence from AG showing that Kurtz normally worked 30 hours per week, but AG never responded to the request.  Id. at 119-22.

Plaintiff called Ash as its first witness.  He testified that AG established a self-funded plan, in part, to give AG greater discretion to interpret and manage the Plan.  Dkt. # 417, at 163.  AG did not track hours for salaried employees and he "deemed" all salaried employees to be eligible under the Plan.  Id. at 164, 170.  Concerning Kurtz, he did not track Kurtz's hours or require her to track her hours, but he believed that she was available to work 40 hours a week.  Id. at 171-72.  Ash testified that he made the decision that Kurtz was an eligible employee under the Plan.  When asked

by plaintiff's counsel what he took into consideration to make this decision, Ash stated "[w]ell, the consideration is whether the relationship we agreed to be meaningful – meaningful for us as well for her, and we concluded it did.  And so we made the deal."  Id. at 179.  He added that "I deemed her to be an employee – I hired her.  I deemed her to be eligible under the plan as a salaried employee working full-time, available 24/7, blah, blah, blah.  And I put her on the group health plan."  Id. at 180.  Before Kurtz was hired, she assisted Ash in establishing the H.G. Ash Foundation for estate planning purposes, and she continued work on this matter after being hired by AG.  Id. at 182-83.  Ash testified that Kurtz worked on in-house matters during her employment, but did not work as a litigator on cases involving AG.  Id. at 183-84.  Ash described his e-mail to Kurtz suggesting that she did not need to work as "playful," and Kurtz did perform actual work with AG. Id. at 190.  At one point, Kurtz talked about quitting her job for AG, but he convinced her to remain. Id. at 194.  Ash testified that he was the Plan administrator during Kurtz's employment and believed he had authority to interpret the Plan.  Id. at 203-04.  He added that "[i]t was my plan.  I could change it any time I wanted to, cancel it at any time I chose to."  Id. at 205.  Ash mentioned Mark Heidenreiter on direct examination and provided some background into the events giving rise to this case.  Id. at 211.  Defense counsel objected to this line of questioning as irrelevant, but plaintiff was permitted to ask Ash several questions about Mark Heidenreiter's hiring.  Ash acknowledged that Mark Heidenreiter did not originally receive benefits under the Plan, but Ash added Mark Heidenreiter to the Plan when Heidenreiter's wife could no longer work due to disability.  Id. at 212-13.

On cross-examination, defense counsel focused on the circumstances of Kurtz's hiring and her eligibility for benefits under the Plan.  Ash acknowledged that he backdated Kurtz's start date

and added that "I believe, as plan director, plan administrator, I had – I deemed myself having authorization to backdate or enroll someone at a date and waive the 60-day probation." Id. at 218. Defense counsel asked Ash if he requested legal advice from Kurtz about the consent age for a young woman to have consensual sexual relations, and Ash admitted that he sought advice on this matter.[3] In response to further questioning, Ash stated that Kurtz told him to stay out of trouble and he took her advice. Id. at 230-31. Ash testified that he thought Kurtz's salary of $2,500 per month, or $30,000 per year, was reasonable and Kurtz agreed to accept this salary to serve as AG's in-house counsel. Id. at 234-35. The Court asked defense counsel to move on from this issue when his questioning became repetitive, even though plaintiff's counsel did not raise an objection. Id. at 236. Ash admitted that AG's receptionist, Vicki Vanderberg, and its janitor, Mark Heidenrieter, each made $60,000 per year. Id. at 236-37. Ash testified that an employee must normally work 30 hours per week to be eligible for coverage under the Plan, and all of his salaried employees met this standard. Id. at 244. However, he did not keep track of Kurtz's hours and he could not produce documentation to prove how many hours she worked. Id. at 244-45. Defense counsel asked Ash to review e-mails sent to him by Kurtz, and Ash acknowledged that Kurtz referred to her employment as a gift. Id. at 252. Ash addressed the June 15, 2004 letter to Mercer following Mercer's request for additional information about Kurtz's employment, and he stated that Mercer did not request an interpretation of the Plan nor did he intend to amend the Plan to eliminate the 30 hour per week requirement. Id. at 263-64.

---

[3]     The Court allowed this line of questioning both because it went to Ash's credibility and because the request and advice were contained in the exhibits admitted without objection. Id. at 230.

10

Plaintiff presented the testimony of Bott, Laura Lawrence, and Marilyn Fooshee before resting its case.[4]  Lawrence is the director of human resources at AG and has served in this position for four years.  Dkt. # 418, at 321.  Lawrence testified that AG is the Plan administrator.  She handles the "day-to-day administration, but [Ash] is the final decision-maker."  Id. at 323.  To become eligible for coverage under the Plan, a new employee must complete a probationary period and "maintain an active employment status as defined in the definitions of the terms within the [P]lan."  Id. at 325.  Mercer questioned Kurtz's employment status in December 2006, because Kurtz was receiving extensive cancer treatment and was taking a significant amount of sick leave.  Lawrence informed Mercer that Kurtz was not on disability leave and was available to work from home, and AG was treating Kurtz as an active, full-time employee.  Id. at 331-33.  The same issue arose in February 2007 when Kurtz was in San Francisco for several weeks for cancer treatment, and Lawrence once again informed Mercer that Kurtz was available to work at all times.  Id. at 335-36.  On cross-examination, Lawrence testified that an active employee must also be a full-time employee, and the Plan's definition of "full-time" requires that an employee normally work 30 hours per week.  Id. at 348-49, 352.  Lawrence testified that she had seen an e-mail from Ash to Mercer stating Ash's opinion that the 30 hour per week requirement did not apply to salaried employees.  Id. at 378.  Fooshee was a senior consultant for Mercer from 2004 to 2008 and worked in Mercer's Tulsa office.  Id. at 380.  Fooshee worked on AG's account and she reviewed the Plan as part of her job duties.  Id. at 382.  Plaintiff's counsel attempted to ask Fooshee several questions about her

---

[4]     Bott's testimony was presented by video deposition, and by agreement the Court reporter did not report this testimony.  Plaintiff has not provided a transcript of Bott's deposition testimony and it will not be discussed in this Opinion and Order.

11

understanding of the Plan, but the Court sustained defendant's relevance objections to these questions.  Id. at 385-88.  AIG did not cross-examine Fooshee.

Both parties moved for judgment as a matter of law under Fed. R. Civ. P. 50.  Plaintiff moved for judgment as a matter of law on all pending claims on the ground that AG did not need to produce evidence that Kurtz normally worked 30 hours per week, because this issue was irrelevant after AG determined that Kurtz was eligible for coverage.  Id. at 395.  The Court took plaintiff's motion under advisement.  Id.  Defendant moved for judgment as a matter of law based on the Tenth Circuit's decision in Zurich North America v. Matrix, 426 F.3d 1281 (10th Cir. 2005).  The Court informed the parties that it would instruct the jury in a manner consistent with Zurich, and denied defendant's motion.  Id. at 396.

AIG called Kileen Heidenreiter as its first witness.  Kileen Heidenreiter took over the job as AG's controller in 2000 after serving as an assistant to AG's former controller, Susan Sheldon, for two years.  Id. at 398.  She testified that Ash and Kurtz were close before Kurtz was hired by AG, and they maintained a similar relationship during Kurtz's employment.  Id. at 400-01.  She further testified that Ash told her that Kurtz's husband had lost his job, and he was going to put Kurtz on the payroll and backdate her start date to provide her health insurance immediately.  Id. at 402.  She also stated that Ash told her that "he was doing it as [a] favor and that [Kurtz] wouldn't really be doing much of anything."  Id. at 403.  Kileen Heidenreiter personally observed Kurtz work about one to three hours per week.  Id. at 412.  She testified that she made between $125,000 and $150,000 while she was employed at AG, and she believed it would be unusual for a full-time employee to make as little as $30,000 per year.  Id. at 416.  On cross examination, Kileen Heidenreiter testified that she did not remember Ash hiring Kurtz to serve as in-house counsel for AG.  Id. at 428.

However, she believed that Kurtz did perform work as an attorney for AG. Id. at 430-31. Plaintiff's counsel elicited testimony that Kileen Heidenreiter was upset that her husband contacted Mercer in April 2007. Id. at 434.

AIG played the video deposition of Chad Nicholl, general counsel and a vice-president of Mercer, and rested its case. The Court excused the jury and both sides renewed their motions for judgment as a matter of law. Id. at 448. Before hearing the renewed motions, the Court denied plaintiff's earlier motion for judgment as a matter of law that had been taken under advisement. Id. at 450. Plaintiff asserted that AIG was estopped from denying coverage under the Policy and that the evidence presented at trial showed that Kurtz was a covered employee under the Plan. The Court found that AIG had presented sufficient evidence that the jury could find in its favor, and denied plaintiff's renewed motion on both grounds. Id. at 452. Defendant renewed its motion for judgment as a matter of law on the ground that the evidence clearly established that AG made a material misrepresentation about Kurtz's employment status, but the Court found that this was a "quintessential fact issue for the jury to determine . . . ." Id. at 453. The Court provided both parties a draft of proposed jury instructions, and set the jury instruction conference for the following morning.

The jury instruction conference and closing arguments were held on February 24, 2009. Plaintiff objected to the proposed jury instructions on many grounds, but plaintiff's primary objection was that the jury instructions did not direct the jury to defer to AG's interpretation of the Plan under ERISA. Dkt. # 419, at 467-74. The Court rejected plaintiff's proposed estoppel instruction, because it was based on inapplicable Oklahoma precedent. Id. at 478. The Court did make many changes proposed by plaintiff to instructions concerning the identity of the Plan

administrator and the description of the Plan.  Id. at 471-77.  The Court also limited the amount of damages AIG could potentially recover based on an argument raised by AG for the first time at the jury instruction conference.  Id. at 461-63.  AIG objected to the proposed instructions based on Zurich, but its objections were overruled.  Id. at 480-82.  Before beginning opening statements, the Court permitted plaintiff to reopen its case to admit exhibits it neglected to introduce in its case-in-chief.  Id. at 485-86.  The parties made their closing arguments and the case was submitted to the jury.

On February 24, 2009, the jury found in favor of AIG on all claims, and awarded AIG a total of $279,014.11 on its counterclaims for breach of contract and fraud.  Dkt. ## 379, 380, 381.  The Court entered judgment on February 25, 2009 in accordance with the jury's verdict.  Dkt. # 382.  The judgment stated that "pursuant to Federal Rule of Civil Procedure 54(b), there is no just reason for delay in entering final judgment on these claims only."  Id.  On March 12 and 13, 2009 respectively, AG filed a renewed motion for judgment as a matter of law under Rule 50 and a motion for new trial under Fed. R. Civ. P. 59.  Dkt. ## 397, 398.  Both motions were filed more than 10 days after entry of judgment.  The Court found that the motions were untimely, but denied AIG's request to strike the motions as untimely.  Instead, the Court notified the parties that it would review the motions under Fed. R. Civ. P. 60(b).  See Dkt. # 406.  Because a completed trial transcript had not been filed, the Court authorized AG to file a supplement to its post-trial motions with citations to the trial transcript, and extended the response and reply deadlines accordingly.  Id.

AIG asked the Court to make additional findings under Fed. R. Civ. P. 54(b), because the Tenth Circuit Court of Appeals questioned whether the February 25, 2009 judgment was a final judgment from which an appeal could be taken.  Dkt. # 446.  AIG withdrew this motion after the

14

Tenth Circuit reserved judgment on the jurisdictional issue.  <u>See</u> Dkt. ## 448, 449.  On April 30, 2009, AG filed a motion requesting additional Rule 54(b) findings, and the Court entered an amended judgment <u>nunc</u> <u>pro</u> <u>tunc</u> (Dkt. # 456) providing additional explanation of its decision to certify the February 25, 2009 judgment as a Rule 54(b) judgment.  Based on this amended judgment <u>nunc</u> <u>pro</u> <u>tunc</u>, AG attempted to refile its post-trial motions.  Dkt. ## 461, 462.  The Court struck plaintiff's re-filed post-trial motions as untimely and duplicative.  Dkt. # 463.[5]

## II.

Plaintiff has filed motions for relief from judgment under Fed. R. Civ. P. 50 and 59, and both rules require a moving party to file a motion within 10 days of entry of judgment.  Fed. R. Civ. P. 50(b), 59(b).  The Court has already determined that plaintiff's motions were not filed within 10 days of entry of judgment and were untimely.[6]  <u>See</u> Dkt. # 406.  However, the Court may convert an untimely Rule 50 or 59 motion into a motion for relief from judgment under Fed. R. Civ. P. 60(b).  <u>See</u> <u>Allender v. Raytheon Aircraft Company</u>, 439 F.3d 1236, 1242 (10th Cir. 2006).  The Court will exercise its discretion to consider plaintiff's motions as Rule 60(b) motions, and review them under the standards applicable to such motions.[7]

---

[5]     This ruling did not prejudice plaintiff because plaintiff's refiled motions were simply copies of its previous, supplemented post-trial motions.  The Court will consider the same arguments in ruling on plaintiff's pending post-trial motions.  To the extent that plaintiff may be seeking a more favorable standard of review, the Court does not find that plaintiff will suffer any prejudice.  The Court has reviewed all of plaintiff's arguments and does not find that reviewing plaintiff's motions under Rules 50 or 59 would affect the Court's ruling on plaintiff's post-trial motions.

[6]     The Court also notes that the Tenth Circuit has not abated the pending appeal of this matter.

[7]     For ease of reference, the Court will refer to the motions as titled by plaintiff, but the Court will review the motions under Rule 60(b).

Rule 60(b) states that a court may relieve a party or its legal representative from a final

judgment or order due to:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Plaintiff's motions fall under Rule 60(b)(6).  Fed. R. Civ. P. 60(b) "'is an extraordinary procedure'

which 'seeks to strike a delicate balance between two countervailing impulses: the desire to preserve

the finality of judgments and the incessant command of the court's conscience that justice be done

in light of *all* the facts.'" Jennings v. Rivers, 394 F.3d 850, 856 (10th Cir. 2005) (citations omitted)

(emphasis in original).  The decision to grant relief under Rule 60(b) is discretionary, and plaintiff

has the burden to show that exceptional circumstances exist that require the Court to amend or

vacate a final judgment or order.  Servants of Paraclete v. Does, 204 F.3d 1005, 1009 (10th Cir.

2000).

### III.

Plaintiff claims that it is entitled to judgment in its favor on all claims between AG and AIG

and raises six arguments in support of its renewed motion for judgment as a matter of law: (1) the

Court erred by not granting summary judgment or judgment as a matter of law based on Tenth

Circuit precedent applying ERISA to disputes arising under stop-loss insurance policies; (2) AIG is estopped from denying coverage for Kurtz's medical expenses because it expressly agreed that Kurtz was a covered employee under the Plan; (3) AIG failed to return any premiums attributable to coverage of Kurtz before trial and the judgment is void; (4) AIG failed to produce sufficient evidence to support its claim for damages; (5) AIG did not show by clear and convincing evidence that AG acted with intent to defraud AIG by listing Kurtz as a covered employee; and (6) the Court erred by granting AG's motion for summary judgment on plaintiff's bad faith claim.  Defendant responds that many of plaintiff's arguments have previously been considered and rejected by the Court and, as to any new arguments, plaintiff has not met its high burden for relief from judgment under Rule 60(b).

Application of ERISA to Plaintiff's Breach of Contract Claim and
Defendant's Breach of Contract Counterclaim

Throughout this case, plaintiff has relied on ERISA in an attempt to support its alleged "interpretation" of the Plan that Kurtz, as a salaried employee, was considered a full-time employee regardless of whether AG produced evidence that she normally worked 30 hours per week.  Plaintiff has previously raised this issue, and the Court has found that ERISA does not apply to the parties' breach of contract claims concerning reimbursement of Kurtz's medical expenses under the Policy. Dkt. # 301, at 13 n.8 (rejecting plaintiff's argument that Zurich North America v. Matrix, 426 F.3d 1281 (10th Cir. 2005), required Court to apply ERISA when considering the parties' breach of contract claims); Dkt. # 419, at 467 ("This is not an ERISA case – and I don't know how many times I have to say this – and if you read Zurich, this is quite clear.").  The Court will not reconsider this issue in a post-trial motion unless plaintiff can provide new legal authority showing that the Court's previous ruling was clearly erroneous or evidence showing that it made a Plan interpretation and this

17

interpretation was entitled to deference in a breach of contract claim involving a stop-loss insurance policy.  Much of plaintiff's motion (Dkt. # 436) is taken verbatim from its motion for summary judgment (Dkt. # 202, at 23-29), and the Court will not reconsider arguments that have already been considered and rejected.

To the extent that plaintiff relies on evidence presented at trial to show that ERISA should apply in this case, the Court finds that plaintiff has not shown that the Court's  interpretation of Zurich is incorrect, or that the jury's verdict goes against the weight of the evidence presented at trial.   At various times during this case, plaintiff has made conflicting claims about the identity of the Plan administrator.  The Plan states that "[a]n individual may be appointed by AG Equipment Company to be Plan Administrator and serve at the convenience of the Employer."  Dkt. # 200, Ex. 5, at 48.  However, the Plan does not specifically identify the individual appointed by AG to serve as the Plan administrator.  AG argues that it is the Plan administrator and it was not required to appoint a particular person to act as the Plan Administrator.  Dkt. # 202, at 9; Dkt. # 419, at 472-73. AG has also argued that Grady Ash acted on behalf of AG as the Plan administrator, but AIG has also provided evidence suggesting that Laura Lawrence may have acted as the Plan administrator. Dkt. # 206, Ex. 6, at 62-63, 66; Dkt. # 418, at 323.  The Court allowed the parties to submit evidence about this issue at trial and instructed the jury that it must find that AG actually interpreted the Plan before any deference to an alleged Plan interpretation would be appropriate.

Even if the Court were to assume that AG could establish the identity of the Plan administrator, plaintiff has not shown that the jury's verdict goes against the weight of the evidence or is contrary to the evidence presented at trial.  As the Court has noted, AG did not present clear evidence of the Plan administrator's identity or that, before this dispute arose, AG interpreted the

30 hour per week requirement to apply to hourly employees only. The jury could have reasonably determined that AG did not satisfy its burden to identify the Plan administrator or show that AG actually interpreted the Plan. The Court's review of the trial transcript shows that Ash made conflicting statements about the applicability of the 30 hour per week requirement, and the jury was clearly permitted to make credibility determinations based on this conflicting evidence. See Dkt. # 416, at 164 (Ash testified that he deemed all salaried employees to be covered by the Plan regardless of the 30 hour per week requirement); id. at 244 (Ash states that salaried employees were covered by the Plan because they worked at least 30 hours per week). The jury's verdict in favor of AIG was not against the weight of the evidence and will not be set aside on this basis.

Plaintiff argues that Kurtz was a "full-time employee" as this term has been interpreted by other courts, and judgment should be entered in favor of AG as a matter of law on the parties' breach of contract claims.[8]  Dkt. # 436, at 12-13. Plaintiff argues that a salaried employee does not need to be at work if he or she is "ready willing and available to work," and Kurtz was on-call even when she was not at work. Id. at 12. Thus, plaintiff argues, it produced evidence showing that Kurtz worked at least 30 hours per week because Kurt's was available and on-call at all times. Plaintiff also relies on Weber v. GE Group Life Assurance Co., 541 F.3d 1002 (10th Cir. 2002), in which the Tenth Circuit held that an employee who satisfied the benefits plan's initial eligibility requirement to work at least 30 hours per week did not have to continue to satisfy this requirement to maintain

[8]     Plaintiff argues that AIG's "misinterpretation" of the Plan would require AG to discriminate against employees on the basis of their health status. This argument is meritless. Plaintiff relies on ERISA and regulations issued by the Department of Labor to show that ERISA prohibits discrimination based on an employee's health status. Dkt. # 436, at 14-15. However, the evidence shows that AIG was reimbursing AG for Kurtz's medical expenses until evidence surfaced questioning her eligibility for coverage under the Plan, and Kurtz's coverage was not disputed based on her health status or her need for medical treatment.

eligibility after the initial eligibility of the Plan. Id. at 1012. Plaintiff's argument misses the mark.[9] The issue in this case does not involve the interpretation of the term "full-time employment" under state law applicable to insurance contracts. The issue is whether Kurtz was covered under the terms of the Plan, and the plain language of the Plan requires an employee to "normally work at least 30 hours per week." AIG uncovered evidence that Kurtz did not intend to work full-time for AG, and she may not have been eligible for benefits. In other words, there was an issue as to whether Kurtz was ever eligible for benefits.[10] The jury found that plaintiff did not produce sufficient evidence to meet its initial burden to show that Kurtz was eligible for benefits and, considering the evidence presented at trial, this was a reasonable conclusion.[11]

---

[9]     Plaintiff raised this same argument in its original motion for judgment as a matter of law and the motion was denied. At trial, the Court noted that Weber did not involve the intersection of a stop loss policy and a benefits plan. Dkt. # 418, at 450. The Court also distinguished Weber from this case based on AIG's theory of the case. AIG was arguing that Kurtz was not eligible for benefits because AG misrepresented her employment status from the beginning of her alleged employment. In Weber, the plan administrator attempted to argue that the employee became ineligible some time after satisfying her initial eligibility requirements. Weber, 541 F.3d at 1012. The Court found these situations to be distinguishable, and Weber did not require the Court to grant AG judgment on any pending claim. Id.

[10]    Plaintiff's argument under Weber would have more weight if Ash had not backdated Kurtz's start date. Ash's conduct effectively eliminated the waiting period for eligibility and Kurtz did not satisfy the initial requirement for eligibility before receiving benefits. This is an additional reason why Weber does not support plaintiff's reliance on that case.

[11]    Plaintiff also requests judgment as a matter of law as to AIG's breach of contract counterclaim for the same reason. See Dkt. # 397, at 17. For the same reasons, plaintiff's motion is denied as to its breach of contract claim and AIG's breach of contract counterclaim.

AIG is Estopped from Denying Kurtz's Eligibility for Coverage

Plaintiff argues that AIG was on notice as early as 2004 of AG's determination that Kurtz was a covered employee under the Plan, and AIG is estopped from denying coverage for her medical expenses under the Policy.  AIG responds that it did not discover evidence that plaintiff may have misrepresented Kurtz's employment status until April 2007, and it had no reason to question Kurtz's eligibility under the Plan until it received copies of e-mails between Ash and Kurtz suggesting that her employment was a sham.

Estoppel is a "legal concept which bars a party from alleging or denying certain rights which might otherwise have existed because of the party's voluntary conduct." Sullivan v. Buckhorn Ranch Partnership, 119 P.3d 192, 201 (Okla. 2005).  Under Oklahoma law, a party seeking to rely on estoppel to bar an opposing party alleging a claim or defense has the burden to prove five elements:

> First, there must be a false representation or concealment of facts; second, it must have been made with actual or constructive knowledge of the real facts; third, the party to whom it was made must have been without knowledge, or the means of discovering the real facts; fourth, it must have been made with the intention that it should be acted upon; and fifth, the party to whom it was made relied on, or acted upon it to his detriment.

Id. at 202.  This an equitable doctrine that is designed to prevent injustice and it should not be invoked if this defense is raised solely to create a benefit for the party asserting estoppel. First State Bank v. Diamond Plastics Corp., 891 P.2d 1262 (Okla. 1995).

Plaintiff claims that Ash sent a letter to AIG in 2004 explaining that Kurtz was a covered employee under the Plan, and AIG did not questions Kurtz's eligibility for coverage.  According to plaintiff, AIG should be estopped from questioning Kurtz's eligibility, because it was aware of all of the facts in 2004 and took no action.  Plaintiff relies on the testimony of Marilyn Foshee to

21

establish that Ash sent an e-mail to AIG stating that Kurtz's was a covered employee.  Dkt. # 418, at 390-92.  However, this evidence does not establish that AIG made a misrepresentation of coverage and it certainly does not establish that plaintiff disclosed all relevant facts to AIG.  The mere fact that Ash stated that Kurtz was a covered employee did not put AIG on notice that Kurtz may not have been working regularly and AIG could not have challenged Kurtz's eligibility based on this disclosure.  Ash's e-mail certainly did not put AIG on notice of the circumstances leading to Kurtz's hiring, and AIG could not have made a fully informed decision without this information. Therefore, the affirmative defense of estoppel is inapplicable and plaintiff is not entitled to judgment in its favor.[12]

AIG Failed to Return Any Premiums Paid for Coverage of Kurtz's
Medical Expenses under the Policy

Plaintiff argues that the jury verdict must be set aside because AIG has not shown that it returned premiums paid by AG for Kurtz's coverage under the Policy.  Plaintiff relies on authority from the Fifth and Sixth Circuits to support this argument.  See Jackson v. Transamerica Occidental Life Ins. Co., 1998 WL 414081 (5th Cir. July 1, 1998); Hanover Fire Ins. Co. v. Dallavo, 274 F. 258 (6th Cir. 1921).  However, Oklahoma law also requires an insurer to return any premiums received from the insured before cancelling or rescinding an insurance contract.  See Great American Reserve Ins. Co. of Dallas v. Strain, 377 P.2d 583 (Okla. 1963).

The Oklahoma Supreme Court has recognized two exceptions to the requirement that an insurer return any premiums before seeking to cancel an insurance policy.  First, an insurer is not

_____

[12]     The Court also instructed the jury on the similar affirmative defense of waiver, see dkt. # 378, at 38, and the jury rejected plaintiff's argument.  The Court has reviewed the trial transcript and this was not an unreasonable conclusion.

required to return the premium if it is clear that the offer would be rejected.  <u>National Foundation Life Ins. Co. v. Loftis</u>, 425 P.2d 946 (Okla. 1966); <u>Jones v. Goldberger</u>, 323 P.2d 344 (Okla. 1958). Plaintiff's conduct before this case was filed and its vigorous prosecution of its claims make it clear that plaintiff would not have accepted a return of the premiums.  Second, a court may enter a judgment conditioned upon a return of the premium if a jury verdict is returned in favor of the insurer.  <u>Sneed v. State ex rel. Dep't of Transp.</u>, 683 P.2d 525 (Okla. 1983).  Plaintiff claims that the Court's judgment did not include an offset for any premiums paid by AG for Kurtz's coverage. However, plaintiff did not provide any evidence showing the amount of such an offset, nor has plaintiff requested entry of an amended judgment to reflect on offset for the return of premiums. Instead, plaintiff asks the Court to set aside the entire verdict because AIG has not returned the premiums for Kurtz's coverage.  As the Court stated at the jury instruction conference, plaintiff would be entitled to a return of any premium as it relates to Kurtz if AIG prevailed at trial, and plaintiff is still entitled to such a return.  Dkt. # 419, at 463.  In effect, plaintiff acquiesced to entry of a conditional judgment, but has now decided to ask the Court to vacate the judgment in its entirety.  This is not a valid basis to set aside the judgment, and plaintiff's Rule 60(b) motion should be denied on this issue.[13]

---

[13]    Plaintiff raises a separate argument that the judgment should be set aside because the Court failed to reduce the amount of the judgment based on premiums paid for Kurtz's coverage. <u>See</u> Dkt. # 397, at 18.  However, the Court has determined that the judgment should not be vacated due to defendant's failure to return the premium and, if plaintiff will accept a return of the premium, the Court will enter an amended judgment.

AIG Failed to Produce Sufficient Evidence of Fraud

Plaintiff argues that AIG did not present clear and convincing evidence that plaintiff committed fraud by claiming that Kurtz was a full-time employee and seeking reimbursement for her medical expenses.  Much of plaintiff's argument relies on its prior argument that AG had discretion to interpret the Plan and it reasonably determined that Kurtz was a full-time employee eligible for coverage under the Plan.  This argument has been considered and rejected, and will not be discussed further.  The Court will consider plaintiff's argument to the extent that it asserts that AIG failed to produce sufficient evidence at trial to proceed to the jury on its fraud claims.

At trial, AIG elicited testimony from Ash supporting its claim that AG intentionally misrepresented Kurtz's employment status to obtain reimbursement for her medical expenses.  AIG established that Ash backdated Kurtz's start date with AG to move up her eligibility date for coverage under the Plan.  Dkt. # 417, at 218-19.   The parties produced e-mails between Ash and Kurtz suggesting that Ash hired her for the sole purpose of providing her health benefits and that Kurtz did not intend to work full-time.  Id. at 190 ("We, of course, will not expect you to work unless you feel like doing so.").  AIG relied on the lack of evidence produced by plaintiff to show that Kurtz actually worked during employment at AG.  Kileen Heidenreiter also testified that Ash told her he was putting Kurtz on the payroll "as [a] favor and that Kurtz wouldn't really be doing much of anything."  Dkt. # 419, at 403.  Following the Oklahoma Uniform Jury Instructions, the Court instructed the jury that it was required to find six elements by clear and convincing evidence to return a verdict for AIG on its fraud claim:

    1.    THAT PLAINTIFF CONCEALED OR FAILED TO DISCLOSE A PAST OR PRESENT FACT WHICH IT HAD A DUTY TO DISCLOSE;

    2.    THAT THE FACT WAS MATERIAL;

24

3.      THAT PLAINTIFF CONCEALED OR FAILED TO DISCLOSE IT WITH THE INTENT OF CREATING A FALSE IMPRESSION OF THE ACTUAL FACTS IN THE MIND OF DEFENDANT;

4.      THAT PLAINTIFF CONCEALED OR FAILED TO DISCLOSE IT WITH THE INTENTION THAT IT SHOULD BE ACTED UPON BY DEFENDANT;

5.      THAT DEFENDANT ACTED IN RELIANCE UPON IT; AND

6.      THAT DEFENDANT THEREBY SUFFERED INJURY.

Dkt. # 378, at 40.

Based on the evidence presented at trial, plaintiff was not entitled to judgment as a matter of law on defendant's fraud claim.  The e-mails between Ash and Kurtz support an inference that Kurtz did not intend to work for AG, even though she would receive health benefits and a salary. AIG also elicited testimony from Ash suggesting that he was willing to manipulate the eligibility requirements of the Plan to accommodate Kurtz.  Plaintiff made a decision before trial to claim attorney-client privilege for work allegedly prepared by Kurtz in her capacity as AG's attorney. AIG repeatedly sought to gain access to this evidence, and each time plaintiff continued to assert its work product privilege.  Plaintiff may not complain that the absence of evidence of Kurtz's actual work permitted AIG to argue that Kurtz did not normally work at least 30 hours per week when its litigation strategy backfired at trial.  The jury could have found that AIG proved that Kurtz did not regularly work 30 hours per week based on the lack of evidence that she actually worked.  Although Kurtz testified that she did work at least 30 hours per week, the jury was not required to believe her testimony.  Viewing all of this evidence in a light most favorable to the jury's verdict, the Court finds that defendant's fraud claim was properly submitted to the jury.

<u>Court Should Reconsider its Opinion and Order Granting</u>
<u>Summary Judgment to AIG on plaintiff's Bad Faith Claim</u>

Plaintiff claims that the Court erred by granting summary judgment to defendant on plaintiff's bad faith claim, and asks the Court to reconsider this decision.   Dkt. # 397, at 20.  As defendant notes, plaintiff's argument is taken verbatim from its response to defendant's motion for summary judgment, and plaintiff has not provided any new evidence or legal authority in support of a request for reconsideration.  <u>See</u> Dkt. # 240, at 20-22.  Plaintiff simply disagrees with the Court's decision, but this is not an appropriate basis for reconsideration.  Based on the jury's verdict, it would also be improper to reinstate plaintiff's bad faith claim, because the jury determined that Kurtz was not eligible for coverage.   Thus, defendant could not have denied AG's claim for reimbursement of Kurtz's medical expenses in bad faith, because AIG had no obligation to pay the claim.  Therefore, plaintiff's motion to reconsider should be denied.

**IV.**

Plaintiff requests a new trial based on alleged errors in the Court's jury instructions and evidentiary rulings, and alleged judicial bias.  Dkt. # 398.  Plaintiff's motion raises numerous arguments in support of its motion for a new trial, and plaintiff challenges almost every aspect of the district court proceedings.[14]  Defendant argues that plaintiff's arguments are inadequately briefed, and many of plaintiff's arguments have previously been considered and rejected.

---

[14]    Many of these arguments are not supported by any legal authority or references to the trial transcript.  In addition, plaintiff simply incorporates arguments that have previously been considered or rejected, or includes a block cite to the transcript. Plaintiff attempts to buttress many of its arguments in its reply, but this tactic denies defendant the opportunity to fully respond.  The Court will consider each argument raised by plaintiff; however, some of its arguments may be rejected due to inadequate briefing or citations to the record.

Jury Instructions

Plaintiff argues that the jury instructions as a whole misled the jury and the Court should

order a new trial on that basis.  Plaintiff raises six specific challenges to the jury instructions, and

claims that the verdict form erroneously permitted the jury to reach the issue of fraud.  Defendant

responds that plaintiff's objections to the jury instructions were considered and rejected at the jury

instruction conference, and the Court's instructions as a whole accurately reflect the applicable law.

When reviewing a motion for new trial is based on alleged errors in the jury instructions, the

district court must consider the instructions as a whole.  Patty Precision Prods. Co. v. Brown &

Sharpe Mfg. Co., 846 F.2d 1247, 1252 (10th Cir. 1988).  "In reviewing the instructions, [the district

court] consider[s] all the jury heard, and from the standpoint of the jury, decide 'not whether the

charge was faultless in every particular, but whether the jury was misled in any way and whether

it had understanding of the issues and its duties to determine these issues.'"  Id. (quoting Robinson

v. Audi Nsu Auto Union Aktiengesellschaft, 739 F.2d 1481, 1486 (10th Cir. 1984)).

Plaintiff alleges that the Court's breach of contract instructions did not accurately state the

law, because the Court failed to instruct the jury that it should have deferred to AG's interpretation

of the Plan. Dkt. # 398, at 3.  Plaintiff also claims that the Court should not have used the Oklahoma

Uniform Jury Instructions (OUJI) when instructing the jury on plaintiff's breach of contract claims,

because these instructions did not inform the jury that it should defer to AG's interpretation of the

Plan.[15]  These issues have been addressed in the context of plaintiff's motion for judgment as a

matter of law, and both arguments are meritless.  The court instructed the jury on stop-loss policies

---

[15]     The Court notes that many of plaintiff's proposed breach of contract instructions were OUJI
         instructions and were read to the jury.  See Dkt. # 317, at 11-15.

and when any deference may be shown to a plan administrator's decision as required by <u>Zurich</u>, but found that it would not be correct to instruct the jury on ERISA.  Dkt. # 378, at 25-35.  Plaintiff has not offered any new argument or legal authority on this issue.  To the extent that plaintiff objects to the use of OUJI for both parties' breach of contract claims, a review of the jury instructions shows that the Court supplemented the OUJI instructions with additional instructions as required by <u>Zurich</u>, and the jury was informed that it could defer to a reasonable plan interpretation under some circumstances.  Therefore, plaintiff's argument is not supported by the record.  Plaintiff's second and third arguments also concern the application of ERISA to plaintiff's breach of contract claim and, for the reasons stated above, are also rejected.  Dkt. # 398, at 3.

Plaintiff claims that the Court erred by failing to give an instruction that a salaried employee may be considered working while "on-call."  <u>Id.</u>  The Court has reviewed plaintiff's proposed jury instructions, and it did not submit an instruction on this issue.  <u>See</u> Dkt. # 317.  Plaintiff also did not request such an instruction at the jury instruction conference.  Dkt. # 419, at 459-79.  Without a proposed instruction or a timely objection, there is no record for the Court to review on this issue.  However, even if plaintiff had preserved this objection, the Court would not have given the instruction now proposed by plaintiff.  The jury was not asked to apply general employment law but, instead, was asked to apply the specific terms of an employee benefits plan to the facts of the case.  The Plan did not discuss whether a salaried employee was working while "on call."  In any event, plaintiff presented Kurtz's testimony concerning her duties for AG, including testimony that Kurtz was available to respond to questions at any time, and the jury was permitted to consider this evidence even if no specific instruction was given.  Plaintiff has not shown that the failure to give an instruction that Kurtz may have been working while "on call" was erroneous.

28

Plaintiff argues that the Court erred by instructing the jury on defendant's fraud claim because this claim was not supported by clear and convincing evidence.  The Court has already determined that plaintiff is not entitled to judgment as a matter of law on this issue and, for the same reasons, finds that it was not erroneous to instruct the jury on this claim.  Plaintiff also argues that the Court should not have instructed the jury on "nondisclosure" and "concealment," but offers no factual or legal support for this argument.[16]  See Dkt. # 437, at 4.  Without some explanation of plaintiff's argument, it is not possible for the Court to consider this issue and the Court rejects it due to inadequate briefing.

Plaintiff claims that the Court should have instructed the jury on its defense of equitable estoppel or, in the alternative, have granted judgment in plaintiff's favor on all claims due to defendant's "explicit[] approv[al] of Plaintiff's interpretation of the Plan."  Dkt. # 437, at 4.  The Court has already determined that equitable estoppel does not apply because plaintiff has not carried its burden to prove that this affirmative defense applies under the facts of this case.  At the jury instruction conference, the Court rejected plaintiff's proposed, non-OUJI estoppel instruction, because it was based on case law discussing judicial estoppel rather than equitable estoppel.  Dkt. # 419, at 478-79.  Plaintiff has not provided any new legal authority showing that this decision was incorrect, and the Court will not reconsider this issue.  The Court did instruct the jury on plaintiff's related defense of waiver, and the jury rejected this defense.  There is no reason to believe that the jury would have found differently on plaintiff's defense of estoppel.

---

[16]     Plaintiff also included a new argument that defendant did not raise these issues in the pretrial order.  Dkt. # 437, at 4.  This argument was not raised in plaintiff's original motion for new trial and will not be considered.

29

Plaintiff also challenges the jury instructions as a whole because plaintiff claims that the instructions did not accurately state the law.  Dkt. # 437, at 4.  The Court has considered each of plaintiff's objections to the jury instructions and has found no errors with the instructions. Therefore, plaintiff's challenge to the jury instructions as a whole is also denied.

Evidentiary rulings

Plaintiff raises seventeen separate claims concerning the erroneous admission or exclusion of evidence at trial, and further claims that defendant's "tactical use" of the Court's rulings prejudiced plaintiff at trial.  Defendant responds that the Court made evidentiary rulings that helped or hurt both parties and, considering the Court's rulings as a whole, plaintiff was not prejudiced and is not entitled to a new trial.  Any error in admitting or excluding evidence is not a basis for seeking a new trial unless the error affects a party's substantial rights.  Fed. R. Civ. P. 61 (Unless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order."); Henning v. Union Pacific R. Co., 530 F.3d 1206 (10th Cir. 2008) (motion for new trial based on exclusion of evidence must be denied unless the alleged error was prejudicial and affects a party's substantial rights).

Plaintiff claims that the Court erred by excluding evidence of defendant's history of denying large claims, evidence of the "12/12 provision" of the Policy, and evidence that the Policy identified Kurtz as a covered individual.  Dkt. # 437, at 5.  Plaintiff simply states that it disagrees with these evidentiary rulings, but provides no legal authority showing why this evidence should have been admitted.  The Court has reviewed the transcript citations provided by plaintiff and finds no error in the exclusion of this evidence.  During plaintiff's opening statement, plaintiff's counsel referenced

the "12/12 provision" and AIG's investigation of the disputed claim.  The Court stated that plaintiff

could raise this issue later during the trial for a more definitive ruling, but plaintiff should proceed

with its opening statement and omit any reference to defendant's investigation of the claim.  Dkt.

# 416, at 14-15.  Plaintiff has not provided a citation showing that it raised this issue again and the

Court will not order a new trial based on a conditional evidentiary ruling during plaintiff's opening

statement.  Plaintiff also argues that the Court excluded evidence that Kurtz was specifically listed

as a covered individual under the Policy.  However, the trial transcript shows that plaintiff elicited

testimony from Friedly that Kurtz was identified as a covered individual on the "shock report," see

dkt. # 416, at 92-94, and the shock report was included among the exhibits that the jury was

permitted to take to the jury room.  It is clear that plaintiff established that Kurtz was identified in

that report as a covered employee and, thus, plaintiff was not prejudiced.

Plaintiff claims that the Court allowed defense counsel to ask questions implying that Ash

was interested in pursuing a sexual relationship with a 16 year old girl.  Dkt. # 437, at 5.  Defendant

sought to admit this evidence to impeach Ash's credibility, and the Court overruled plaintiff's

objection as to relevance.  Dkt. # 417, at 230.  In addition, the exhibits in evidence contained the e-

mail exchange of Ash's request for legal advice on this issue from Kurtz, and her response.

However, plaintiff now objects to this evidence on the basis of unfair prejudice, but plaintiff did not

raise this specific objection at trial.  The Court also notes that it was Ash's responses, rather than

defense counsel's questions, that were largely responsible for creating an impression that Ash was

referring to himself or that he ever engaged in improper behavior.  Id. at 231.

Plaintiff generally argues that the Court erred by excluding video deposition testimony of

defendant's agents and Kurtz.  Dkt. # 437, at 5.  However, plaintiff fails to note that its failure to file

31

timely designations of deposition testimony is the reason that deposition testimony was excluded. Defendant is also correct that plaintiff's argument as to the exclusion of the testimony of defendant's agents does not reference the testimony of any specific witness, nor does plaintiff provide any argument showing why this testimony should have been admitted. The Court declines to fashion an argument for plaintiff. Concerning the exclusion of portions of Kurtz's preservation deposition (November 2008), Kurtz's preservation testimony was ruled partially admissible at trial due to the importance of Kurtz's testimony to plaintiff's case, and the Court permitted plaintiff to submit designations for Kurtz's testimony out of time. Dkt. # 326, at 20-21. At that pretrial hearing, the Court and the parties were referring to the preservation deposition (November 2008) only, and plaintiff did not request leave to designate out of time from Kurtz's discovery deposition (April 2008). Id. at 20. The Court informed that parties that any deposition designations and objections to designations would be referred to Magistrate Judge Cleary. In direct violation of the Court's order, plaintiff attempted to add  designations of Kurtz's discovery deposition (April 2008). Magistrate Judge Clearly allowed plaintiff to resubmit designations from Kurtz's preservation deposition only (Dkt. # 325), and plaintiff requested reconsideration (Dkt. # 345). The Court affirmed Magistrate Judge Cleary's ruling. Dkt. # 358. Plaintiff's objections concerning the admissibility of Kurtz's discovery deposition testimony have been considered on prior occasions, and the exclusion of any of Kurtz's testimony is primarily due to plaintiff's counsel's failure to file timely deposition designations.

Plaintiff claims that the Court failed to rule on its objections to Kileen Heidenreiter's testimony and allowed this witness to speculate about matters outside of her personal knowledge. Plaintiff includes a block cite to 47 pages of the trial transcript without reference to any specific

32

section of Kileen Heidenreiter's testimony.[17]   The Court has reviewed Kileen Heidenreiter's

testimony and finds that plaintiff's argument is meritless.[18]  Plaintiff frequently objected to defense

counsel's direct examination of Kileen Heidenreiter, and many of these objections were sustained.

See Dkt. # 418, at 399, 400, 401, 402, 408, 416, 418, 419, 422, 439.  Although the transcript shows

that the Court did not rule on two objections identified by plaintiff, plaintiff did not renew its

objections at the time, nor has plaintiff clarified the basis for either of these objections in its post-

trial motion. The transcript also shows that one objection was cured when defense counsel moved

on without waiting for a response to the objectionable question.  Id. at 406.  Plaintiff references one

other unresolved objection, but the objection came at the beginning of a line of questioning and

plaintiff did not renew its objection to similar questions.  Id. at 411.  The fact that the Court did not

specifically rule on two objection to admissible testimony, especially when one objection was cured

and the other was not renewed, does not require the Court to order a new trial.

Plaintiff objects to the exclusion of testimony going to the "'materiality' of the terms of the

contract," but the substance of this argument is not clear from plaintiff's motion.  See Dkt. # 437,

---

[17]   Plaintiff claims that defendant waived any opposition to this argument because defendant
failed to specifically respond to plaintiff's argument. Dkt. # 460, at 8.  However, plaintiff's
argument is supported only by a block citation and fails to provide specific citation, and
defendant objects to plaintiff's argument as to Kileen Heidenreiter's testimony on the ground
that it is too vague for defendant to provide a reasonable response.  Dkt. # 454, at 9.
Defendant's position is reasonable, and it has not waived any objection to this argument or
conceded that plaintiff is correct.

[18]   It appears that plaintiff objects to the substance of Kileen Heidenreiter's testimony, rather
than any conduct by the Court or defense counsel, because plaintiff's block cite includes its
cross-examination of this witness.  See Dkt. # 418, at 425-39.  Although plaintiff may
disagree with Kileen Heidenreiter's testimony, it had an opportunity to cross-examine her
and the jury was permitted to assess Kileen Heidenrieter's credibility.  In any event,
plaintiff's disagreement with a witness' testimony is not a basis to order to a new trial.

33

at 6.  It appears that plaintiff is referring to the exclusion of testimony by Ash that he could not provide evidence to prove that he worked 30 hours per week and exclusion of testimony by Ash that he believed defendant acquiesced in his interpretation of the Plan that the 30 hour per week requirement did not apply to salaried employees.  Dkt. # 417, at 173, 202-03.  Whether Ash could prove the number of hours he worked is irrelevant to any issue of fact or law in this case because it does not have any tendency to show that Kurtz was a full-time employee of AG or that she was eligible for coverage.  The Court did not permit Ash to testify about whether AG would have purchased stop-loss insurance from AIG if it required AG to track the hours of salaried employees because this testimony would have been speculative, and it was properly excluded.  Id. at 203. Exclusion of testimony referenced by plaintiff was proper and, even if it should have been admitted, this evidence was not so significant that a new trial is required.

Plaintiff challenges Magistrate Judge Cleary's pre-trial ruling limiting the use of Marie Bott's testimony at trial.  Dkt. # 437, at 6.  Plaintiff claims that it should have been permitted to show the jury Bott's testimony that Kurtz was a "covered unit" under the Policy.  Id.  Defendant responds that plaintiff's argument is not supported by any reference to the trial transcript or Bott's deposition testimony.  As the Court has discussed,  all of plaintiff's deposition designations were untimely and it was permitted to submit them out of time.  The Court has reviewed plaintiff's untimely designations of Bott's testimony and finds that this testimony was properly excluded. Plaintiffs fails to consider the context of Bott's testimony.  The Court considered plaintiff's argument that Bott determined that Kurtz was a "covered unit" when ruling on defendant's motion for summary judgment, and noted that Bott did not conclusively  state an opinion on Kurtz's employment status. Dkt. # 272, at 5-6.  Instead, Bott requested additional information about Kurtz's

job duties and advised AIG to have a lawyer consider Kurtz's employment status because, as a non-lawyer, Bott did not feel qualified to make a conclusive determination that Kurtz was a full-time employee.  Id.  Thus, Bott's testimony on Kurtz's employment status would have been misleading and it was properly excluded by the magistrate judge.

Plaintiff raises two arguments concerning the exclusion of portions of Marilyn Fosshee's testimony.  Dkt. # 437, at 6.  First, plaintiff claims that Fosshee should have been permitted to testify that Kurtz was a "Plan participant."  Second, plaintiff challenges the Court's decision to exclude Fosshee's testimony concerning AIG's handling of the disputed claim.[19]  Defendant responds that neither party was permitted to interpret the Plan for the jury, and exclusion of Fosshee's testimony was proper.  Fosshee was a senior consultant in Mercer's Tulsa office from 2004 to 2008 who was responsible for managing AG's account.  Dkt. # 418, at 381-82.  Plaintiff attempted to elicit testimony from Fosshee about her interpretation of the Plan, but the Court asked plaintiff's counsel to rephrase her question to avoid any appearance that Fosshee had authority to interpret the Plan. Plaintiff's counsel agreed and asked her question in a different manner.  Id. at 383-84.  Fosshee later testified that Kurtz was a "Plan participant" and was eligible for coverage under the Plan.  The Court admonished the jury to disregard this testimony, because it was the jury's duty to determine whether Kurtz was a covered employee.  Id. at 386-87. Plaintiff now claims that the Court improperly excluded Fosshee's testimony concerning her interpretation of the Plan and AIG's handling of the disputed claim.  However, Fosshee's testimony was limited in the same manner as all other witnesses at trial, because no witness was permitted to interpret the Plan for the jury.  Therefore,

---

[19]     Plaintiff's reply includes new arguments related to these issues. Dkt. # 460, at 9.  However, these arguments are not apparent from plaintiff's motion and defendant could not have been expected to address these arguments.  Therefore, the new arguments will not be considered.

plaintiff did not suffer any prejudice at trial, because both parties were treated equally and were permitted to elicit facts supporting their interpretation of the Plan.[20]  Although plaintiff believes it should have been to permitted to ask for Fooshee's opinion about Plan language, the only relevant interpretation of the Plan was that of the Plan administrator.  Because plaintiff argued that AG, rather than any particular person, was the Plan administrator, plaintiff cannot complain that the Court excluded opinion testimony concerning other witnesses' interpretations of the Plan.  Plaintiff's remaining argument about exclusion of evidence concerning the handling of the disputed claim is not developed in its briefing.  However, this argument appears to go to the issue of bad faith, rather than breach of contract, and AIG's claims handling practices were irrelevant to any issue before the jury.

Plaintiff claims that it was prejudiced by defendant's and the Court's "repeated suggestion" that plaintiff had to prove that Kurtz worked at least 30 hours per week, and the Court permitted defendant to repeat this misinterpretation of the Plan throughout the trial.  Dkt. # 437, at 7.  As has been previously discussed, plaintiff did not provide evidence that the Plan administrator interpreted the Plan to exclude salaried employees from the 30 hour per week requirement.  Plaintiff argued that Kurtz was not required to work 30 hours per week to be eligible for coverage under the Plan, and the Court instructed the jury on the plain language of the Plan and situations when deference to plaintiff's interpretation would be entitled to any deference.  The jury was presented with credible

---

[20]     Plaintiff claims that the Court allowed defendant's witnesses to interpret the Plan, but prohibited plaintiff's witnesses from offering interpretations of the Plan.  Dkt. # 437, at 8.  Plaintiff cites defendant's opening statement and Friedly's testimony that AIG would reconsider its denial of AG's claim for Kurtz's medical expenses if plaintiff produced additional evidence.  Dkt. # 416, at 23, 69.  This does not show that defendant's witnesses were given more latitude to offer opinions about the meaning of Plan language, and plaintiff's argument is meritless.

evidence supporting defendant's interpretation of the Plan that Kurtz was required to work 30 hours per week to be considered a full time employee, and the jury's verdict impliedly rejecting plaintiff's interpretation of the Plan was not unreasonable.

Plaintiff asserts that defendant took strategic advantage of plaintiff's decision not to present actual work product demonstrating Kurtz's work during her employment for AG. Dkt. # 437, at 7. Early in this case, plaintiff made a strategic choice to claim work product privilege for any documents produced by Kurtz during the course of her employment for AG. Plaintiff defended this position throughout the litigation and the Court eventually denied defendant's appeal of the magistrate judge's orders denying defendant access to the underlying documents on plaintiff's privilege log. Dkt. # 129 (magistrate judge's order denying defendant's motion for in camera review of documents on plaintiff's privilege log); Dkt. # 219 (magistrate judge's order denying motion to reconsider previous ruling on access to documents on privilege log); Dkt. # 270 (Court's opinion and order denying defendant's appeal of the magistrate judge's orders concerning work product privilege of documents produced by Kurtz). While the Court did not grant defendant access to privileged documents produced by Kurtz, the Court did not prohibit defendant from commenting on plaintiff's failure to support its claims with evidence or alleviate plaintiff's burden to prove that Kurtz was eligible for coverage under the Plan. Plaintiff may not now be heard to complain of a trial strategy that it vigorously defended. This is not a basis to order a new trial.

Plaintiff's Allegations of "Judicial Activism"

Plaintiff claims that the Court's conduct evidenced a bias in favor of defendant, and the

Court should order a new trial and recuse from any further participation in this case to prevent an

appearance of impropriety.  Dkt. # 437, at 8-10.  Plaintiff raises two legal arguments that have been

addressed above, and claims that denial of plaintiff's legal arguments is evidence of judicial basis.

However, these arguments have already been rejected, and will not be discussed in connection with

plaintiff's allegations of judicial bias.[21]  Plaintiff claims that the undersigned "rolled her eyes during

the testimony of Plaintiff's witnesses" and assisted defense counsel with their examination of

witnesses.  Id. at 8.  These allegations are baseless and are not supported by the record.  During the

trial, the Court admonished counsel for both parties for presenting cumulative evidence and asking

improper questions.[22]  The fact that the Court sustained objections to questions asked by plaintiff's

counsel or found that plaintiff's legal theory was flawed is not an indication of bias against plaintiff.

Green v. Branson, 108 F.3d 1296, 1305 (10th Cir. 1997) ("adverse rulings 'cannot in themselves

form the appropriate grounds for disqualification'").  The Court allowed the parties to present their

---

[21]     Plaintiff argues that the Court misinterpreted the Plan by requiring plaintiff to prove that
        Kurtz worked normally worked 30 hours per weeks, and the Court should have required
        defendant to return any premiums paid by AG for coverage of Kurtz.  Dkt. # 437, at 8.
        These arguments have been addressed in other contexts, and will not be revisited here.

[22]     The undersigned notes that Magistrate Judge Clearly more directly expressed his displeasure
        with the conduct of counsel for both parties.  Dkt. # 188, at 5 ("Both sides have complained
        about opposing counsel's conduct during depositions and have submitted reams of
        deposition transcript pages to support their outrage. The Court's extensive review of these
        pages serves as a useful reminder that loaded guns, sharp objects and law degrees should be
        kept out of the reach of children.").  He sanctioned counsel for both parties for engaging
        inappropriate conduct during discovery.  Id. at 6.  Plaintiff does not claim that the magistrate
        judge was biased against the parties, and it is clear that counsel for both parties may been
        overzealous in their advocacy for their respective clients.

arguments and evidence to jury except when the parties' arguments were not supported by the law, and drafted jury instruction in accordance with the controlling law.  Viewing the record as a whole, there is no evidence that would create an appearance that the Court had any bias in favor of either party, and plaintiff's argument is meritless.

The Court Did Not Read Stipulations in the Pretrial Order to the Jury

Plaintiff claims that the Court did not read all of the stipulations in the pretrial order to the jury and this prejudiced it at trial.  Plaintiff seems particularly concerned that the Court did not read a stipulation informing the jury that defendant previously paid claims for Kurtz's medical expenses "pursuant to the Plan." Dkt. # 437, at 10.  Defendant responds that plaintiff waived any opportunity to have stipulations in the pretrial order read to the jury and, even if the Court were to consider this argument, this is not a basis to order a new trial.

There is only one reference in the entire trial transcript to a request to read stipulations.  Dkt. # 419, at 468.  The Court advised plaintiff's counsel that the jury would receive in the jury room any written stipulations marked as exhibits (Dkt. # 419, at 468), and plaintiff's counsel replied "[v]ery good." Id.  At no time during the trial did plaintiff's counsel ask the Court to read the stipulations in the pretrial order to the jury.

The pretrial order serves to expedite the trial by requiring the parties to determine what issues do and do not need to be tried, but stipulations in the pretrial order are not ordinarily read to jury.  See Grant v. Brandt, 796 F.2d 351 (10th Cir. 1986) ("The purpose of the pre-trial order is 'to insure the economical and efficient trial of every case on its merits without *chance or surprise*.'").  Plaintiff has not cited any authority, nor could this Court locate any authority, suggesting that factual stipulations in the pretrial order should be read to the jury.  Because plaintiff did not ask to have any

stipulations in the pretrial order read to the jury and the Court had no duty to read the stipulations, plaintiff has waived this argument and the Court will not order a new trial on this ground.

Admission of Testimony Concerning Mark Heidenreiter

Plaintiff argues that defendant violated the Court's pretrial ruling excluding evidence concerning plaintiff's claims against defendant Mark Heidenreiter.  The trial transcript shows that plaintiff opened the door on this issue, because it first asked Ash, over defendant's objection, about his decision to hire Mark Heidenreiter.  Dkt. # 417, at 211-15.  Plaintiff claims that defendant elicited improper testimony about Mark Heidenreiter's alleged attempts to blackmail Ash, but provides no citations to the trial transcript to support this assertion.  While defendant did ask Ash about Mark Heidenreiter's salary and compared this to the lesser salary paid to Kurtz, the Court has not found any references to the facts underlying Mark Heidenreiter's discovery of documents or any other irrelevant issue.  See id. at 236-39 (Ash's testimony establishing that AG paid Mark Heidenreiter $60,000 while paying Kurtz only $30,000).  This line of questioning was relevant to defendant's argument that Kurtz was not a full-time employee of AG.  The trial transcript clearly shows that defendant objected to plaintiff's questions to Ash about Mark Heidenreiter's employment, and plaintiff has no cause to complain that defendant followed up on this line of questioning during its cross-examination of Ash.

Undisclosed Bias of Jury Foreperson

Plaintiff claims that it recently discovered information that the jury foreperson's brother-in-law was formerly employed by AG, but this was not disclosed during voir dire.  However, plaintiff has presented no evidence supporting this allegation or even identifying the former employee of AG.  Plaintiff's motion does not contain a single citation to the trial transcript, and the transcript of voir

40

dire was available to plaintiff when it filed this motion.  <u>See</u> Dkt. # 386 (transcript of voir dire filed by Court reporter on March 8, 2009).  In reply, plaintiff simply states that its "investigation into this matter continues."  Dkt. # 460, at 10.

At the beginning of voir dire, the Court advised the venire panel that the purpose of voir dire is to "determine if you have a relationship to the parties, an interest in the outcome of the case, or some sort of bias or prejudice."  Dkt. # 386, at 7.  The Court conducted a thorough inquiry into each potential juror's relationship to the parties and his or her background.  Concerning Juror Stufflebeam, the Court asked him if he knew any of the parties, and he said "No."  <u>Id.</u> at 68.  The Court also asked him if he had "[a]ny business dealings with AG Equipment Company or AIG Life Insurance Company?"  <u>Id.</u>  The Court also asked numerous questions about Stufflebeam's personal and employment background, and he gave no indication that he had any familiarity with the parties. <u>Id.</u> at 111-15.  Plaintiff has presented no evidence supporting its claim of juror bias.  Even if plaintiff could substantiate its claim, the former employment of a juror's brother-in-law is not such a close connection to plaintiff that this juror would have been dismissed as a potential juror.  <u>See</u> <u>Getter v. Wal-Mart Stores, Inc.</u>, 66 F.3d 1119 (10th Cir. 1995) (bias may be inferred when a potential juror has a direct financial interest in one of the parties or the outcome of the litigation).  It is reasonable to believe that, if Juror Stufflebeam had a brother-in-law who worked for AG, Juror Stufflebeam did not recall his brother-in-law's former employer and this had no effect on his service as a juror in this case.  Therefore, the Court will not order a new trial on this basis.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Judgment Notwithstanding the Verdict Pursuant to Rule 50 (Dkt. # 397) and Plaintiff's Motion for Judgment Notwithstanding the Verdict Pursuant to Rule 59 (Dkt. # 398) are **denied**.

**IT IS FURTHER ORDERED** that the Court Clerk is directed to send a copy of this Opinion and Order to the Tenth Circuit Court of Appeals in reference to Tenth Circuit Case Nos. 09-5038 and 09-5044.

**DATED** this 9th day of July, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT