IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AG EQUIPMENT COMPANY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 07-CV-556-CVE-PJC |
| AIG LIFE INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Before the Court is the Motion for Fees and Expenses of Defendant AIG Life Insurance Company ("AIG") [Dkt. Nos. 394, 408]. AIG seeks fees in the amount of $517,890.50 and expenses of $12,860.26. A hearing on AIG's entitlement to fees was held on Dec. 16, 2009. At that time, an issue arose that neither party had briefed; therefore, supplemental briefing was scheduled and completed on Jan. 5, 2010. For the reasons set forth below I **RECOMMEND** that AIG's Motion for Fees and Expenses be **DENIED**.

### I.
*Background*

This case concerns a stop-loss insurance policy (hereafter the "AIG Policy") issued by AIG to AG Equipment ("AG").[1] A stop-loss policy was issued

---

[1] "Stop-loss insurance protects a self-funded [benefit] plan from extremely large losses. *Aggregate* stop-loss insurance reimburses the plan for overall expenses that exceed a given deductible, while *specific* stop-loss insurance protects the plan from large individual claims. Stop-loss policies commonly include both types of coverage." 1A Couch on Ins. § 7:34, n.6 [3rd ed. 2009]; *see American Medical Security, Inc. v. Bartlett*, 915 F.Supp. 740, 742 (D.Md. 1996), *aff'd*

1

in May 2003 and renewed annually during the time period relevant to this lawsuit. The dispute concerned AG's right to reimbursement under the AIG policy for medical expenses paid by AG's benefits plan on behalf of Suzanne Ash-Kurtz ("Ash-Kurtz").[2] Prior to her death in November 2008, Ash-Kurtz performed legal work for AG and/or AG's owner, Grady Ash.[3] The exact nature of her employment relationship with AG, including whether she was a full-time employee and whether AG was entitled to reimbursement for medical expenses the plan paid on her behalf, were key issues in the lawsuit.

In late 2003, Ash-Kurtz became seriously ill. Between 2004 and May 2006, AIG paid some $275,000 to AG as reimbursement for Ash-Kurtz' medical claims beyond AG's self-insured or deductible amount.[4] In April 2007, AIG delivered another check to AG for $467,775 to reimburse AG for additional medical expenses incurred by Ash-Kurtz between May 2006 and April 2007 exceeding the deductible amount or so-called attachment point. On April 24, 2007, however,

---

111 F.3d 358 (4th Cir. 1997), *cert. denied*, 524 U.S. 936 (1998). The AIG Policy at issue included both aggregate excess loss coverage and specific excess loss coverage. *See* Exhibits 1-4 to Dkt. No. 200 (Sealed).

[2]   AG and Ash-Kurtz are represented in this action by attorney Dana Kurtz, who is Ash-Kurtz' step-daughter. Thus, the Plaintiff will be referred to herein as "Ash-Kurtz." Where necessary, Plaintiff's attorney will be referred to as "Dana Kurtz."

[3]   Grady Ash is the former husband of Suzanne Ash-Kurtz.

[4]   The Stop Loss or Excess Loss Policies provided that AG would be reimbursed by AIG for any specific or aggregate sum paid for medical expenses exceeding the deductible amounts. Between 2003 and 2007 this deductible rose from $25,000 per employee to $40,000 per employee.

after learning of an allegation that Ash-Kurtz was not a full-time employee of AG, AIG stopped payment on the $467,775 check. AIG undertook an investigation of Ash-Kurtz' eligibility for coverage under the stop-loss policy. However, when AIG requested an examination under oath of Grady Ash or Ash-Kurtz, AG refused and litigation soon ensued.

On Sept. 7, 2007, Plaintiff AG filed this lawsuit claiming breach of contract and bad faith; in May 2008, AIG counter-claimed on breach of contract, fraud, and related theories. AIG was granted summary judgment on AG's bad faith claim in January 2009. The case was tried to a jury Feb. 19-24, 2009, and a verdict was rendered for AIG on all claims. Accordingly, the Court entered Judgment for AIG [Dkt. No. 382] for $279,014.11 in actual damages plus pre- and post-judgment interest.[5] The verdict also meant AIG was not liable for the $467,775 in claims AG submitted between May 2006 and April 2007. AIG now seeks an award of attorney fees as prevailing party under 36 O.S. §§ 1219 & 3629.

AG contends, *inter alia*, that §1219 is inapplicable as a matter of law because it believes that the Court previously held that §1219 did not apply herein, and that under the Law of the Case doctrine the matter has been conclusively determined. AG also argues that entitlement to fees is not supported by Oklahoma law, that fees are not recoverable under 36 O.S. §3629, and that, in any event, the amount of the fee request is unreasonable.

---

[5]  This constituted full recovery of the money AIG had paid to AG for Ash-Kurtz' medical claims between 2004 and May 2006.

3

## II
### *Applicable Legal Principles*

AIG removed this case to federal court on Oct. 2, 2007, on the basis of diversity of citizenship. [Dkt. No. 2]. In diversity cases such as this, attorney fees are substantive and are determined by state law. *Oulds v. Principal Mutual Life Ins. Co.*, 6 F.3d 1431, 1445 (10th Cir. 1993). Oklahoma follows the American Rule – each litigant is responsible for its own attorney fees unless that rule is modified by statute or contractual provision. *State ex rel. Dept. of Transp. v. Norman Indus. Dev. Corp.*, 2001 OK 72, ¶ 7, 41 P.3d 960, 962. Here, AIG relies on two provisions of the Oklahoma Insurance Code ("the Code"), 36 O.S. § 101 *et seq.*: §1219(G) and §3629(B). These sections provide for award of attorney fees under certain circumstances.

Section 3629(B) is part of the Code's general provisions governing insurance contracts.[6] This section provides:

> It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. **Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party.** If the insured is the prevailing party, the court in rendering judgment shall add interest on the verdict at the rate of fifteen percent (15%) per year from the date the loss was payable pursuant to the provisions of the contract to the date of the verdict. This provision shall not apply to uninsured motorist coverage.

---

[6] Article 36 of the Code, 36 O.S. §§3601-3639.3, is entitled "The Insurance Contract in General."

4

Okla. Stat. tit. 36, §3629(B) (emphasis added).

Section §1219(G) is contained in Article 12 of the Code dealing with unfair practice and fraud. Okla. Stat. tit. 36, §§1201-1220. Section 1219 relates specifically to delay in payment of claims under accident and health insurance policies. Okla. Stat. tit. 36, §1219(A). Subsection G of this provision states:

> In the event litigation should ensue based upon such a claim, the prevailing party shall be entitled to recover a reasonable attorney fee to be set by the court and taxed as costs against the party or parties who do not prevail.

Okla. Stat. tit. 36, §1219(G).

### III
### *Discussion*

**A. AG's Law of the Case Argument**

AG contends that the trial judge previously ruled that §1219 is not applicable to this case. AG refers specifically to the Court's Opinion and Order of Jan. 21, 2009 [Dkt. No. 272] denying motions for summary judgment. There the Court made the following statement:

> AG argues that AIG was required to accept or reject the claim within 45 days of receipt of the claim under OKLA. STAT. tit. 36, § 1219, and AIG's failure to comply with § 1219 is evidence of bad faith. <u>Section 1219 applies to "accident and health insurance" policies and it is not clear that it applies to this case.</u> <u>Id</u>. at §1219(A). Even if the Court were to assume that § 1219 applies, the 45 day requirement applies only to "clean claims" and the disputed claim in this case was anything but clean. <u>Id</u>. at § 1219(B)(2) (defining clean claim as a "claim that has no defect or impropriety, including a lack of any required substantiating documentation, or particular circumstances requiring special treatment that impedes prompt

5

>payment . . . ."). Therefore, compliance or non-compliance with § 1219 does not create an inference that AIG acted in bad faith.

Opinion and Order [Dkt. No. 272 at 15, n.11] (emphasis added).

AG has misconstrued the Court's statement. In footnote 11 the Court rejected the argument that AIG's failure to accept or reject AG's insurance claim within 45 days, as required under § 1219(A), was evidence of bad faith, because this section applies only to "clean claims" and AG's claim was "anything but clean." The Court expressed reservations as to whether §1219 applied at all to this case, but left that issue unresolved. Thus, AG has read this footnote too broadly. The law of the case doctrine does not apply here because the Court did not conclusively determine the question of §1219's applicability.

### B. The Statutory Basis for AIG's Fee Claim

The Code is an effort to create a comprehensive statutory scheme for all types of insurance and all claims.

**(A) Section 3629(B).**

The general provisions of the Code set out in Article 36 apply to all types of insurance except the following: (1) reinsurance, (2) certain insurance policies not issued for delivery in Oklahoma, (3) ocean marine and foreign trade insurance, and (4) title insurance. Okla. Stat. tit. 36, §3601. None of these exclusions applies to the stop-loss policy at issue.[7]

---

[7] Although some jurisdictions regard stop-loss insurance as reinsurance, Oklahoma does not. *See* Bulletin No. LH 2008-01 & PC 2008-04 [Dkt. No. 484, Exh. No. "5"("We do not consider these policies to be a form of reinsurance….")].

6

Section 3629 deals with form of proof of loss and an Insurer's duty to offer to settle or reject a claim. It imposes a duty upon an Insurer to either reject or offer to settle an insurance claim within 90 days after receiving the proof of loss. This 90-day requirement may act to restrict an Insurer's ability to claim fees as the prevailing party in litigation. Even if the Insurer is the prevailing party as defined in §3629(B), it cannot recover attorney fees if it failed to meet the 90-day limit to reject or offer to settle the claim. *Shinault v. Mid-Century Ins. Co.*, 654 P.2d 618, 619 (Okla. 1982) (Section 3629 "imposes the loss of any chance for attorney fees on the insurer as a sanction for the failure to respond within ninety days of its receipt of Proof of Loss."); *Oulds*, 6 F.3d at 1445-46 (discussing §3629).

Section 3629(B) also limits the circumstances under which an Insurer may be considered a prevailing party. For purposes of an attorney fee award under this provision, the Insurer must first either reject or offer to settle the claim within 90 days. Insurer must then meet the definition of "prevailing party" under this provision:

> For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party.

Okla. Stat. tit. 36, § 3629.

Thus, to be entitled to fees under this section, (1) the Insurer must have either rejected or offered to settle insured's claim within 90 days of receiving a

proof of loss and (2) any Judgment rendered for the Insured must not exceed the Insurer's offer of settlement.

AIG does not qualify for fees under this section because it is undisputed that AIG did not reject or offer to settle AG's claim within 90 days of its receipt. AG's claims were submitted sometime before April 24, 2007 – the day when the question over Ash-Kurtz' eligibility for coverage arose. Claims for $467,775 were still pending when AG filed suit in September 2007. [Dkt. No. 272 at 7 ("When the lawsuit was filed, AIG had not formally denied AG's claim for Kurtz's medical expenses and AIG states that the claim was pending.")]. Indeed, AIG stated more than once in discovery that as late as 2008 it still had not rejected AG's claims. AIG's Jan. 11, 2008, Response to Interrogatory No. 19 of Plaintiff's First Set of Interrogatories stated:

> **Interrogatory No. 19:** Identify all facts upon which you relied upon to deny or stop payment on the claim.
>
> **Response:** <u>AIG Life Insurance has never denied the claim in question</u>….

[Dkt. No. 124, Exh. 10 at 9] (emphasis added).

In a deposition taken in October 2008, AIG's witness was asked 29 times whether the insurance company had denied AG's claim for reimbursement under the stop-loss policy. The witness finally responded that she did not know whether the claim had been denied.[8] On Dec. 10, 2008, following hearing on

---

[8] Deposition of Linda Subbiondo, pp. 251-59. *See* Opinion and Order on various discovery disputes, [Dkt. No. 188 at 8-9].

AG's Motion to Compel, I ordered AIG to answer whether AG's claim had been denied. Thus, more than 12 months after AG had submitted claims for reimbursement under the policy, AIG still had not offered a written settlement or rejection of those claims. Clearly, AIG did not reject or offer settlement of AG's claims within the 90-day time period and cannot claim fees under §3629(B).

AIG argues that no proof of loss was submitted to start the 90-day period running. AIG relies on *Stauth v. National Union Fire Ins. Co. of Pittsburgh*, 236 F.3d 1260 (10th Cir. 2001) and contends that just as in *Stauth* a proof of loss in this case "would be an anomaly." *Id.* at 1265. I find AIG's reliance of *Stauth* to be misplaced. *Stauth* concerned a declaratory judgment action regarding whether there was coverage under a directors' and officers' policy. Under those circumstances, the court noted, a "'proof of loss' in the usual sense would be an anomaly." *Id.* Obviously, a proof of loss would be unusual in a declaratory judgment action because the object of such an action is to determine – frequently before loss is incurred – whether there is coverage under the policy.

The instant case, however, is not a declaratory judgment action concerning coverage. Plaintiff's claims are for breach of contract for specific amounts AG claims are due under the policy. AIG cannot seriously contend that AG never submitted proof of loss when the Insurer reimbursed AG more than $275,000 and delivered another check for another $467,775 based on documentation provided. The litigation did not concern the documentation of these sums but documentation of whether Ash-Kurtz was a covered employee under the company benefits plan.

AIG also argues that it was unable to timely reject or offer to settle the submitted claim because AG did not submit necessary information and rejected AIG's request for examinations under oath. But this did not prevent AIG from rejecting the claim within the 90-day period.

Because AIG did not reject or offer to settle AG's claims within 90 days of receipt of proof of loss, it has lost its right to seek an award of attorney fees under §3629(B).

**(1) Section 1219(G).**

AIG cannot claim attorney fees under §1219(G) because this section is limited to accident and health insurance and the AIG Policy at issue is not accident and health insurance.

The Code defines "accident and health insurance policy" in subsection (B)(1) of section 1219 as any policy that provides accident and health insurance as defined in 36 O.S. § 703. Section 703 defines accident and health insurance as follows:

> "'Accident and health insurance" is insurance against bodily injury, disablement, or death by an accident or accidental means, or the expense thereof, or against disablement or expense resulting from sickness, and every insurance appertaining thereto.

Okla. Stat. tit. 36, §703.

Section 1219 is limited to accident and health insurance or insurance "appertaining thereto." *See Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 94 P.3d 25, 26-29 (Okla. 2004) (holding §1219 cannot be the source of attorney fees relating to an uninsured motorist insurance policy). The AIG Policy is a stop-loss

insurance policy. It does not fit within the definition of §1219(B)(1) because it is not insurance against bodily injury caused by an accident or expenses resulting from sickness. AG, not Ash-Kurtz, was the party to the policy, and AG, not Ash-Kurtz or her medical providers, received the benefits under the AIG Policy.[9] The policy insured AG's benefit plan against catastrophic loss if one or more covered employees incurred massive medical expenses in a given year. Stop-loss insurance is not health insurance.

> As one treatise has noted:
>
> In the group policy situation, it is necessary to distinguish between the insurance covering the group members' health, and so forth, and the insurance that the group plan may purchase to protect itself from excess losses. **The latter (a "stop-loss" insurance policy) is for the protection of the plan, and is not health or similar insurance.**

1 Couch on Ins. §1:46 [3rd ed. 2009] (emphasis added). *See also Brown v. Granatelli*, 897 F.2d 1351, 1354 (5th Cir. 1990) (distinguishing insurance policies that protect sick or injured employees from policies "protecting employee benefit plans from catastrophic loss."); *Cuttle By and Through Stickney v. Federal Employees Metal Trades Council*, 623 F.Supp. 1154, 1157 (D.Me. 1985) ("Stop-loss insurance is not group health insurance providing insurance to individuals through a sponsor group. Rather, it is insurance obtained to protect self-insurers from risks beyond

---

[9] The Oklahoma Insurance Department ("OID") requires that stop-loss insurance be issued to and insure the employee benefits plan, *not the employee*, and that payment under the stop-loss policy be paid to the plan, *not the employee or medical providers*. See Bulletin No. LH 2008-01 & PC 2008-04 [Dkt. No. 484, Exh. "5"].

11

those upon which the premiums are based."); *United Food & Commercial Workers & Employers Arizona Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1161-1162 (9th Cir. 1986) (finding that a stop-loss insurance policy was not health insurance because it did not pay benefits directly to the participants and instead reimbursed the Plan in the event it had to pay more than a certain amount in claims in a given year); *Thompson v. Talquin Bldg. Products Co.*, 928 F.2d 649, 653 (4th Cir. 1991) ("The purpose of the stop-loss insurance is to protect Talquin from catastrophic losses, it is not accident and health insurance for employees."); *American Med. Security*, 915 F.Supp at 742 ("Stop-loss coverage insures the employee benefit plan, not the individual participants in the plan."); *American Med. Security v. Bartless*, 111 F.3d 358, 361 (4th Cir. 1997) ("Stop-loss insurance is thus akin to 'reinsurance' in that it provides reimbursement to a plan after the plan makes benefit payments.").

AIG contends that an OID Bulletin supports its position that stop-loss insurance is accident and health insurance. I disagree. OID Bulletin No. LH 2008-01 and PC 2008-04 provides that stop-loss insurance is insurance subject to OID regulation. "All companies writing stop loss coverage must file their policy forms with the Oklahoma Insurance Department for prior approval."[10] *Id.* The OID Bulletin also sets out the essential requirements for stop-loss insurance:

---

[10] The Bulletin at issue is designated Exhibit "5" to the Brief of Defendant AIG Life on Its Entitlement to Attorney Fees [Dkt. No. 484].

1.  The policy must be issued to, and insure, the sponsor of the plan, or the plan itself, not the employees, members or participants.

2.  Payment by the insurer must be made to the sponsor of the plan or the plan itself, not the employees, members, participants, or providers.

3.  The individual stop-loss amount, (i.e. retention or attachment point), must be at least $25,000.

4.  The aggregate stop-loss amount, (i.e. retention or attachment point), shall be, at a minimum, 120% of expected paid claims.

*Id.*

The Bulletin further states:

If all of the above requirements are met, then pursuant to the authority granted to the Commissioner by 36 O.S. §3612(A), the policy will not be required to comply with Oklahoma's mandated health benefit laws.  <u>If a policy fails any one of the above requirements, then the coverage will be considered a group accident and health policy, and will be subject to all group accident and health statutes and rules.</u>

*Id.* at 2 (emphasis added).

The clear implication of this provision is that if a stop-loss policy comports with the requirements of the OID it will not be considered accident and health insurance and will not be subject to the statutes and rules that govern those particular types of insurance.  Thus, stop-loss insurance that meets the OID requirements is not health and accident insurance nor insurance "appertaining thereto."  It is clearly exempt from the Oklahoma statutes – such as §1219 – that govern such accident and health insurance.

AIG also cites several cases from other jurisdictions that hold stop-loss insurance may be considered health/accident insurance for some purposes.

13

None of these cases, however, (nor the cases found by the Court or counsel for AG) addresses the attorney fee question presented herein.  The cases generally concern tax or health care financing provisions under a specific state statute.  For example, *Fidelity Security Life Insurance Co. v. Director of Revenue*, 32 S.W.3d 527 (Mo. 2000) (en banc), held that payments by an Insurer under a stop-loss policy were deductible as "health insurance benefits" for purposes of Missouri's insurance premium tax.  *Id*. at 530.  *BCBSM, Inc. v. Minnesota Comprehensive Health Association*, 713 N.W.2d 41 (Minn.Ct.App. 2006), held that stop-loss insurance would be considered accident and health insurance for purposes of statutory assessments imposed on members of the Minnesota Comprehensive Health Association ("MCHA").  These assessments fund insurance that MCHA "offers to individuals with high-risk health conditions who cannot otherwise obtain coverage." *Id.* at 43.  Under Minnesota law, "[a]ll insurers, self-insurers, and other specified insurance plans, programs, and organizations are members of MCHA" and subject to assessment.  *Id.* at 43-44.  Similarly, *Avemco Ins. Co. v. State ex rel. McCarty*, 812 N.E.2d 108 (Ind.Ct.App. 2004), concerns financing assessments for the Indiana Comprehensive Health Insurance Association.  *Id*. at 123-124.

The Court is not persuaded by these cases.  The fundamental issues in determining the applicability of §1219 are whom and what this stop-loss policy covers.  The policy covers the Plan, not AG's employees, and it covers against catastrophic loss to the Plan, not health claims of the employees.  Indeed, the

14

requirements of the Insurance Bulletin cited above establishes that the OID *requires* that a stop-loss insurance policy must be issued to and insure the sponsor of the plan, *not the employees*, and benefits must be paid to the sponsor of the plan *not the employees*. Bulletin LH 2008-01 and PC 2008-04 [Dkt. No. 484, Exh. "5."].

In addition, the policies at issue make clear that they are not health policies. For instance they expressly provide that AIG's duty is to AG only, not to Ash-Kurtz or her medical providers.

> The Company [AIG] has no responsibility or obligation under this Policy to directly reimburse any Covered Person or provider of professional or medical services for any benefits which the Policyholder [AG] has agreed to provide under the terms of the Plan. The Company's sole liability hereunder is to the Policyholder, subject to the terms, conditions and limitations of the Policy.

*See, for example,* [Dkt. No. 200, Exh. 1 and 2 at 4, Limitations of Coverage].

Thus, the AIG Policy is clear that AIG is not providing health insurance to AG employees and is not paying any medical provider on behalf of the employee. Rather, under the Policy AIG is reimbursing AG for benefit payments exceeding a certain deductible amount.

The AIG policy at issue is not insurance against bodily injury or expense resulting from sickness; it is insurance against catastrophic loss by the benefits Plan. Consequently, the claims asserted do not fall within the ambit of §1219, and AIG cannot claim an award of attorney fees under this section.

**SUMMARY**

AIG is not entitled to an award of attorney fees under either §1219(G) or §3629(B). AIG does not qualify for fees as prevailing party under §1219 because this section is limited to accident and health insurance and the stop-loss policy at issue is neither. AIG does not qualify for fees under §3628(B) because the Insurer did not reject or offer to settle AG's claim within 90 days of its receipt. Failure to comply with this 90-day limit bars AIG from an award of fees. *See Shinault, Oulds, supra.*

Accordingly, I **RECOMMEND** that AIG's Motion for Attorney Fees [Dkt. Nos. 394 & 408] be **DENIED.**

**OBJECTIONS**

The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within fourteen days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United*

16

*States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (*quoting Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

DATED this 8th day of January, 2010.

_____
Paul J. Cleary
United States Magistrate Judge