## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AG EQUIPMENT COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-0556-CVE-PJC |
| | ) | |
| AIG LIFE INSURANCE COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

On January 8, 2010, Magistrate Judge Paul J. Cleary entered a report and recommendation (Dkt. # 491), recommending that the Motion for Fees and Expenses of Defendant AIG Life Insurance Company, and Brief in Support (Dkt. # 394) should be denied.  Defendant AIG Life Insurance Company (AIG) has filed a timely objection to the magistrate judge's report and recommendation.  Dkt. # 492.

### I.

AG Equipment Company (AG) offered its employees medical insurance through a self-funded Medical Benefits Plan (the Plan) and, in May 2003, AG obtained stop-loss insurance from AIG to offset the risk of catastrophic losses under the Plan.  In 2001, AG hired Suzanne Ash-Kurtz, the ex-wife of AG's owner, Grady Ash, to perform some legal work for AG, but the nature of her employment relationship with AG is disputed.[1]  In late 2003, Ash-Kurtz became seriously ill and was diagnosed with Leiomyosarcoma in the connective tissue surrounding her lungs. AG agreed to cover Ash-Kurtz's medical expenses under the Plan, and her medical bills were substantial.

---

[1]    AG argued that Ash-Kurtz's was AG's in-house counsel and was a full-time employee.  AIG argued that, at most, Ash-Kurtz performed part-time legal work for AG.

Between 2004 and 2006, the Plan sought approximately $279,000 from AIG as reimbursement for Ash-Kurtz's medical bills, and AIG paid these claims.

On April 24, 2007, AIG mailed a check for $467,775.89 to AG to reimburse AG for medical expenses paid on behalf of Ash-Kurtz between May 2006 and April 2007. Later that same day, AIG received a phone call from an AG employee who claimed that he found documents suggesting that Ash-Kurtz did not work for AG and that she was on the payroll solely for the purpose of providing Ash-Kurtz health benefits under the Plan. AIG stopped payment on the check and opened an investigation into the employee's allegations. AIG requested additional information from AG about Ash-Kurtz's employment. AG claimed that Ash-Kurtz was AG's in-house counsel and was a full-time employee. However, AIG's initial investigation was inconclusive and it requested additional information, including examinations under oath (EUO) of Ash and Ash-Kurtz. AG's attorney, Dana Kurtz,[2] claimed that AIG was not entitled to take EUOs of any AG employee, and neither Ash nor Ash-Kurtz gave an EUO to AIG. AIG and AG reached a standoff. AIG refused to issue a new check until AG complied with AIG's requests for additional information; AG demanded immediate payment of its claim and refused to provide the additional information requested by AIG.

In September 2007, AG filed a lawsuit in state court alleging that AIG breached the stop-loss policy by refusing to reimburse AG for Ash-Kurtz's medical expenses. Dkt. # 2-2. The case was removed to federal court. When the case was filed, AIG had not yet denied AG's claim for reimbursement of Ash-Kurtz's expenses and the insurance claim was still pending. On May 20, 2008, AG amended its complaint to include a bad faith claim against AIG. Dkt. # 52. AIG filed an

---

[2]     Dana Kurtz is Ash-Kurtz's step-daughter. Throughout this Opinion and Order, the Court will refer to Suzanne Ash-Kurtz as "Ash-Kurtz" to avoid confusion with plaintiff's counsel, Dana Kurtz.

amended answer and asserted counterclaims of breach of contract and bad faith. Dkt. # 65.  AIG

subsequently amended its answer to allege additional counterclaims against AG for fraud, unjust

enrichment, money had and received, and conversion.  Dkt. # 73.  Throughout the case, AIG took

the position that AG's insurance claim was deemed denied due to the filing of a counterclaim for

breach of contract against AG.[3]

The case proceeded to trial on February 19, 2009.  The jury found for AIG on its

counterclaims of breach of contract and fraud, and awarded AIG $279,014.11.  This verdict also

meant that AIG did not have to pay AG $467,775.89 for Ash-Kurtz's medical expenses between

May 2006 and April 2007.  The Court entered judgment in favor of AIG on February 25, 2009.  Dkt.

# 382.  AIG filed a motion for attorney fees (Dkt. # 394) and requested attorney fees in the amount

of $517,890.15.  AIG seeks attorney fees under OKLA. STAT. tit. 36, §§ 1219 and 3629.[4]  The Court

referred AIG's motion for attorney fees to a magistrate judge for a report and recommendation. The

magistrate judge held a hearing on AIG's motion on December 16, 2009.  At the hearing, new issues

---

[3]       Throughout discovery, AIG argued that it had never denied the claim, as shown by AIG's
response to the following interrogatory:

> Interrogatory No. 19: Identify all facts upon which you relied upon to deny
> or stop payment on the claim.
>
> Response:       [AIG] has never denied the claim in question . . . .

Dkt. # 124-2, at 76.  The magistrate judge ordered AIG to respond to this interrogatory.  Dkt.
# 188, at 8-9.  He also noted that plaintiff's counsel took a deposition of Linda Subbiondo,
AIG's claims manager, in October 2008, and asked her 29 times if AIG had denied AG's
claim for reimbursement of Ash-Kurtz's medical expenses before Subbiondo admitted that
she did not know whether the claim had been denied.  Id.

[4]       AIG mentioned § 3629 in a footnote only and primarily relied on § 1219 as the statutory
basis for attorney fees.  See Dkt. # 394, at 3.

arose concerning AIG's entitlement to fees, and the magistrate judge ordered supplemental briefing on AIG's right to attorney fees under §§ 1219 and 3629.  Both parties submitted supplemental briefs and responses on these issues.

On January 8, 2010, the magistrate judge entered a report and recommendation (Dkt. # 491) finding that AIG was not entitled to attorney fees under §§ 1219 or 3629.  He determined that AIG did not reject or offer to settle the disputed insurance claim within 90 days of receiving the claim, and AIG could not recover fees under § 3629.  He also found that stop-loss insurance is not "accident and health insurance" as that term is used in § 1219.  Section 1219 permits an award of attorney only for disputes arising out of an "accident or health insurance" policy, and AIG was not entitled to fees under this section.  AIG filed an objection (Dkt. # 492) to the report and recommendation, and AG has responded (Dkt. # 493) to AIG's objection.[5]

## II.

The Court treats AIG's motion for attorney fees as a dispositive motion and reviews the magistrate judge's report and recommendation under Rule 72(b).  See Henderson v. Horace Mann Ins. Co., 560 F. Supp. 2d 1099 (N.D. Okla. 2008).  Pursuant to Rule 72(b), defendant has filed a timely objection to the magistrate judge's report and recommendation and the Court must conduct a de novo review of the magistrate judge's report and recommendation.  Under 28 U.S.C. § 636(b)(1), a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  See also Northington

---

[5]     The Court notes that AIG has also filed a reply (Dkt. # 494) in support of its objection to the magistrate judge's report and recommendation.  Neither Fed. R. Civ. P. 72(b) nor this Court's local rules allow replies to a report and recommendation.  The reply does not contain any arguments not raised in AIG's objection, and the Court declines to strike the reply.

v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996) ("De novo review is required after a party makes timely written objections to a magistrate's report.  The district court must consider the actual testimony or other evidence in the record and not merely review the magistrate's report and recommendations.").  The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

## III.

AIG objects to the magistrate judge's recommendations as to AIG's entitlement to attorney fees on two grounds.  First, AIG claims that stop-loss insurance is "accident and health insurance" under Oklahoma law and it is entitled to fees under § 1219(G).  Second, AIG argues that AG did not submit sufficient proof of loss and the time period for rejecting or offering to settle AG's claim never began to run, and § 3629 also provides a basis to award AIG attorney fees.

In diversity cases, an award of attorney fees is a matter of substantive law and the Court must apply Oklahoma law under Erie doctrine.  North Texas Prod. Credit Ass'n v. McCurtain County Nat'l Bank, 222 F.3d 800, 817 (10th Cir. 2000); Boyd Rosene & Assoc., Inc. v. Kansas Mun. Gas Agency, 123 F.3d 1351, 1352 (10th Cir. 1997); King Resources Co. v. Phoenix Resources Co., 651 F.2d 1349, 1353 (10th Cir. 1981).  "In Oklahoma, the right of a litigant to recover attorney fees is governed by the American Rule."  Barnes v. Oklahoma Farm Bureau Mut. Ins. Co., 11 P.3d 162, 178-79 (Okla. 2000).  A litigant must pay his or her own attorney fees in the absence of a specific statute, contractual provision, or an exception to the American Rule authorizing an award of attorney fees.  Id. at 179.  Statutory provisions permitting an award of attorney fees and exceptions to the American Rule are strictly construed.  Kay v. Venezuelan Sun Oil Co., 806 P.2d 648, 650 (Okla. 1991).

5

**A.**

The magistrate judge determined that stop-loss insurance does not qualify as accident and health insurance under Oklahoma law, and AIG is not entitled to recover attorney fees under § 1219(G).  AIG claims that it is entitled to attorney fees under § 1219, because it is the prevailing party in an insurance dispute arising out of an accident and health insurance policy.  AIG argues that the Oklahoma Insurance Department categorizes stop-loss insurance as accident and health insurance, and stop-loss insurance falls within the broad category of "any insurance appertaining" to accident and health insurance.  Dkt. # 492, at 12.  AG responds that AIG may issue some types of accident and health insurance within Oklahoma, but the specific policy at issue in this case is stop-loss insurance, not accident and health insurance, and stop-loss insurance does not have to comply with state laws regulating health insurance.  Dkt. # 493, at 5-7.

When an insured submits a claim under an "accident and health insurance policy," the insurer is obligated to reimburse the insured within 45 days of receiving a "clean claim."  OKLA. STAT. tit. 36, § 1219(A).  Under OKLA. STAT. tit. 36, § 703, "'[a]ccident and health insurance' is insurance against bodily injury, disablement, death by accidental means, or the expense thereof, or against disablement or expense resulting from sickness, and every insurance appertaining thereto."  If a claim under an accident and health insurance policy results in litigation, the prevailing party is "entitled to recover a reasonable attorney fee to be set by the court and taxed as costs against the party or parties who do not prevail."  OKLA. STAT. tit. 36, § 1219(G).

Section 703 does not expressly address whether stop-loss insurance is "accident and health insurance" and the Oklahoma Supreme Court has not ruled on this issue.[6] The Oklahoma Supreme Court has addressed the scope of § 703's definition of "accident and health insurance" in one case. See Barnes v. Oklahoma Farm Bureau Ins. Co., 94 P.3d 25 (Okla. 2004). In Barnes, the insured claimed that she was entitled to attorney fees as the prevailing party in a breach of contract claim arising out of the denial of the insured's claim for underinsured motorist coverage. Id. at 25. The Oklahoma Supreme Court found that underinsured motorist coverage was expressly governed by OKLA. STAT. tit. 36, § 3636, and § 1219 did not apply to claims for underinsured motorist coverage. Id. at 28. The Oklahoma Supreme Court did not provide any guidance for interpreting § 703 as to any other type of insurance policy.

AIG argues that stop-loss insurance falls within the broad definition of accident and health insurance provided by § 703, because stop-loss insurance "appertains" to a self-funded health insurance plan provided by an employer. Stop-loss insurance is generally defined as:

> coverage to self-funded plans above a certain level of risk absorbed by the plan. It provides protection to the plan, not to the plan's participants or beneficiaries, against benefits payments over the specified level, called the "attachment point." Attachment points may be "specific" or "aggregate." Specific attachment points define the level of benefits paid to individual beneficiaries beyond which the insurance company will indemnify the plan. Aggregate attachment points define the total amount of benefits paid to all participants or beneficiaries beyond which the insurance company will indemnify the plan. Stop-loss insurance is thus akin to

---

[6]     AIG also cites OKLA. STAT. tit. 36, § 4403, and argues that § 4403 separately defines the term "accident and health insurance." However, § 1219 specifically references § 703 as the statutory source of the definition of "accident and health insurance," and the Court will use the definition provided by § 703 in determining if stop-loss insurance qualifies as accident and health insurance. The Court notes that § 4403's definition does not include "insurance appertaining thereto" as accident and health insurance, and it offers a more narrow definition of accident and health insurance than § 703.

"reinsurance" in that it provides reimbursement to a plan after the plan makes benefit payments.

American Med. Sec., Inc. v. Bartlett, 111 F.3d 358, 361 (4th Cir. 1997).  Stop-loss insurance protects  a self-funded insurer, not the beneficiaries under the self-insured benefits plan, from the risk of excessive losses.  Northern Kare Facilities/Kingdom Kare, LLC v. Benefirst, LLC, 344 F. Supp. 2d 283, 289 (D. Mass. 2004); Cuttle by and through Stickney v. Federal Employees Metal Trades Council, 623 F. Supp. 1154, 1157 (D. Me. 1985).  In contrast, a standard health insurance plan pays benefits directly to the insured employee or the employee's medical provider, and state laws generally prohibit a health insurer from issuing payment to the employer on behalf of the employees.  See Associated Indus. of Missouri v. Angoff, 937 S.W.2d 277, 283 (Mo. 1996).  Stop-loss insurers are generally not subject to state laws regulating health insurers.  Brown v. Granatelli, 897 F.2d 1351 (5th Cir. 1990); Auto Club Ins. Assoc. v. Safeco Life Ins. Co., 833 F. Supp. 637, 642-43 (W.D. Mich. 1993).

In this case, AIG did not insure AG's employees for expenses relating to bodily injury, disablement, or sickness.  Instead, AIG insured AG from the risks of excessive liability under the Plan.  AIG did not reimburse AG's employees or their medical providers for covered medical expenses, nor did AIG have any role in determining whether particular services were covered by the Plan.  AIG issued payment directly to AG for amounts beyond an agreed-upon attachment point of $40,000.  This agreement more closely resembles reinsurance or excess insurance, instead of

8

traditional health insurance, and AIG's assertion that stop-loss insurance falls under § 703's definition of accident and health insurance is not supported by the plain language of the statute.[7]

AIG argues that the Oklahoma Insurance Department has issued a bulletin exempting stop-loss insurance policies from statutory requirements imposed on group accident and health insurers. Bulletin No. LH 2008-01 & PC 2008-04 states that insurance is considered a stop-loss policy if the following four requirements are satisfied:

> 1.  The policy must be issued to, and insure, the sponsor of the plan, or the plan itself, not the employees, members or participants.
>
> 2.  Payment by the insurer must be made to the sponsor of the plan or the plan itself, not the employees, members, participants, or providers.
>
> 3.  The individual stop-loss amount, (i.e. retention or attachment point), must be at least $25,000.
>
> 4.  The aggregate stop-loss amount, (i.e. retention or attachment point), shall be, at a minimum, 120% of the expected paid claims.
>
> If all of the above requirements are met, then pursuant to the authority granted to the Commissioner by 36 O.S. §3612(A), the policy will not be required to comply with Oklahoma's mandated health benefit laws.  If a policy fails any one of the above requirements, then the coverage will be considered a group accident and health policy, and will be subject to all group accident and health statutes and rules.

Dkt. # 492, Ex. 2, at 1-2.  AIG states it met all of these requirements and it did not have to comply with statutes governing group accident and health insurance policies.

_____

[7]     The Oklahoma Insurance Department does not treat stop-loss policies as reinsurance, because this would exempt stop-loss insurers from the requirement to submit the policy to the Oklahoma Insurance Department for approval.  Dkt. # 492, Ex. 2.  As will be discussed below, the Oklahoma Insurance Department still makes a distinction between health insurance and stop-loss coverage for a self-fund employee benefits plan, and the Court is simply highlighting the difference between standard health insurance and the stop-loss policy at issue in this case.

It is unclear why AIG believes that Bulletin No. LH 2008-01 & PC 2008-04 supports its argument that stop-loss insurance should be treated as accident and health insurance, because it directly supports AG's position that stop-loss insurance is not governed by the same laws as accident and health insurance. If the Oklahoma Insurance Department treated the subject policy as stop-loss insurance, AIG did not need to comply with any requirements imposed on group accident and health insurers, and this shows that the Oklahoma Insurance Department views stop-loss insurance as something other than accident and health insurance. AIG argues that the bulletin suggests that stop-loss insurance is treated as a distinct category of accident and health insurance from "individual" or "group" accident and health insurance. The bulletin does not support such an argument, and the Court agrees with the magistrate judge's conclusion that the bulletin contradicts AIG's argument that stop-loss insurance is accident and health insurance under Oklahoma law. See Dkt. # 491, at 13 ("stop-loss insurance that meets the [Oklahoma Insurance Department] requirements is not health and accident insurance nor insurance "appertaining thereto." It is clearly exempt from the Oklahoma statutes – such as §1219 – that govern such accident and health insurance.").

AIG has produced a document issued by the Oklahoma Insurance Department listing all insurers licensed to do business in Oklahoma and the types of insurance they provide, and the document states that AIG is authorized to issue variable, accident and health, and life insurance. Dkt. # 492, Ex. 1, at 3. AIG claims that this document is definitive evidence that stop-loss insurance is accident and health insurance under Oklahoma law, and states that the magistrate judge "did not accept [the Oklahoma Insurance Department's classification of stop-loss coverage as accident and health insurance." Dkt. # 492, at 12. First, in this document, the Oklahoma Insurance Department did not expressly classify stop-loss coverage as accident and health insurance. Further, just because

10

stop-loss insurance could fall under the broad category of accident and health insurance insofar as it relates to a medical benefits plan, this does not mean that every policy issued by AIG meets the definition of accident and health insurance policy under § 703.  The Court has already determined that it does not.  See supra.

AIG cites cases from various jurisdictions in an attempt to show that stop-loss insurance may be treated as accident and health insurance if the attachment point for reimbursement is low enough that it creates an appearance that an employer is attempting to circumvent state law through the use of a self-fund health plan that is actually funded through a stop-loss insurance policy.  Dkt. # 492, at 17-21.  Defendant's argument concerning Oklahoma Insurance Department Bulletin No. LH 2008-01 & PC 2008-04 shows that the Oklahoma Insurance Department has not expressed any concern about the stop-loss insurance provided by AIG to AG.  AIG states that it complied with all requirements for a stop-loss insurer to avoid regulation as a health insurer, including having an attachment point of at least $25,000 per employee, and the Oklahoma Insurance Department did not treat the Policy as a health insurance policy subject to state regulation.  Dkt. # 492, at 11.  AIG's argument that some self-funded health plans have used stop-loss insurance to avoid regulation as a health insurer under state law does not show that all stop-loss policies are generally treated as accident and health insurance as a matter of law, nor does this argument suggest that the subject policy was treated as accident and health insurance by the Oklahoma Insurance Department.

Based on a de novo review, the Court agrees with the magistrate judge's determination that the stop-loss policy issued  by AIG to AG does not qualify as accident and health insurance under § 703, and AIG was not required to comply with the notice requirements of § 1219 when reviewing the disputed insurance claim.  Thus, AIG may also not recover attorney fees under § 1219(G) as the

11

prevailing party in litigation concerning a disputed claim under an accident and health insurance policy.

### B.

The magistrate judge also rejected AIG's argument that it was entitled to attorney fees under § 3629 as the prevailing party in a lawsuit between an insurer and its insured, because AIG did not reject or offer to settle AG's disputed insurance claim within 90 days of receiving it.  AIG argues that AG did not submit sufficient proof of loss to trigger the 90 day period under § 3629, and it should be permitted to recover attorney fees, even though it is undisputed that AIG did not reject or offer to settle the claim until this case had been pending for at least a year after the claim was filed. AG responds that § 3629 simply requires "proof of loss" and does not permit an insurer to delay resolution of a claim until it deems the proof of loss sufficient, and AIG has waived the right to collect attorney fees under by § 3629 by refusing to reject or offer to settle AG's insurance claim within 90 days.

Section 3629 requires an insurer to provide an insured "forms of proof of loss" upon request by the insured.  OKLA. STAT. tit. 36, § 3629(A).  If the insured submits proof of loss to the insurer, "[i]t shall be the duty of the insurer . . . to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days."  Id. at § 3629(B).   The prevailing party in any subsequent litigation is entitled to recover attorney fees and costs.  Id.  The purpose of § 3629 is to "encourage the prompt settlement of claims, in part by offering the prevailing party attorney fees." Ass'n of County Comm'rs of Oklahoma v. Nat'l American Ins. Co., 116 P.3d 206, 212 (Okla. Civ. App. 2005).  The statute defines the "prevailing party" as "the insurer in those cases where judgment does not exceed written offer of settlement.  In all other judgments the insured shall be the prevailing

party." OKLA. STAT. tit. 36, § 3629(B). The insurer's penalty for failing to reject or offer to settle

a claim within 90 days is the loss of any opportunity to recover attorney fees, even if the insurer is

the prevailing party in a lawsuit. Shinault v. Mid-Century Ins. Co., 654 P.2d 618, 619 (Okla. 1982);

Hale v. A.G. Ins. Co., 138 P.3d 567 , 571(Okla. Civ. App. 2006); Cales v. Le Mars Mut. Ins. Co.,

69 P.3d 1206, 1209 (Okla. Civ. App. 2002).

AIG argues that AG's proof of loss was insufficient and the 90 day period for AIG to reject

or offer to settle the disputed insurance claim never began to run. AIG states that it requested

additional information about Ash-Kurtz's eligibility for coverage and AG failed to comply with

AIG's requests, and AIG had no obligation to take any action on the claim until AG provided

complete proof of loss. Dkt. # 492, at 26-27. Section 3629 requires the insured to submit proof of

loss, but it does not expressly toll the 90 day period if the insurer deems the proof of loss to be

insufficient. AIG relies on Stauth v. Nat'l Union Fire Ins. Co. of Pittsburgh, 236 F.3d 1260 (10th

Cir. 2001), to support its argument that only proof of loss that the insurer deems adequate triggers

the 90 day period to reject or offer to settle an insured's claim under § 3629. Stauth was a

declaratory judgment action filed by Fleming Companies, Inc. and its corporate officers seeking a

declaration that National Union Fire Insurance Company (National Union) was obligated to

indemnify Fleming under a directors and officers liability policy. Id. at 1262. The Tenth Circuit

found that the insured submitted sufficient proof of loss by notifying the insurer of the claims

pending against the insured. However, the Tenth Circuit noted that the proof of loss requirement

would often be an "anomaly" in a declaratory judgment, because the object of a declaratory

judgment action is to determine whether there is coverage and such cases were often filed before the

loss even occurred. Id. at 1264-65. In Stauth, the Tenth Circuit found that some type of proof of loss

was necessary under § 3629, and deferred to the subject insurance policy, not § 3629, to determine what proof of loss was required.  Id. at 1264-66.  The Tenth Circuit did not construe § 3629 to require any particular proof of loss.

In this case, there is no dispute that AG submitted proof of loss as required by § 3629, even if AIG now disputes the sufficiency of the proof of loss.  AIG does not argue that it lacked notice of AG's claim for reimbursement of Ash-Kurtz's medical expenses, and the amount of the claim is not in dispute.  In fact, AIG mailed a check to AG for $467,775.89 on April 24, 2007, and stopped payment on the check after receiving information that Ash-Kurtz may not have been employed by AG.  See Dkt. # 272, at 5.  AIG initiated an investigation into the allegations concerning Ash-Kurtz's employment status, and requested additional information about Ash-Kurtz and the amount of work she performed for AG.  Id.  However, AIG did not dispute the adequacy of the proof of loss when it originally received AG's claim for reimbursement of Ash-Kurtz's medical expenses and, given the size of the disputed insurance claim, it reasonable to infer that AIG initially deemed the proof of loss sufficient.  While AIG retained the right to investigate whether it was obligated to reimburse AG for Ash-Kurtz's medical expenses, it could not indefinitely hold AG's claim in abeyance without waiving its right to collect attorney fees under § 3629.  See Driver Music Co., Inc. v. Commercial Union Ins. Cos., 94 F.3d 1428, 1432 (10th Cir. 1996); Shinault 654 P.2d at 619.  AIG requested more information in an attempt to determine whether it was obligated to pay the claim, but this is a separate issue from whether AG's initial proof of loss was inadequate.   AIG has not cited any evidence suggesting that it refused to issue a decision on AG's claim because AG's proof of loss did not comply with the terms of the insurance policy; instead, AIG requested more information because it discovered information casting doubt on AG's assertion that the claim was

14

actually covered by the Policy.[8]  This is a dispute concerning coverage under the Policy, rather that the sufficiency of AG's proof of loss.

Based on a <u>de novo</u> review, the Court agrees with the magistrate judge's recommendation that AIG's request for attorney fees under § 3629 should be denied due to AIG's failure to reject or offer to settle AG's insurance claim within 90 days.  AIG could have rejected the claim within 90 days based on AG's refusal to provide the additional information requested by AIG, and this would have preserved AIG's right to seek attorney fees.  <u>See</u> O'Neil v. Long, 54 P.3d 109, 116 n.11 (Okla. 2002); <u>First Bank of Turley</u>, 928 P.2d at 304.  However, AIG did not issue a decision within 90 days and AG's insurance claim was not deemed denied until May 2008, when AIG filed a counterclaim for breach of contract against AG.  Almost one year elapsed from the time AIG initially sent a check to AG on April 24, 2007 and the deemed denial of the claim in May 2008, and AIG waived its right to collect attorney fees under § 3629 by failing to reject or offer to settle the claim within 90 days.

---

[8]     AIG argues that it did not "waive any rights to have the 'loss' sufficiently 'proved.'" Dkt. # 492, at 26.  This suggests that AIG has blurred the line between proof of loss and the insured's burden to prove that coverage exists.  The insured must provide proof of loss to give the insurer notice of a claim, and the proof of loss is intended to give the insurer enough information to evaluate the claim and conduct an investigation.  <u>See</u> <u>First Bank of Turley v. Fidelity & Deposit Ins. Co. of Maryland</u>, 928 P.2d 298, 304 (Okla. 1996).  An insured must substantially comply with the requirement to provide proof of loss, and this standard is met if the proof of loss "serves the 'ultimate purpose of affording the insurer knowledge that could be acted upon . . . .'" <u>Dixson Produce, LLC v. Nat'l Fire Ins. Co. of Hartford</u>, 99 P.3d 725 (Okla. Civ. App. 2004) (quoting <u>Fox v. Nat'l Sav. Ins. Co.</u>, 424 P.2d 19, 25 (Okla. 1967)).  The insurer may request additional information and conduct further investigation before issuing a decision on whether a claim is covered, but this does not affect the adequacy of the proof of loss.

**IT IS THEREFORE ORDERED** that the magistrate judge's report and recommendation (Dkt. # 491) is **accepted**, and the Motion for Fees and Expenses of Defendant AIG Life Insurance Company, and Brief in Support (Dkt. # 394) is **denied.**

**DATED** this 11th day of February, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT