# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AG EQUIPMENT COMPANY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 07-CV-0556-CVE-PJC** |
| | ) | |
| AIG LIFE INSURANCE COMPANY, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court are Plaintiff/Counter-Defendant's Motion for New Trial Pursuant to Rule 59 (Dkt. # 529) and Plaintiff/Counter-Defendant's Motion for Judgment Notwithstanding the Verdict Pursuant to Rule 50 (Dkt. # 530). Plaintiff AG Equipment Company (AG) asks the Court to enter judgment in its favor on all claims and counterclaims, or requests a new trial. Plaintiff's primary argument in support of its motion for new trial is plaintiff's assertion that the jury foreperson was biased against AG or that he was subject to an external influence before the jury began its deliberations. Dkt. # 529, at 5-9. The Court held an evidentiary hearing on this issue and heard the testimony of the former juror and other relevant witnesses. See Dkt. # 564.

## I.

AG filed this case alleging that AIG breached a stop-loss insurance policy by refusing to pay a disputed claim and that AIG acted in bad faith. See Dkt. # 52 (plaintiff's amended complaint). AIG filed counterclaims for, inter alia, breach of contract and fraud/deceit against AG. Dkt. # 73. Both parties filed motions for summary judgment and, following the rulings on the motions, the only remaining claims were AG's breach of contract claim and AIG's breach of contract and fraud/deceit counterclaims. See Dkt. ## 272, 301.

Jury selection took place on the morning of February 19, 2009. Dkt. # 366. During voir dire, the Court excused prospective juror David Duttry for cause, and called Kevin Stufflebeam from the venire to take Duttry's place on the prospective petit jury. Dkt. # 386, at 67. The Court asked Stufflebeam questions to determine if he could serve as a fair and impartial juror:

THE COURT: Did you hear me read the statement of the case?

PROSPECTIVE JUROR STUFFLEBEAM: Yes, Your Honor.

THE COURT: The case is going to take five to six days to try. Is that a problem for you?

PROSPECTIVE JUROR STUFFLEBEAM: No, ma'am.

THE COURT: Have you heard anything about this case prior to today?

PROSPECTIVE JUROR STUFFLEBEAM: No.

THE COURT: Do you know any of the attorneys or their law firms?

PROSPECTIVE JUROR STUFFLEBEAM: No, ma'am.

THE COURT: Any dealings that you might have had with those law firms?

PROSPECTIVE JUROR STUFFLEBEAM: No.

THE COURT: Did you hear counsel introduce the parties?

PROSPECTIVE JUROR STUFFLEBEAM: Yes.

THE COURT: Do you know any of the parties or the representatives?

PROSPECTIVE JUROR STUFFLEBEAM: No.

THE COURT: Any business dealings with AG Equipment Company or AIG Life Insurance Company?

PROSPECTIVE JUROR STUFFLEBEAM: No.

THE COURT: Any stockholdings in either?

PROSPECTIVE JUROR STUFFLEBEAM: No.

THE COURT: And any prior employment with either?

PROSPECTIVE JUROR STUFFLEBEAM: No.

THE COURT: Did you hear counsel read the names of the prospective witnesses?

PROSPECTIVE JUROR STUFFLEBEAM: Yes.

THE COURT: Did you recognize any names?

PROSPECTIVE JUROR STUFFLEBEAM: No.

THE COURT: Do you think you might know anyone?

PROSPECTIVE JUROR STUFFLEBEAM: No.

THE COURT: Have you ever been a juror in a civil case, a criminal case, or a grand jury?

PROSPECTIVE JUROR STUFFLEBEAM: Yes.

THE COURT: How many times?

PROSPECTIVE JUROR STUFFLEBEAM: Once.

THE COURT: Where?

PROSPECTIVE JUROR STUFFLEBEAM: Tulsa.

THE COURT: About how long ago?

PROSPECTIVE JUROR STUFFLEBEAM: Eight years.

THE COURT: Civil or criminal?

PROSPECTIVE JUROR STUFFLEBEAM: Criminal.

THE COURT: Nature of the charge?

PROSPECTIVE JUROR STUFFLEBEAM: Armed robbery.

THE COURT: Did you deliberate to a verdict?

PROSPECTIVE JUROR STUFFLEBEAM: Yes.

THE COURT: Were you the foreperson of the jury?

PROSPECTIVE JUROR STUFFLEBEAM: No, ma'am.

THE COURT: What was the verdict?

PROSPECTIVE JUROR STUFFLEBEAM: Guilty.

THE COURT: Are you willing to set aside any recollection that you have of those instructions, including the burden of proof?

PROSPECTIVE JUROR STUFFLEBEAM: Yes, ma'am.

THE COURT: You understand this is a civil case, and there will be a different instruction or instructions on the burden of proof?

PROSPECTIVE JUROR STUFFLEBEAM: Yes, ma'am.

THE COURT And do you agree to follow my instructions to you in this case?

PROSPECTIVE JUROR STUFFLEBEAM: Yes.

THE COURT: Anything about that prior jury service that would impact your ability to be fair here?

PROSPECTIVE JUROR STUFFLEBEAM: No.

THE COURT: Have you ever been a party to a lawsuit or anyone else in your immediate family --

PROSPECTIVE JUROR STUFFLEBEAM: No.

THE COURT:  -- or a witness or an attorney in a case?

PROSPECTIVE JUROR STUFFLEBEAM: No.

THE COURT: No litigation whatsoever?

PROSPECTIVE JUROR STUFFLEBEAM: No.

Dkt. # 386, at 68-70.  The Court asked if any juror knew of any reason that he or she could not serve as a fair and impartial juror, and no juror raised his or her hand or offered any reason why his or her impartiality could be questioned.  Id. at 85.  Stufflebeam advised the Court that he worked for a company that had an employee benefits plan:

> THE COURT: . . . Mr. Stufflebeam, do you work for a company that has an employee benefit plan?
>
> PROSPECTIVE JUROR STUFFLEBEAM: Yes.
>
> THE COURT: Where do you work?
>
> PROSPECTIVE JUROR STUFFLEBEAM: Niles Transportation.
>
> THE COURT: Where is that located?
>
> PROSPECTIVE JUROR STUFFLEBEAM: Jenks.
>
> THE COURT: And do you have medical benefits?
>
> PROSPECTIVE JUROR STUFFLEBEAM: Yes.
>
> THE COURT: Have you ever used them?
>
> PROSPECTIVE JUROR STUFFLEBEAM: Yes.
>
> THE COURT: Have you ever had a dispute?
>
> PROSPECTIVE JUROR STUFFLEBEAM: No.
>
> THE COURT: Do you know whether the plan is self-insured, partially insured, both?
>
> PROSPECTIVE JUROR STUFFLEBEAM: It's outside, through CommunityCare.
>
> THE COURT: CommunityCare.  And is there anything about your participation in that plan that would impact your ability to be fair here?
>
> PROSPECTIVE JUROR STUFFLEBEAM: No.

Id. at 94-95.  Stufflebeam also answered questions about his educational and personal background:

>THE COURT: . . . Mr. Stufflebeam, are you originally from Oklahoma?

>PROSPECTIVE JUROR STUFFLEBEAM: Yes.

>THE COURT: And what's your educational background?

>PROSPECTIVE JUROR STUFFLEBEAM: College degree.

>THE COURT: And you work at Niles Transportation.  What do you do there?

>PROSPECTIVE JUROR STUFFLEBEAM: I'm director of safety and risk management.

>THE COURT: Okay.

>PROSPECTIVE JUROR STUFFLEBEAM: I oversee the safety and training for our owner/operator drivers and provide safety support for our logistics carriers that we use.

>THE COURT: Okay.  So does any of your risk-management work relate to work with any insurance carriers for Niles Transportation?

>PROSPECTIVE JUROR STUFFLEBEAM: Only to the extent that I make sure they have current insurance.

>THE COURT: That your drivers do?

>PROSPECTIVE JUROR STUFFLEBEAM: That the company --

>THE COURT: That the company does?

>PROSPECTIVE JUROR STUFFLEBEAM: -- the companies in our logistics side have current insurance.

>THE COURT: What do you mean by logistics?

>PROSPECTIVE JUROR STUFFLEBEAM: Well, brokerage.  Logistics is the new fancy word for brokerage.  We take a truck line and we take a shipper and put the two together and --

THE COURT: And you make sure that there's proper insurance for the load? Well, driver's insurance --

PROSPECTIVE JUROR STUFFLEBEAM: That's just, yeah, one of the things that we have to do. We have to make sure they have proper paperwork filed with Federal Highway Department of Transportation, etcetera.

THE COURT: Do you deal with both the insurance for the driver and the insurance for the load?

PROSPECTIVE JUROR STUFFLEBEAM: No. I just -- it's just a checks and balance to make sure they have it. If they don't have it, then other staff go get it.

THE COURT: Okay. And how do you determine whether they have the proper insurance?

PROSPECTIVE JUROR STUFFLEBEAM: Through a system on the Internet called Safersys.

THE COURT: Okay. And do you have any direct dealing with any of the carriers for Niles Transportation?

PROSPECTIVE JUROR STUFFLEBEAM: I talk to the drivers on a daily basis to make sure they're doing what they're told to do.

THE COURT. No. I'm sorry. I didn't ask that very well. Do you have any direct dealings with any of the insurance carriers for Niles Transporation?

PROSPECTIVE JUROR STUFFLEBEAM: Oh. No, ma'am.

THE COURT: It's not your bailiwick.

PROSPECTIVE JUROR STUFFLEBEAM: No.

THE COURT: And do you deal with any claims that are made against Niles Transportation?

PROSPECTIVE JUROR STUFFLEBEAM: We haven't had any. I've been there 16 years.

THE COURT: Okay. And have you dealt with any insurance claims against or by Niles Transportation?

PROSPECTIVE JUROR STUFFLEBEAM: No, ma'am.

THE COURT: Okay.  Do you know what a stop-loss policy is?

PROSPECTIVE JUROR STUFFLEBEAM: I have an idea of what I think it might be.

THE COURT: Okay.  But you're not sure.

PROSPECTIVE JUROR STUFFLEBEAM: A maximum amount of liability to the policyholder.

THE COURT: Okay.  And is that pretty much what you know about it.

PROSPECTIVE JUROR STUFFLEBEAM: That's what I think it is.

THE COURT: Okay.  You ever have one?

PROSPECTIVE JUROR STUFFLEBEAM: No.

THE COURT: Okay.  So how did you learn that?

PROSPECTIVE JUROR STUFFLEBEAM: Sitting here thinking about it, listening to everybody.  Stop and loss, I mean --

THE COURT: Are you married?

PROSPECTIVE JUROR STUFFLEBEAM: Yes.

THE COURT: Does your wife work outside the home?

PROSPECTIVE JUROR STUFFLEBEAM: Yes.

THE COURT: Where does she work?

PROSPECTIVE JUROR STUFFLEBEAM: Sapulpa Public Schools.  She's a teacher.

THE COURT: Children?

PROSPECTIVE JUROR STUFFLEBEAM: Three.  Nine, seven and 21 months.

THE COURT: What do you do in your spare time?

PROSPECTIVE JUROR STUFFLEBEAM:  I chase them around the house.

Id. at 111-15.  Neither party challenged Stufflebeam for cause, and neither party exercised a peremptory challenge to Stufflebeam.  Thus, Stufflebeam served as a juror.

During the opening instructions, the Court told the jurors:

> not to discuss the case with each other or with anyone else or permit anyone to discuss it with you or remain within the hearing of anyone discussing.  If anyone should try to talk to you about this case, bring it to my attention promptly.  Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case.

Dkt. # 416, at 7.  The Court gave a similar instruction before each break.  Id. at 10, 79, 149; Dkt. # 417, at 65, 100, 146, 150; Dkt. # 418, at 13, 52, 133, 142.  The parties made their opening statements on the afternoon of February 19, 2009 and the trial was not completed on Friday, February 20, 2009.  The trial resumed on Monday, February 23, 2009 and the parties concluded their presentation of the evidence that afternoon.

On February 24, 2009, the parties appeared for the jury instruction conference at 9:04 a.m. and the Court began instructing the jury at 10:15 a.m.  Dkt. # 377, at 4.  Following the reading of the jury instructions and the parties' closing arguments, the Court excused the jury to deliberate at 11:51 a.m.  Id.  The Court observed a large number of AG employees present during the reading of the jury instructions and the closing arguments.  The jury reached a verdict around 3 p.m. and the jury found in favor of AIG on all claims and counterclaims.  Id.  However, the Court did not observe any significant number of AG employees present for the reading of the verdict.

One of the AG employees present during the closing arguments was Michael Withrow,[1] and he noticed Stufflebeam sitting in the jury box. Stufflebeam's sister, Kimberly Withrow, is married to Patrick Withrow, and Patrick Withrow is Mike Withrow's brother. Patrick Withrow formerly worked for AG, but his employment was terminated in 2005. Mike Withrow began working for AG in 2000 and he took over Patrick Withrow's position following Patrick Withrow's termination. Mike Withrow notified Laura Lawrence, AG's Director of Human Resources, about Stufflebeam's possible connection to AG, and it appears that the verdict had already been returned by the time he spoke to Lawrence.

AG filed post-trial motions for judgment as a matter of law (Dkt. # 397) and for new trial (Dkt. # 398) and, in its motion for a new trial, stated that:

> Plaintiff has since learned that the jury foreman is the brother-in-law to an ex-employee of AG Equipment Company, who was terminated from the Company, and failed to disclose in response to voir dire questions that he had knowledge of AG Equipment Company. Plaintiff is currently investigating the matter and seeks leave to supplement Plaintiff's motion upon obtaining further information.

Dkt. # 398, at 10. This was originally AG's entire argument in support of its contention that Stufflebeam's presence on the jury required the Court to order a new trial. AG subsequently filed a reply brief stating only that "Plaintiff's investigation into this matter continues." Dkt. # 460, at 10. On July 9, 2009, the Court denied plaintiff's post-trial motions and, in particular, found that AG had not shown that Stufflebeam falsely answered any question during voir dire or that he intentionally withheld information from the Court. Dkt. # 472, at 41.

---

[1] The parties refer to Michael Withrow as "Mike Withrow" and plaintiff has submitted a declaration signed by "Mike Withrow." See Dkt. # 525-1. To maintain consistency with the pleadings, the Court will refer to Michael Withrow as "Mike Withrow" in this Opinion and Order.

AG had previously filed an appeal (Dkt. # 409) of the verdict and other pre-trial rulings and AIG filed a counter-appeal (Dkt. # 423) challenging certain jury instructions. Following the Court's denial of AG's post-trial motions, AG appealed the adverse ruling on the post-trial motions (Dkt. # 475). AIG sought over $500,000 in attorney fees from AG, but the Court found that AIG was not entitled to attorney fees under Oklahoma law and denied AIG's motion for attorney fees. See Dkt. # 495 (opinion and order denying AIG's motion for attorney fees). AIG appealed the denial of its motion for attorney fees. Dkt. # 496. The Tenth Circuit Court of Appeals dismissed all pending appeals due to lack of appellate jurisdiction, because the judgment failed to specify the amount of prejudgment interest awarded to AIG. Dkt. # 501, at 3; Dkt. # 515, at 1. The Court subsequently entered an amended judgment (Dkt. # 517) awarding AIG prejudgment interest in the amount of $66,887.84. AG refiled its post-trial motions (Dkt. ## 529, 530). AG's renewed motion for a new trial included an expanded argument concerning Stufflebeam's potential bias and also alleged that Stufflebeam may have been subject to an external influence while the trial was pending. See Dkt. # 529, at 5-9. AG also filed a motion (Dkt. # 525) seeking leave to depose Stufflebeam or, in the alternative, for the Court to hold an evidentiary hearing as to AG's allegations of juror bias or misconduct. AIG opposed AG's motion and argued that AG's claims of juror bias or misconduct were too speculative to warrant an evidentiary hearing. See Dkt. # 538, at 7-8. AIG also argued that plaintiff waived any argument concerning juror misconduct by "[sleeping] on its rights." Id. at 2. The Court found that AG had raised a colorable claim that Stufflebeam failed to answer voir dire questions honestly and that Stufflebeam may have talked to Patrick Withrow about the case before the jury began its deliberations. The Court set the matter for an evidentiary hearing on March 1,

2011 and notified the parties that the Court would subpoena Stufflebeam as the Court's witness for the evidentiary hearing. Dkt. # 554, at 6-7.

At the evidentiary hearing, the Court explained that it would conduct the direct examination of Stufflebeam and the parties would be permitted to cross-examine Stufflebeam. Stufflebeam appeared at the hearing with an attorney. The Court questioned Stufflebeam as to his answers to the voir dire questions, and Stufflebeam testified that all of his answers were truthful. Stufflebeam stated that he had not heard of AG when he was called as a prospective juror on February 19, 2009. Dkt. # 565, at 7-8. He further testified that he did not recognize the names of any AG employees who were identified as potential witnesses at trial. Id. at 10. Stufflebeam explained that his sister, Kimberly Withrow, is married to Patrick Withrow, and their wedding took place on April 12, 2008. Id. at 8. He testified that he met Mike Withrow for the first time at his sister's wedding and that he may see Mike Withrow about once a year. Id. at 8, 19. Even though Patrick Withrow is married to Stufflebeam's sister, Stufflebeam testified that he was not aware of Patrick Withrow's prior employment history when he was called as a prospective juror, and he also did not know that Patrick Withrow had been fired by AG. Id. at 9, 12. Stufflebeam denied that he had any bias for or against AG at the time of jury selection. Id. at 12. He also denied that he violated his oath as a juror not to discuss the case with any person, including family members, before the jury retired to deliberate. Id. at 13-14.

Stufflebeam testified that he did not talk to Patrick Withrow about the case between February 19 and 24, 2009. Id. at 14. Stufflebeam believes that Patrick Withrow was aware that Stufflebeam was serving on a jury because Patrick Withrow may have learned indirectly from Stufflebeam's father, Les Stufflebeam, about Stufflebeam's service on a jury. Stufflebeam works for Niles

Transportation, Incorporated (Niles Transportation), and Stufflebeam's father also works for Niles Transportation. Stufflebeam testified that it was necessary to inform his employer that he had been selected to serve on a jury. Id. However, Stufflebeam testified that he did not discuss any details of the case with his father or even tell his father the identity of the parties to the lawsuit. Id. at 15, 18. Stufflebeam claims that his sister heard from Les Stufflebeam that Stufflebeam was serving on a jury, and Patrick Withrow may have learned about Stufflebeam's service as a juror through Kimberly Withrow or from Les Stufflebeam. Id. at 18-19. Stufflebeam again denied that he had any direct communication with Patrick Withrow about this case at any time before the verdict or even about his jury service. Id. at 19.

Counsel for AG cross-examined Stufflebeam. Stufflebeam reiterated that he saw Mike Withrow infrequently. He stated that it was possible he met Mike and Patrick Withrow at an Oklahoma State University football game in 2008 because Stufflebeam has season tickets. However, he did not recall meeting them at a game. Id. at 20-21. Stufflebeam did not recall Mike Withrow wearing a shirt with an AG logo at any time. Id. at 24. Stufflebeam acknowledged that he has a close relationship with Patrick Withrow, and Patrick Withrow refers to Stufflebeam as his "brother." Id. at 21. Stufflebeam's family regularly attends family events and celebrations with Patrick and Kimberly Withrow. Id. at 22. Stufflebeam's grandmother Moon's birthday is February 20. He could not recall if the family celebrated her birthday in 2009 and did not remember attending a birthday party for his grandmother on Friday, February 20, 2009 or anytime during the weekend recess of February 20-22, 2009. Id. at 22-23.

Stufflebeam testified that he did have a conversation with Patrick Withrow after the trial and told Patrick Withrow that he served on a jury in a case involving AG and AIG. Id. at 23. He could

not remember the date of the conversation and does not remember if it took place at a birthday party for his grandmother.  Id. at 23-24.  He stated that Patrick Withrow's former employment with AG was not discussed in this conversation and he did not learn that Patrick Withrow had been fired by AG until he received a subpoena to testify at the evidentiary hearing.  Id. at 24, 30.  Stufflebeam also denied that his sister had told him about Patrick Withrow's former employment for AG.  Id. at 24.  Although Stufflebeam could not recall exactly when he talked to Patrick Withrow about the trial, he stated that this conversation occurred after the trial was completed.  Id. at 25, 28.  Stufflebeam denied that he made any statement to Patrick Withrow to the effect that the case had already been decided and did not recall making a statement that the "deal was sealed."  Id. at 28, 43.  He did recall that he told Patrick Withrow that he had seen Mike Withrow in the courtroom and testified that he asked why Mike Withrow would have been attended the trial.  Stufflebeam stated that Patrick Withrow informed him that Mike Withrow worked for AG, and that this was the first time he learned that Mike Withrow worked for AG.  Id. at 40.  Stufflebeam testified that he had only one conversation with Patrick Withrow about the case or his jury service in 2009, and that he did not directly tell Patrick Withrow that he was called for jury duty before the trial.  Id. at 31, 39.

Stufflebeam remembered that many AG employees attended trial for the parties' closing arguments, but he denied that he saw Mike Withrow at that time.  Id. at 25.  Instead, Stufflebeam testified that he saw Mike Withrow in the courtroom when the jury returned with its verdict.  Id. However, he could not recall how many AG employees were present in the courtroom to hear the verdict.  Id. at 26.  Stufflebeam testified that he told Patrick Withrow about Mike Withrow's presence in the courtroom during their post-trial conversation.  Id. at 28.  Counsel for AG asked Stufflebeam if he told Patrick Withrow that he talked to the Court after he saw Mike Withrow in the

courtroom. Stufflebeam stated that the judge briefly talked to the jury to thank them for their service, but he did not tell the judge that he observed Mike Withrow. Id. at 26-27. Stufflebeam later testified that he did not immediately figure out that Mike Withrow was employed by AG, and he did not make this connection until Patrick Withrow later told Stufflebeam that Mike Withrow was employed by AG.[2] Id. at 40, 43.

Stufflebeam testified that he attended a family gathering during which his father asked Stufflebeam about the trial, but this gathering occurred after the trial. Id. at 31. Stufflebeam could not recall when this conversation with his father occurred, but acknowledged that it was "possible" that this happened at a birthday celebration for his grandmother. Id. at 32-34. Stufflebeam attempted to clarify his testimony and stated that the conversation with his father did not occur on or near February 20, 2009 and he did not remember if there was a birthday party for his grandmother. Id. at 32-33. Stufflebeam could not recall exactly what he told his father, but he believes that he mentioned it was a case involving two companies with an insurance dispute. Id. at 33. Stufflebeam might have named the companies, but did not recall Patrick Withrow stating that he used to work for one of the companies. Id. Patrick Withrow was present at the family gathering but Stufflebeam explained that he did not have any direct conversation about the case with Patrick Withrow at that time, and that this was a separate event from his direct, post-trial conversation with Patrick Withrow. Id. at 38-40. However, Stufflebeam later stated that Patrick Withrow "may have" mentioned that he formerly worked for AG after Les Stufflebeam asked about the case. Id. at 42.

---

[2]     Stufflebeam testified that he saw the AG employees during closing argument and heard plaintiff's counsel refer to the group as AG employees, but he did not see Mike Withrow in the courtroom during closing argument. Id. at 44. However, he was clear that the only time he saw Mike Withrow in the courtroom was with a large group of people. Id. at 46.

Counsel for AG asked Stufflebeam if Patrick Withrow had ever mentioned the name of Mark Heidenreiter. Id. at 34. Mark Heidenreiter was formerly employed by AG as a janitor and it was Heidenreiter's discovery of e-mails between AG's owner, Grady Ash, and Suzanne Ash-Kurtz that triggered AIG's investigation into insurance claims submitted for reimbursement of Ash-Kurtz's medical expenses. Stufflebeam testified that he and Patrick Withrow formerly worked at Mazzio's (a pizza chain restaurant), but perhaps not at the same time, and AG's counsel implied that Heidenreiter worked at Mazzio's at the same time as Patrick Withrow.[3] Id. at 34. However, Stufflebeam testified that he had not heard of Heidenreiter and he could not confirm if counsel's implication was correct. Id. at 34-35. Stufflebeam also did not remember hearing Heidenreiter's name during the trial. Id. at 35.

Stufflebeam talked to Patrick Withrow shortly after he received a subpoena to testify at the evidentiary hearing, and informed Patrick Withrow about the subpoena. Id. at 36. Stufflebeam initially denied that Patrick Withrow subsequently called him after Patrick Withrow received a similar subpoena from plaintiff's counsel. Id. at 36. However, he later clarified his testimony and stated that Patrick Withrow called Stufflebeam after he received a subpoena, and he was clear that there were two separate conversations before the evidentiary hearing. Id. at 41. Stufflebeam testified that they did not discuss anything other than the subpoenas and that Patrick Withrow did not ask Stufflebeam to confirm that their 2009 conversation about the case occurred after the trial. Id. at 37. Stufflebeam also stated that Patrick Withrow did not ever inform Stufflebeam that Patrick Withrow had told Mike Withrow about their 2009 conversation about the case. Id.

---

[3]     Counsel also suggested that Patrick Withrow is a "Facebook friend" of Heidenreiter and Stufflebeam testified that he is a Facebook friend of Patrick Withrow, but Stufflebeam did not recognize Heidenreiter's name. Id. at 35.

Counsel for AIG also cross-examined Stufflebeam.  Stufflebeam denied making any statement to Patrick Withrow that "the decision had already been made." Id. at 47-48.  He stated that he had not heard of AG before the trial, and that he did not know about Patrick and Mike Withrow's employment history with AG.  Id. at 48.  Stufflebeam claimed that he did not talk to anyone about the case before the jury began to deliberate, and he did not bring any information or evidence outside of the evidence presented at trial into the jury deliberations.  Id. at 49.  Stufflebeam did not remember attending a birthday party for his grandmother, but he clarified his testimony to reflect that he simply could not remember if a party occurred.  Id. at 50.

Stufflebeam's attorney also conducted a brief cross-examination of Stufflebeam.  Stufflebeam testified that birthday parties for his family members were not generally held on a Thursday or Friday.  Id. at 52.  Patrick Withrow began dating Stufflebeam's sister in 2007 and they were married on April 12, 2008.  Stufflebeam testified that he did not know about Patrick Withrow's employment with AG until he received a subpoena to testify at the evidentiary hearing.  Id. Stufflebeam would have informed the Court about his familial relationship to Patrick and Mike Withrow if he had known it was relevant but, even if he had known that Patrick and Mike Withrow had an employment history with AG, this information would not have impacted his ability to serve as an impartial juror.  Id. at 53.  On re-cross examination by counsel for AG, Stufflebeam reiterated that he did not inform the Court that he had seen Mike Withrow in the courtroom, and he testified that he did not tell Patrick Withrow that he attempted to communicate with the Court about this issue.  Id. at 54.  He claimed that he would not have been biased against AG if he had known that Patrick Withrow was fired by AG in 2005.  Id. at 55.

AG called Patrick Withrow as its first witness. He testified that he received a subpoena from AG to compel his attendance at the evidentiary hearing, and that he subsequently spoke to plaintiff's counsel on February 27, 2011. Id. at 57-58. Patrick Withrow is close to his wife's family. He calls his wife's parents "mom" and "dad," and he is closer to his wife's family than he is to his own family. Id. at 58-59. He attends church with his wife's parents and spends holidays and birthdays with his wife's family. Id. at 58. Patrick Withrow knew that Stufflebeam had been called for jury duty before hearing about a trial involving AG and AIG, because Stufflebeam directly told Patrick Withrow that he had received a summons for jury duty. Id. at 59-60. Patrick Withrow clearly recalled that he spoke to Stufflebeam about the case before he received a phone call from Mike Withrow about Stufflebeam's presence on the jury. Id. at 59.

When Patrick Withrow spoke to Stufflebeam about the case, he believed that the trial had been completed because Stufflebeam told him the trial was over. Id. at 60-61. However, he had no independent knowledge about the status of the trial and he did not attempt to verify Stufflebeam's statement that the trial was over. Id. at 61, 77. Patrick Withrow initiated the conversation with Stufflebeam and asked about the trial. Id. at 61. Stufflebeam told Patrick Withrow that he served on a jury in a case involving AG and AIG. Id. at 62. Patrick Withrow testified that Stufflebeam stated that he had been selected as the jury foreperson and he had seen Mike Withrow in the courtroom. Id. Stufflebeam questioned why Mike Withrow would have attended the trial, and Stufflebeam claimed that he saw Mike Withrow after the jury had completed its deliberations. Id. at 62-63. Patrick Withrow's recollection of the conversation was "very vague," and he could not recall any other details of the conversation. Id. This conversation occurred at a birthday party for Stufflebeam's grandmother on a Saturday or Sunday, but Patrick Withrow could not recall the date

of the birthday party.  Id. at 64, 73.  Stufflebeam's father and sister may have overheard the conversation, but Patrick Withrow does not know if Stufflebeam's mother was present for the conversation.  Id. at 76.  Patrick Withrow clarified his testimony to state that he told Stufflebeam about his former employment with AG during this conversation, but he could not recall if he told him he was terminated because his termination is not something he readily tells everyone.  Id. at 78.

Patrick Withrow talked to his brother a day or two after his conversation with Stufflebeam in 2009.  Id. at 73.  Mike Withrow asked if Patrick Withrow knew that Stufflebeam was a juror in a case involving AG and AIG.  Id. at 73.  Patrick Withrow stated that he had talked to Stufflebeam about the case and knew that Stufflebeam was a juror in the case.  Id. at 73-74.  Although Patrick Withrow's memory about some aspects of this conversation was vague, he knows that he spoke to his brother after his conversation with Stufflebeam, and he spoke to Stufflebeam at a birthday party on or about February 20, 2009.  Id. at 75.

Patrick Withrow and Stufflebeam had a second conversation about Stufflebeam's jury service about two weeks before the evidentiary hearing.  Id. at 65-66.  Patrick Withrow was at Stufflebeam's house on the day Stufflebeam was served with a subpoena, and Stufflebeam stated that he was frightened when a federal marshal arrived to serve the subpoena.  Id. at 66.  Patrick Withrow called Stufflebeam the following day and asked Stufflebeam if "the subpoena was for the AG, AIG case that we previously talked about?"  Id.  Stufflebeam stated that the subpoena was for the AG/AIG case and Patrick Withrow asked "[w]ell, when we had the conversation previously, this was all after the case; correct?"  Id.  Stufflebeam said "Yes."  Id.

Upon further questioning by counsel for AG, Patrick Withrow recalled that he had a conversation with Stufflebeam after Stufflebeam had observed Mike Withrow in the courtroom.  Id.

at 67. However, Patrick Withrow could not recall if he had one or two conversations with Stufflebeam near the time of trial in 2009. Id. at 76. Stufflebeam told Patrick Withrow that he figured out that Mike Withrow worked for AG based on his attendance at the trial. Id. at 67. Stufflebeam claimed to Patrick Withrow that he spoke to the judge following the trial, because he recognized Mike Withrow in the courtroom and he felt "concerned." Id. at 67-68. Patrick Withrow denied that Stufflebeam made any comment to the effect that the decision had already been made or that the "envelope had been sealed." Id. at 69.

Patrick Withrow could not recall if he had told Stufflebeam about his former employment with AG before the trial began on February 19, 2009, although he "seriously doubt[ed]" that he would have discussed his termination from AG with Stufflebeam. Id. Patrick Withrow had informed his wife about his termination from AG and testified that he "was terminated for cloudy reasons, that [he's] embarrased of the situation, [he's] not happy with the fact that [he] was terminated, but [he's] moved on since." Id. at 69-70. Mike Withrow has attended some Stufflebeam family functions and Mike Withrow commonly wears a shirt with an AG logo. Id. at 72.

On cross-examination by counsel for AIG, Patrick Withrow testified that Stufflebeam mentioned during their initial conversation about the case that Stufflebeam was the foreperson of the jury and that he had seen Mike Withrow. Id. at 79. Patrick Withrow would not disagree with Stufflebeam's testimony that the conversation occurred after the trial, but he stated that he did not know the status of the trial before initiating the conversation with Stufflebeam. Id. at 80.

AG called Mike Withrow as its final witness at the evidentiary hearing. Mike Withrow has worked at AG for about 10 years, and he moved into Patrick Withrow's position in the parts department after Patrick Withrow was terminated by AG. He was not hired expressly to take Patrick

Withrow's job and he began working for AG in its shipping department around November 2000. Id. at 84. Mike Withrow was first introduced to the Stufflebeam family at an engagement party for Patrick and Kimberly Stufflebeam, and he occasionally attends Stufflebeam family functions. Id. at 88. He told Stufflebeam at the engagement party that he worked for AG, but he could not be certain that Stufflebeam remembered this fact or if this information was significant to Stufflebeam. Id. at 89, 96. Mike Withrow was not certain if Patrick Withrow had told Stufflebeam that he was terminated by AG. Id. at 95.

Mike Withrow attended closing arguments of the trial and was not present for any other part of the trial. Id. at 85, 92. He testified that he saw Stufflebeam sitting in the jury box and "didn't understand why [Stufflebeam] was there due to relations with the family, marriage, and I just didn't think it was right." Id. at 86. Mike Withrow called his brother on February 24, 2009, the day the trial concluded, and asked Patrick Withrow if he knew that Stufflebeam was on the jury in this case. Id. at 87, 92. Patrick Withrow did not mention that Stufflebeam was the foreperson of the jury, but he did say that they had talked about the case. Id. at 87-88. Patrick Withrow did not make any statement suggesting that Stufflebeam saw Mike Withrow in the courtroom. Id. at 91. Mike Withrow recalls that about 20 or 30 AG employees were present for the closing arguments, and he told some of these employees that he recognized Stufflebeam. Id. After Mike Withrow returned to the office, he also told Laura Lawrence, AG's Human Resources Director, that he had seen Stufflebeam on the jury, but Lawrence learned of Mike Withrow's allegations after the verdict had already been returned. Id. at 91, 102. Mike Withrow signed a declaration in September 2010 concerning his post-trial conversation with Patrick Withrow. He told AG's president, Ash, about the conversation within a week after the trial was concluded, and Ash did not want to create conflict

for Mike Withrow's family.  Id. at 100.  Ash told Mike Withrow that he did not want to use the information to challenge the verdict.  Id.

Plaintiff's counsel made an evidentiary proffer concerning when she first learned of Mike Withrow's allegations that Patrick Withrow and Stufflebeam talked about the case.  She spoke to Mike Withrow in late August or early September 2010, and Mike Withrow told her that Patrick Withrow and Stufflebeam talked about the case before the jury reached a verdict.  Id. at 109.  She was advised that AG did not disclose this information to her to avoid conflict in the Withrow family.  Id.  After learning of Mike Withrow's allegations, she included this information in AG's renewed post-trial motions in September 2010.  See Dkt. # 529, at 5-9.

## II.

Plaintiff has filed a timely motion for new trial under Fed. R. Civ. P. 59.  Pursuant to Rule 59, a court may grant a new trial "on all or some of the issues--and to any party-- . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ."  A court's decision to grant a new trial "involves an element of discretion which goes further  than the mere sufficiency of the evidence.  It embraces all the reasons which inhere in the integrity of the jury system itself."  Weese v. Schukman, 98 F.3d 542 (10th Cir. 1996).  Juror bias or  misconduct that affects the integrity of the trial proceedings can be a basis for a court to order a new trial.  See Mayhue v. St. Francis Hosp. of Wichita, Inc., 969 F.2d 919, 922 (10th Cir. 1992).  The party alleging that a verdict was affected by juror bias bears the burden of establishing bias.  Skaggs v. Otis Elevator Co., 164 F.3d 511, 516 (10th Cir. 1998).  Even if the Court finds some juror bias or misconduct, not every incident requires a new trial and the Court must consider the "content of the allegations, the seriousness and likelihood of the alleged bias, and the credibility of the

source." United States v. Bradshaw, 787 F.2d 1385, 1390 (10th Cir. 1986). The Court must determine "whether the circumstances . . . compel an imputation of inherent bias to the juror as a matter of law." Id. (quoting Williams v. United States, 418 F.2d 372, 377 (10th Cir. 1969)).

**III.**

Plaintiff argues that the Court should set this matter for a new trial because there is substantial doubt whether plaintiff received a trial before a fair and impartial jury, and raises two separate arguments in support of its motion for new trial. Dkt. # 529, at 5-9. First, plaintiff argues that Stufflebeam intentionally hid his relationship to Mike and Patrick Withrow during voir dire, and Stufflebeam's dishonest answer to a material voir dire question independently requires the Court to order a new trial. Id. at 5-7. Second, plaintiff argues that Stufflebeam talked to Patrick Withrow, a former and possibly disgruntled former AG employee, while the trial was pending and Stufflebeam was subject to an external influence during the trial. Id. at 8-9. AIG responds that plaintiff waived these arguments by failing to raise these issues in a timely manner. Dkt. # 543, at 22. AIG also argues that the evidence fails to show that any extraneous information was considered by the jury during its deliberations. Dkt. # 565, at 115.

Before reaching the merits of plaintiff's arguments, the Court will consider AIG's argument that plaintiff waived consideration of one or both of its arguments. AIG is correct that plaintiff raised the full scope of its juror bias or misconduct argument almost two years after the trial was completed. However, the Tenth Circuit dismissed the pending appeals in July 2010, and plaintiff was authorized to refile its post-trial motions upon entry of an amended judgment. Plaintiff refiled its post-trial motions and there is no dispute that plaintiff's motions were timely under Rules 50 and 59. An argument of juror bias may be waived if the moving party was aware of the issue before the

verdict was returned and the party remained silent until after an unfavorable verdict.  United States v. Gootee, 34 F.3d 475 (7th Cir. 1994); United States v. Marrero, 904 F.2d 251 (5th Cir. 1990).  In this case, plaintiff's corporate representative, Lawrence, did not learn about Stufflebeam's connection to the Withrow family until after the jury returned its verdict, so the evidence does not show that plaintiff withheld this information until after an unfavorable jury verdict.  See Dkt. # 565, at 102.  Even if the motions were not timely, the Court would exercise its discretion to consider plaintiff's motion for a new trial under Fed. R. Civ. P. 60, because the conduct raised by plaintiff goes to the fundamental fairness of the trial and plaintiff's counsel was not aware of the full scope of the conduct until September 2010.  AIG has not shown that it has been prejudiced by any delay and, if anything, it is more difficult for plaintiff to pursue a claim of juror bias due to the passage of time.  The Court does not find that plaintiff waived consideration of its arguments of juror bias or misconduct, and the Court will consider the merits of these arguments.

**A.**

Plaintiff argues that Stufflebeam falsely answered voir dire questions concerning his knowledge of the parties and that he would have been stricken from the jury if he had answered the questions truthfully, and the Court should order a new trial based on McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548 (1984).  AIG responds that plaintiff has not identified a specific voir dire question that Stufflebeam answered untruthfully and there is no evidence that Stufflebeam was aware of Patrick Withrow's former employment or Mike Withrow's current employment with AG. Dkt. # 565, at 114-15; Dkt. # 543, at 18.

Every litigant in a civil case has a right under the Due Process Clause to a trial before a fair and impartial jury "capable and willing to decide the case solely on the evidence before it."  Smith

v. Phillips, 455 U.S. 209, 217 (1982). The denial of an impartial jury is a denial of due process. Skaggs v. Otis Elevator Co., 164 F.3d 511, 515 (10th Cir. 1998). A district court must excuse a juror for cause if the prospective juror's responses to voir dire questions shows an actual bias in favor of a party, and bias is presumed in cases when the prospective juror has a close connection to the parties or the facts of the case. Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1467 (10th Cir. 1994); Getter v. Wal-Mart Stores, Inc., 66 F.3d 1119, 1122 (10th Cir. 1993). However, not all juror biases "adversely affect a litigant's right to a fair trial" and a juror's "bias must affect the juror's ability to impartially consider the evidence presented at trial" to result in a due process violation. Skaggs, 164 F.3d at 515.

To obtain a new trial based on a juror's failure to answer a voir dire question truthfully, the moving party must show "that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." McDonough Power Equip., 464 U.S. at 556. The Tenth Circuit has been clear that the first part of the McDonough test is satisfied only when a potential juror gives an intentionally false answer to a voir dire question. Skaggs, 164 F.3d at 515 ("The first prong of the *McDonough* test is satisfied only if the movant can prove that the juror in question intentionally gave an incorrect answer"); Gonzales v. Thomas, 99 F.3d 978, 984 (10th Cir. 1996) ("A party cannot satisfy the first part of this test merely by demonstrating a juror provided a 'mistaken, though honest, response to a question.'"). The Court may not infer bias from mistaken answers to voir dire questions. United States v. McConnel, 464 F.3d 1152, 1157 (10th Cir. 2006). The second prong of McDonough is satisfied "only if the movant can satisfactorily show the juror's correct response would have provided the movant with a valid basis to challenge the juror for cause." Skaggs, 164 F.3d at 515.

There is no dispute that Stufflebeam failed to disclose his familial relationship to Patrick and Mike Withrow during voir dire, but the parties do dispute whether Stufflebeam intentionally withheld information from the Court. During voir dire, the Court asked Stufflebeam if he "[knew] any of the parties or their representatives" and plaintiff claims that Stufflebeam "knew AG Equipment, knew that his sister, Kimberly Withrow, married Patrick Withrow, a former employee of AG Equipment who was terminated, and knew Mike Withrow, who still works at AG Equipment . . . ." Dkt. # 529, at 6. AIG responds that there is no evidence that Stufflebeam was aware of Patrick or Mike Withrow's connection to AG on February 19, 2009, and plaintiff's assertion that Stufflebeam lied to the Court is speculative. Dkt. # 543, at 18.

Stufflebeam testified that he had not heard of AG when he was called as a prospective juror and he did not recognize the name of any potential witnesses identified by the parties. Dkt. # 565, at 7-8. However, Mike Withrow's testimony shows that Stufflebeam may have been aware of Mike Withrow's employment with AG. Stufflebeam did meet Mike Withrow at an engagement party for Patrick and Kimberly Stufflebeam in 2007, and Mike Withrow testified that he told Stufflebeam at the engagement party that he worked for AG. Id. at 88-89. Patrick Withrow testified that Mike Withrow also attended other Stufflebeam family functions and wore a shirt with an AG logo to some of those functions. Id. at 72. Mike Withrow testified that he had met Stufflebeam a "handful" of times, and Stufflebeam testified that he saw Mike Withrow about once a year. Id. at 19, 94. Mike Withrow did not know if the identity of his employer would be a significant fact to Stufflebeam, and the engagement party occurred almost two years before the trial. Id. at 96.

Mike Withrow "believed" that Stufflebeam was aware of Patrick Withrow's former employment with AG, but he could not recall a specific conversation at which he was present that

Patrick Withrow actually told Stufflebeam about this prior employment. Id. at 95. Stufflebeam denies that he knew before February 19, 2009 that Patrick Withrow had been employed by AG or that Patrick Withrow was fired by AG. Id. at 9, 12. Patrick Withrow testified that he told Stufflebeam about the fact of his prior employment during their initial conversation about the case. Id. at 78. However, he "seriously doubt[ed]" that he would have told Stufflebeam about this prior employment or the circumstances of his termination by AG at any time before the trial.[4] Id. at 69.

The Court finds that the evidence is insufficient to show that Stufflebeam knew on or before February 19, 2009 of Patrick Withrow's former employment with AG or Mike Withrow's employment with AG. Mike Withrow's testimony that he told Stufflebeam about his employment with AG at an engagement party in 2007 is credible, and the Court finds that this conversation occurred. However, Mike Withrow had no way to know if Stufflebeam found this information significant in 2007 or if Stufflebeam would be likely to remember this information. Mike Withrow attended a small number of Stufflebeam family functions and wore a shirt with an AG logo, but there is no evidence suggesting that Stufflebeam noticed Mike Withrow's shirt or that they had any further discussions about Mike Withrow's employment. The evidence shows that Stufflebeam recognized Mike Withrow in the courtroom and was acquainted with him, but the evidence does not establish that they had a close relationship or that they saw each other outside of the occasional family gathering. The possibility that Stufflebeam might have remembered the identity of Mike Withrow's

---

[4]     Counsel for plaintiff attempted to elicit testimony from Patrick Withrow about Kimberly Withrow's beliefs concerning Stufflebeam's knowledge of Patrick Withrow's former employment with AG. Id. at 71. However, the Court did not allow Patrick Withrow to speculate about his wife's beliefs and plaintiff did not call Kimberly Withrow as witness. The Court will not infer that Stufflebeam knew that Patrick Withrow was formerly employed by AG based on the hearsay statements or speculations of Kimberly Withrow.

employer is not a sufficient basis to set aside the jury's verdict. The Court will also not speculate that Stufflebeam was aware on February 19, 2009 that Patrick Withrow formerly worked for and was terminated by AG. Stufflebeam testified that he was not aware of Patrick Withrow's connection to AG before he was called as a prospective juror, and Patrick Withrow doubted that he would have discussed his termination from AG with Stufflebeam. Although Mike Withrow believes that Stufflebeam was aware of Patrick Withrow's prior employment with AG, he could not recall any specific conversation during which this issue arose. The Court will not overturn a jury verdict based on Mike Withrow's belief about Stufflebeam's knowledge. Thus, the Court concludes that the evidence is insufficient to establish that Stufflebeam knew of Patrick and Mike Withrow's employment history with AG before he was called as a prospective juror.

Based on this factual finding, the Court finds that plaintiff's motion for new trial should be denied to the extent that plaintiff argues that Stufflebeam intentionally gave false answers to questions during voir dire. Plaintiff argues that Stufflebeam hid from the Court his knowledge of Patrick and Mike Withrow's employment with AG, but plaintiff has not shown that Stufflebeam was aware of this information on February 19, 2009. Plaintiff bears the burden to show that a prospective juror failed to truthfully answer a voir dire question. Skaggs, 164 F.3d at 515. Without any evidence establishing that Stufflebeam knew of Patrick Withrow's former employment or Mike Withrow's employment with AG, it is not possible to find that Stufflebeam intentionally gave a dishonest answer to a voir dire question and plaintiff has not satisfied the first prong of the McDonough test. However, this finding does not prevent the Court from considering plaintiff's argument that Stufflebeam improperly communicated with Patrick Withrow during the trial, and the

Court will consider this argument separately. Id. at 516 ("Inability to satisfy the *McDonough* test does not always preclude a litigant from presenting evidence of a juror's actual or implied bias).

**B.**

Plaintiff claims that Stufflebeam talked about the case with Patrick Withrow during the trial and, due to Patrick Withrow's status as a former AG employee who was terminated under "cloudy" circumstances, the Court should infer that Stufflebeam was subject to an external influence that tainted his ability to serve as a fair and impartial juror. Dkt. # 565, at 115-18. AIG responds that the Court should credit Stufflebeam's testimony that he did not discuss the case with anyone while the trial was pending and, even if the Court finds that such a conversation occurred, the Court should not infer that Stufflebeam discussed the merits of the case or learned any information that would affect his impartiality. Id. at 114-15.

Plaintiff alleges that Stufflebeam had an improper communication with Patrick Withrow before the jury began its deliberations, and Stufflebeam's conduct prejudiced AG's right to a trial before a fair and impartial jury. In such cases, "any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties." Remmer v. United States, 347 U.S. 227, 229 (1954). The presumption of prejudice applies only if the contact or communication concerns a matter before the jury. United States v. Youts, 229 F.3d 1312, 1320 (10th Cir. 2000). Although Remmer was decided in the context of a criminal case, the Tenth Circuit has extended the application of Remmer to civil cases as well. Mayhue, 969 F.2d at 922-23; see also Haley v. Blue Ridge Transfer Co., Inc., 802 F.2d 1532, 1535

(4th Cir. 1986) (noting that <u>Remmer</u> was a criminal case but finding that the "doctrine of presumed prejudice has been applied no less forcefully in civil cases in the federal courts"); <u>Krause v. Rhodes</u>, 570 F.2d 563, 568 (6th Cir. 1977) ("The presumption that extraneous communications with jurors are prejudicial has also been applied in civil cases."). Under Fed. R. Evid. 606(b), neither the Court nor the parties may directly ask a juror if the improper contact or extraneous influence affected the jury's deliberations. <u>Mayhue</u>, 969 F.2d at 923. "The trial judge must, therefore, confirm or rebut the presumption of prejudice by objectively weighing all of the facts and circumstances of the case." <u>Id.</u> at 923-24. In this case, plaintiff has raised a colorable allegation that the jury foreperson had an improper communication with a third party. <u>See</u> <u>United States v. Brooks</u>, 569 F.3d 1284, 1287 n.1 (10th Cir. 2009).

Defendant argues that some courts no longer apply or have called into question the continuing viability of the rebuttable presumption of prejudice required under <u>Remmer</u> in light of the Supreme Court's decision in <u>Smith</u>. <u>See</u> <u>Jefferson v. Hall</u>, 570 F.3d 1283, 1310 n.10 (11th Cir. 2009); <u>United States v. Bristol-Martir</u>, 570 F.3d 29, 41 n.5 (1st Cir. 2009); <u>Abell v. Potomac Ins. Co.</u>, 858 F.2d 1104, 1144-45 (5th Cir. 1988). Tenth Circuit precedent suggests that the Tenth Circuit would no longer apply a rebuttable presumption of prejudice, but this issue has not been clearly decided. <u>United States v. Robertson</u>, 473 F.3d 1289, 1294 (10th Cir. 2007) (citing <u>United States v. Frost</u>, 125 F.3d 346, 377 (6th Cir. 1997), for proposition that presumption of prejudice no longer applies and the moving party must produce evidence that improper contact created actual juror bias); <u>Smith v. Ingersoll-Rand Co.</u>, 214 F.3d 1235 (10th Cir. 2000) (declining to resolve apparent conflict over standard of review in cases involving allegations of juror bias or misconduct). As will be discussed below, the Court finds it unnecessary to determine if the <u>Remmer</u> presumption

is still applicable, because the resolution of this legal issue will not affect the outcome of plaintiff's motion for a new trial. The Court relies on the post-Smith decisions by the Tenth Circuit in Mayhue and Bradshaw by objectively weighing all the facts and circumstances, without any presumption.

Stufflebeam testified that he did not talk about the case with Patrick Withrow or any other person between February 19 and 24, 2009. Dkt. # 565, at 13-14, 18. He claimed that he did not even directly tell Patrick Withrow that he had been selected to serve on a jury, and Patrick Withrow may have learned this from Kimberly Withrow or Les Stufflebeam. Id. at 14-15, 18-19. Stufflebeam stated that he told his father and employer, Les Stufflebeam, that he had been selected to serve on a jury, but he did not discuss the details of the case or even identify the parties. Id. at 15. He acknowledged that his grandmother's birthday is February 20, but Stufflebeam did not recall attending a birthday celebration for his grandmother in 2009. Id. at 22-23, 50. Stufflebeam acknowledges that he had a conversation with Patrick Withrow near the time of trial and they discussed the case, but he testified that this conversation occurred after the trial. Id. at 25, 28. Stufflebeam did not clearly recall the date or substance of the conversation, but he does recall that he asked Patrick Withrow why Mike Withrow would have attended the trial. Id. at 40. He claims that he saw Mike Withrow in the courtroom when the jury returned with its verdict, but he does not remember seeing Mike Withrow during closing arguments. Id. at 25. Stufflebeam recalls seeing a large group of AG employees present for closing arguments, that he saw Mike Withrow in the courtroom one time, and that Mike Withrow was with a large number of people. Id. at 44, 46. The Court and counsel agreed that many AG employees attended the closing arguments, but the employees left shortly after the closing arguments and were not present when the jury returned its verdict. Id. at 112-13.

Patrick Withrow initially testified that he talked to Stufflebeam after the trial, but subsequently clarified his testimony to reflect that he did not actually know when the trial concluded.  Id. at 60-61.  Patrick Withrow believed that the trial was over because Stufflebeam represented that this was true, but Patrick Withrow made no attempt to verify Stufflebeam's statement about the status of the case.  Id. at 61.  Patrick Withrow remembered three key facts about the timing of his conversation with Stufflebeam.  First, the conversation occurred on a Saturday or Sunday.  Id. at 73.  Second, the conversation occurred at a birthday party for Stufflebeam's grandmother.  Id. at 64, 75.  Third, Patrick Withrow had a conversation with Stufflebeam before Mike Withrow called Patrick Withrow to ask why Stufflebeam was serving on a jury in this case. Id. at 77.  Patrick Withrow also remembered that Les and Kimberly Stufflebeam were present when he asked Stufflebeam about the case.  Id. at 77.  Patrick Withrow did not clearly recall the substance of his conversation with Stufflebeam, except he remembered that Stufflebeam stated that he was the jury foreperson and Stufflebeam had seen Mike Withrow in the courtroom.  Id. at 62-63.  He also told Stufflebeam that he worked for AG, but he doubts he discussed the circumstances of his termination from AG.  Id. at 78.  Stufflebeam told Patrick Withrow that he spoke to the judge after seeing Mike Withrow in the courtroom, because he figured out that Mike Withrow worked for AG and felt "concerned."  Id. at 67-68.  Mike Withrow called Patrick Withrow a day or two after this conversation and asked if Patrick Withrow knew that Stufflebeam was serving on a jury in a case involving AG and AIG. Id. at 73.  Patrick Withrow told Mike Withrow that he talked to Stufflebeam over the weekend, and they had discussed the case.  Id. at 73-74.  Stufflebeam and Patrick Withrow had a second conversation about the case approximately two weeks before the evidentiary hearing. Patrick Withrow asked Stufflebeam to confirm that their prior conversation occurred after the trial

was over, and Stufflebeam stated that the trial had been completed when they spoke.  Id. at 66.

Upon further questioning Patrick Withrow could not recall if he had one or two conversations with

Stufflebeam near the time of trial, and it is possible that they had more than one conversation about

the case in 2009.  Id. at 76.

Mike Withrow clearly remembered that he attended the closing arguments in this case and

observed Stufflebeam in the jury box at that time.  Id. at 85.  He returned to AG's office after the

closing arguments and did not stay to hear the verdict.  Id. at 92.  Mike Withrow called Patrick

Withrow on the evening of February 24, 2009, and asked if Patrick Withrow knew that Stufflebeam

was a juror in this case.  Id. at 86-87.  Patrick Withrow told Mike Withrow that he had talked about

the case with Stufflebeam, but Patrick Withrow did not mention at that time knowing that

Stufflebeam was the jury foreperson or that Stufflebeam had seen Mike Withrow in the courtroom.

Id. at 87-88, 90-91.

The witness with the clearest recollection of the events was Mike Withrow, and the Court

finds that his testimony about the timing of events is credible.  Mike Withrow's testimony about the

presence of AG employees in the courtroom during closing argument, rather than when the verdict

was read, is consistent with the Court's and counsel's recollection, and this corroborates his

testimony that he saw Stufflebeam during closing argument.  Stufflebeam testified that he did not

see Mike Withrow in the courtroom during closing argument but, instead, saw Mike Withrow when

the jury returned with its verdict.  However, Stufflebeam's testimony on this point is vague and is

inconsistent.  Stufflebeam testified that he saw Mike Withrow with a large group of people in the

courtroom and he heard plaintiff's counsel identify the group as employees of AG.  Id. at 44, 46.

Stufflebeam testified that there was a large group of AG employees present for closing argument but

he could not recall how many AG employees, if anyone other than Lawrence, was present to hear the verdict read.  Id. at 44-45.  Based on Stufflebeam's testimony that he saw Mike Withrow with a large number of AG employees and the lack of corroboration for Stufflebeam's testimony that he saw Mike Withrow after the jury completed its deliberations, the Court finds that Stufflebeam saw Mike Withrow in the courtroom during closing argument.  The Court also finds that Stufflebeam's testimony that he did not determine at that time that Mike Withrow was an AG employee is not credible.  Mike Withrow was with a group of AG employees wearing matching shirts with AG logos,  and Stufflebeam heard plaintiff's counsel refer to the group as AG employees.  Id. at 44.  Thus, it is reasonable to infer that Stufflebeam figured out that Mike Withrow was an AG employee during closing argument and before the jury began its deliberations.  Stufflebeam's testimony that he did not bring this matter to the attention of the Court is correct, as the Court would have made a record of this communication and it has no recollection of Stufflebeam making any attempt to notify it that he had seen Mike Withrow in the courtroom.  The Court also finds credible that Mike Withrow called Patrick Withrow on February 24, 2009.  The testimony of Mike and Patrick Withrow is consistent on the key point that Patrick Withrow had already talked to Stufflebeam when he received a phone call from Mike Withrow, and Mike Withrow's testimony that he called Patrick Withrow on the day the verdict was returned is credible.

The timeline for other events becomes clearer based on these factual findings and, most importantly, it is clear that Stufflebeam discussed the case with Patrick Withrow during the trial and before the jury began its deliberations.  Patrick Withrow testified that he spoke to Stufflebeam at a birthday party for Stufflebeam's grandmother on a Saturday or Sunday, and Stufflebeam's grandmother's birthday is February 20.  Id. at 22, 64.  He also testified that Les Stufflebeam and

34

Kimberly Withrow were also present when this conversation occurred. Id. at 77. This is consistent with Stufflebeam's testimony that Les Stufflebeam asked about the case at a family gathering, and Kimberly and Patrick Withrow, Stufflebeam, and Stufflebeam's wife were present during this conversation. Id. at. 33. Although Stufflebeam could not recall when his father asked about the case, Patrick Withrow's testimony supports an inference that Stufflebeam talked to his father and others about the case at a birthday party for Stufflebeam's grandmother. Patrick Withrow also testified that he talked to Stufflebeam before he spoke to Mike Withrow, and Mike Withrow's testimony that Patrick Withrow mentioned such a conversation corroborates Patrick Withrow's testimony on this issue. Patrick Withrow believed that the trial was over when he talked to Stufflebeam based on Stufflebeam's representation, but he did not actually find out if Stufflebeam's statement was correct. Id. at 60-61. Stufflebeam's testimony as to the timing of his conversation with Patrick Withrow is unhelpful. Although Stufflebeam states that the conversation occurred after the trial, he could not recall the date of the conversation and his recollection of other key events is incorrect. Stufflebeam could not recall attending a birthday party for his grandmother, but Patrick Withrow testified that there was a birthday party and he asked Stufflebeam about his jury service at the party. Id. at 64. The Court attributes no dishonesty to Stufflebeam and it is possible that the passage of time has contributed to his inability to recall when certain events occurred, but his testimony is inconsistent with verifiable facts and other witnesses display a clearer recollection of the events. The Court does not wholly discount Stufflebeam's testimony, but he does not have a clear recollection of when he spoke to Patrick Withrow about the case. Based on the Court's finding that Mike and Patrick Withrow spoke on February 24, 2009 about Stufflebeam's presence on the jury, the Court will use February 24, 2009 as its starting point to determine when other events

occurred. With February 24, 2009 as a starting point, it is reasonable to infer that Stufflebeam and Patrick Withrow discussed the case on February 21 or 22, 2009. These dates are the Saturday and Sunday following the birthday of Stufflebeam's grandmother, and Patrick Withrow testified that he spoke to Mike Withrow a day or two <u>after</u> speaking to Stufflebeam. There is no evidentiary support for Stufflebeam's testimony that he talked to Patrick Withrow only after the trial, and it is clear that he does not have an accurate recollection of when the conversation occurred.

Based on the testimony presented at the evidentiary hearing, the Court is left with a firm conviction that Stufflebeam and Patrick Withrow had a conversation about the case before the jury began its deliberations. Patrick Withrow testified that he told Stufflebeam during this conversation that he was formerly employed by AG, but he did not believe that he mentioned the "cloudy" circumstances surrounding his termination. <u>Id.</u> at 78. It is reasonable to infer that Patrick Withrow would have mentioned his prior employment with AG if Stufflebeam stated during trial that he was serving as a juror on a case involving AG and AIG. When Patrick Withrow learned about the evidentiary hearing, he asked Stufflebeam if the trial had concluded when they talked about the trial in 2009, and this could suggest that Patrick Withrow was concerned that he had said too much about his relationship with AG while the trial was pending. Questions asked by plaintiff's counsel implied that Stufflebeam made comments to Patrick Withrow in their conversation during trial to the effect that the "deal was sealed" or that the case had already been decided. <u>See</u> <u>id.</u> at 28, 43. Neither Stufflebeam nor Patrick Withrow recalled any discussion of the outcome of the case, and the Court will not infer based only on questions by plaintiff's counsel that Stufflebeam made any statement as to how the case would be decided.

Even though there is insufficient evidence for the Court to find that Stufflebeam commented on the outcome of the case, the Court does find that there is substantial doubt as to what Stufflebeam and Patrick Withrow discussed during trial due to Stufflebeam's and Patrick Withrow's vague and conflicting testimony. However, the evidence leads the Court to infer that Stufflebeam and Patrick Withrow discussed Patrick Withrow's prior employment with AG.

Based on the pleadings, trial record, affidavits, evidentiary hearing, credibility of witnesses, and the totality of the circumstances, the Court makes the following finding of facts:

1.    It is undisputed that Patrick and Mike Withrow had a conversation after the verdict on February 24, 2009, about Stufflebeam serving as a juror. During that conversation, Patrick Withrow acknowledged that he knew of Stufflebeam's service on the jury because Patrick Withrow had talked to Stufflebeam about it.

2.    Patrick Withrow had the conversation with Stufflebeam about two days before his conversation with Mike Withrow, which means that the conversation occurred over the February 20-22, 2009 weekend recess.

3.    The conversation took place at a family gathering. Stufflebeam's grandmother's birthday is February 20, and the family typically celebrates with a gathering.

4.    It is unclear whether Les Stufflebeam or Patrick Withrow initiated the conversation but it is clear that Stufflebeam mentioned the parties and the nature of the dispute.

5.     It is not reasonable to infer that Patrick Withrow would <u>not</u> have mentioned his employment history with AG during the conversation and, in fact, Patrick Withrow testified that he did mention his former employment with AG.

6.     Stufflebeam could only have seen Mike Withrow in the courtroom before jury deliberations on February 24, 2009, and he made the connection that Mike Withrow was an AG employee.

7.     Stufflebeam never informed the Court of the conversation with Patrick Withrow or the recognition of Mike Withrow.

8.     It is reasonable to infer that Stufflebeam and Patrick Withrow did have a second conversation in 2009 after the trial, wherein Stufflebeam stated that he was the foreman and that he had seen Mike Withrow in the courtroom.

Based on the Court's findings that the conversation occurred during the trial and the inference that Patrick Withrow's employment history with AG was discussed, the circumstances compel an imputation of inherent bias to Stufflebeam as a matter of law. See <u>Bradshaw</u>, 787 F.2d at 1390-91. The Court also finds that Stufflebeam's role as the jury foreperson provided the opportunity for Stufflebeam to influence the outcome of the case, even if only unintentionally. <u>See Mayhue</u>, 969 F.2d at 925-26. This also supports a finding that AG was prejudiced by Stufflebeam's conduct.

The lack of clarity of Stufflebeam's and Patrick Withrow's recollection of the 2009 conversation(s) could be due to the passage of time. However, the Court finds that the substantial uncertainty about the substance of the conversation during trial creates an appearance that plaintiff did not receive a fair trial. At a minimum, the evidence shows that the jury foreperson discussed the

case with a former AG employee while the trial was pending, and the former AG employee was fired by AG under "cloudy" circumstances that he is not comfortable discussing. It is also clear that Stufflebeam recognized Mike Withrow in the courtroom during closing arguments and before the jury retired to deliberate, but he did not bring this matter to the attention of the Court during or after the trial.[5] Stufflebeam felt sufficiently concerned about seeing Mike Withrow in the courtroom that he told Patrick Withrow that he spoke to the judge about the matter, and this also supports a finding that Stufflebeam felt that he could not serve as a fair and impartial juror. Due to the appearance that plaintiff did not receive a fair trial before an impartial jury, the Court exercises its discretion to grant a new trial.

**IT IS THEREFORE ORDERED** that Plaintiff/Counter-Defendant's Motion for New Trial Pursuant to Rule 59 (Dkt. # 529) is **granted**, and Plaintiff/Counter-Defendant's Motion for Judgment Notwithstanding the Verdict Pursuant to Rule 50 (Dkt. # 530) is **moot**.

**IT IS FURTHER ORDERED** that the judgments in favor of AIG (Dkt. ## 382, 456, 517), the order awarding costs to AIG (Dkt. # 443), and the amended order awarding costs to AIG (Dkt. # 444) are **vacated**.

**IT IS FURTHER ORDERED** that this case is specially set for a new trial on **April 11, 2011 at 9:30 a.m.** All pretrial rulings by the Court, including but not limited to the pretrial order,

---

[5] The Court notes that it would have been possible to cure any problem caused by Stufflebeam's conversation with Patrick Withrow or his observation of Mike Withrow if Stufflebeam had brought these matters to the attention of the Court before the jury began to deliberate. The Court could have notified the parties of these matters and either have made a finding that Stufflebeam could serve as a juror or have stricken him from the jury and allowed the jury to deliberate with seven jurors. In either event, there would not have been a mistrial.

rulings on discovery motions, motions for summary judgment, and motions in limine, remain in effect, and the Court will not hold an additional pretrial conference.

**IT IS FURTHER ORDERED** that the parties should notify the undersigned's courtroom deputy if they believe another settlement conference would be helpful and, if so, a settlement conference will be set before Magistrate Judge T. Lane Wilson.

**IT IS FURTHER ORDERED** that the Court Clerk is directed to send a copy of this Opinion and Order to the Tenth Circuit Court of Appeals in reference to appeal number 10-5143.

**DATED** this 11th day of March, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT